UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

CHARLES DEMPSEY, individually, and L.D. by
her father and natural guardian, CHARLES
DEMPSEY,

INDEX NO.:  **19-cv-6780**

Plaintiffs,

**COMPLAINT**
**[JURY TRIAL DEMANDED]**

-against-

THE CITY OF ROCHESTER, a municipal entity,
JAVIER ALGARIN, ADAM GORMAN, JASON
RUDOLPH, "JOHN DOE" RPD OFFICER
RESPONSIBLE FOR TRAINING JAVIER
ALGARIN,

Defendants.

------------------------------------------------------------------------ X

Plaintiff CHARLES DEMPSEY and his daughter, L.D., by their attorneys,

ROTH & ROTH, LLP, complaining of the defendants, respectfully allege as follows:

# I.    PRELIMINARY STATEMENT

1.    Plaintiff's Charles Dempsey and his daughter L.D. bring this action for

compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C.

§§ 1983 and 1988 for violations of their civil rights, and under New York State law.

2.    On October 19, 2018, at approximately 5:00 p.m., Rochester Police

Department ("RPD") Officer Javier Algarin, shot and killed Tesla, Plaintiffs' four-

year-old Black Labrador Retriever, while Algarin was trespassing in their back

yard. Algarin jumped the fence into Plaintiffs' back yard for no reason, then shot

Tesla twice as Mr. Dempsey and his ten-year-old daughter L.D. watched in horror.

Mr. Dempsey and L.D. suffered extreme emotional and psychological distress as a result of witnessing a police officer shoot Tesla multiple times for no reason.

3.      Tesla died of her injuries. Mr. Dempsey and L.D. continue to suffer severe emotional and psychological distress from the incident.

4.      Mr. Dempsey and L.D. have brought this lawsuit to seek justice for themselves and for Tesla.

## II.    Venue and Jurisdiction

5.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(a)(3) and (a)(4) and the aforementioned statutory and constitutional provisions.

6.      Venue is proper for because the events occurred in this district.

7.      Plaintiffs, in furtherance of their cause of action brought pursuant to New York State law, filed timely a Notice of Claim against the CITY, in compliance with the Municipal Law Section 50.

8.      They CITY held a 50-h hearing on April 16, 2019 for Mr. Dempsey, and waived the hearing for L.D.

9.      More than thirty (30) days have elapsed since said Notice of Claim was filed and the CITY has failed to pay or adjust the claim.

10.     This action is being brought within a year and 90 days of the event giving rise to Plaintiffs' State causes of action.

11.     This action falls within one or more of the exceptions as set forth in CPLR Section 1602, involving intentional actions, as well as the defendant, and/or defendants, having acted in reckless disregard for the safety of others, as well as having performed intentional acts.

## III. JURY DEMAND

8.     The plaintiff respectfully demands a trial by jury of all issues in this matter.

## VI. PARTIES

12.     Plaintiff, CHARLES DEMPSEY, is a citizen of the United States and a resident of the County of Monroe, State of New York.

13.     Plaintiff, L.D., is the minor daughter of CHARLES DEMPSEY, and is a citizen of the United States and a resident of the County of Monroe, State of New York.

14.     Defendant CITY OF ROCHESTER ("CITY") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant CITY assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risks attach to the public consumers of the services provided by the RPD.

15.     Defendants Rochester Police Department ("RPD") POLICE OFFICER ("P.O.") JAVIER ALGARIN ("ALGARIN") (IBM No. 2725), P.O. ADAM GORMAN ("GORMAN"), P.O. JASON RUDOLPH ("RUDOLPH"), "JOHN DOE" RPD

OFFICER RESPONSIBLE FOR TRAINING JAVIER ALGARIN ("DOE TRAINING OFFICER") (collectively, "Defendant RPD OFFICERS," individually, "Defendant RPD OFFICER"), are and were at all times relevant herein, officers, employees and agents of the Defendant CITY and the RPD.

16.    The Defendant RPD Officers are being sued in their individual and official capacities.

17.    DOE TRAINING OFFICER was an officer of the RPD. This defendant is the officer or officers responsible for ensuring that, on and before the date of the incident, ALGARIN was properly trained in entering onto private property, the use of firearms and in dealing with domestic animals.

18.    At all times relevant herein, the individual Defendant RPD OFFICERS were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of the Defendant CITY OF ROCHESTER, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the RPD at all times relevant herein, with the power and authority vested in them as officers, agents and employees of the RPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the RPD.

19.    The individual Defendant RPD OFFICERS' acts hereafter complained of were carried out intentionally, recklessly, with malice, and in gross disregard of plaintiff's rights.

20.     At all relevant times, the individual defendants were engaged in joint ventures, assisting each other in performing the various actions described herein and lending their physical presence in support and the authority of their offices to one another.

## V.  STATEMENT OF FACTS

21.     On October 19, 2018, Mr. Dempsey lived at 53 Kosciusko Street, Rochester, New York, with his 10-year-old daughter, L.D., and their four-year-old black Labrador retriever, Tesla.

22.     October 19, 2018 at approximately 5:00 p.m., Gorman detained a man in the back yard of 49 Kosciusko Street, Rochester, New York—which is directly next to Mr. Dempsey's back yard.

23.     Gorman searched the man that he detained in the back yard of 49 Kosciusko Street.

24.     Gorman did not locate any drugs, weapons, or contraband on the man.

25.     At no time prior to detaining the man in the back yard of 49 Kosciusko Street was the man present in Mr. Dempsey's back yard at 53 Kosciusko Street.

26.     Shortly after Gorman detained and searched the man, Algarin also arrived in the back yard of 49 Kosciusko Street.

27.     Despite knowing that the man had never been present in Mr. Dempsey's back yard, Gorman instructed Algarin to jump the fence and search Mr. Dempsey's back yard at 53 Kosciusko Street.

28.     On October 19, 2018 at approximately 5:00 p.m., Algarin entered Mr. Dempsey's fenced-in back yard without his consent, without exigent circumstances, without a warrant, and without probable cause or any other legal justification.

29.     Algarin entered Mr. Dempsey's yard by jumping over a chain-linked fence from the neighboring back yard of 49 Kosciusko Street, Rochester, New York.

30.     Prior to jumping the fence, Algarin did not announce that he was entering Mr. Dempsey's back yard, or otherwise alert Mr. Dempsey to the fact that he was entering his yard.

31.     Not knowing that Algarin was present in his yard, Mr. Dempsey opened the door to exit into his back yard with Tesla.

32.     Mr. Dempsey had no way of knowing that Algarin was in his yard before he opened the door to let Tesla out.

33.     Algarin did not knock on Mr. Dempsey's door to ask for his consent to enter his property or otherwise warn him that he was entering his property.

34.     When Tesla entered the backyard, Algarin immediately drew his gun and pointed it at her.

35.     Tesla, unaware of the danger, descended the stairs from the porch into the back yard and headed towards the vicinity of where Algarin was standing.

36.     Mr. Dempsey told Algarin that Tesla was friendly and would not hurt him.

37.     Upon information and belief, before Algarin shot and killed her, Tesla was not exhibiting any signs that any dog owner, properly trained police officer, or reasonable person exercising common sense could interpret as threatening.

38.     Nevertheless, Algarin fired two rounds from his department-issued firearm, striking Tesla in the head and torso, killing her.

39.     After Algarin shot Tesla, he then pointed his firearm at Mr. Dempsey, without lawful purpose or justification.

40.     When Algarin pointed his firearm at Mr. Dempsey, L.D. was standing inside the door to the back yard, which was behind Mr. Dempsey in the direction that Algarin was pointing his gun.

41.     Mr. Dempsey saw Algarin fire his gun and saw Tesla bleeding out from her wounds.

42.     L.D. was standing in the kitchen when Algarin fired his gun and shot Tesla.

43.     When L.D. heard Algarin fire his gun and shoot Tesla, she immediately ran to the back door and saw him pointing his gun and Mr. Dempsey.

44.     L.D. was overwhelmed with grief that her dog and best friend, Tesla, had been shot by a police officer.

45.     L.D. was overwhelmed with terror that her father would also be shot by a police officer.

46.     After she was shot, Tesla ran up to the back porch to the back door near where L.D. had been standing.

47. Tesla then went to the side of the house and lay by the gate, whimpering in pain and bleeding out.

48. Mr. Dempsey ordered the officers, to leave his yard, but they refused to do so.

49. Mr. Dempsey then went and held Tesla, applying pressure to her gunshot wounds to try to stop her from bleeding out.

50. Mr. Dempsey was overwhelmed with grief.

51. After Algarin shot Tesla, numerous additional RPD officers arrived and detained Mr. Dempsey for a period of time.

52. During this time, several officers unlawfully entered Mr. Dempsey's home.

53. Eventually, the RPD officers allowed Mr. Dempsey to take Tesla to a veterinary hospital; however, by the time they arrived at the veterinary hospital, it was too late, and Tesla died from the gunshot wounds she sustained when Algarin shot her.

54. Tesla was beloved by Mr. Dempsey, was L.D.'s best friend, and was known to their friends, family and neighbors as their loving companion and a friendly dog that would never hurt anyone.

55. While the loss of Tesla's companionship is the most important thing to Mr. Dempsey and L.D., they understand that the defendants may claim that Tesla was nothing more than a piece of property, and not the third member of their family. Even viewed so cold-bloodedly, Mr. Dempsey lost a great deal when Tesla

was taken away from him and L.D. Mr. Dempsey had gotten Tesla when she was a puppy as a birthday present for L.D., and they had Tesla for approximately four years. During that time the claimant invested significant money in Tesla's care and maintenance. In addition to the emotion loss of being deprived of a member of their family, Mr. Dempsey lost the amount he invested in Tesla over these years, which equals or exceeds $10,000. In addition, Mr. Dempsey and L.D. lost the anticipated future companionship, love and value of ownership of Tesla for her normal lifespan.

56.     Algarin and Gorman were clearly inadequately trained in conducting investigations into VICE activities.

57.     Algarin and Gorman were clearly inadequately trained in the legal requirements to enter onto private property.

58.     Algarin was clearly inadequately trained in the use of guns.

59.     Algarin clearly had insufficient training, or incorrect training, in dealing with domestic animals and the use of firearms.

60.     Algarin drew his firearm as soon as Tesla began to exit from the back door of Mr. Dempsey's apartment onto the back porch.

61.     At that time there was no threat.

62.     Yet Algarin had already apparently committed himself to the use of deadly force.

63.     The CITY either trained Algarin to make such hasty deadly force decisions, or it failed to provide him sufficient and correct training so that he might not commit to killing before a threat even materialized.

64.     Algarin's failure to pause to assess the situation is conduct that is inherently dangerous, which the CITY should have addressed through training.

65.     When Algarin fired his gun, Mr. Dempsey was present in the enclosed back yard, and L.D. was standing just inside the back door of the house—both within range of being shot by Algarin.

66.     Firing his weapon put both Mr. Dempsey and his ten-year-old daughter L.D. at unreasonable risk of danger.

67.     Algarin failed to assess the situation properly.

68.     Algarin unreasonably risked shooting and otherwise harming people when it was unnecessary to do so.

69.     Well prior to the date of the incident in question, the U.S. Department of Justice, through its Community Oriented Policing Services (COPS) Learning Portal, in conjunction with the Center for Public Safety and Justice (CPSJ) Institute of Government and Public Affairs at the University of Illinois, provided (and continues to provide) free training videos and manuals to law enforcement officials and the general public regarding how to safely interact with dogs while engaging in law enforcement activities. *See, e.g.*, https://cops.usdoj.gov/html/dispatch/12-2013/police_and_dog_encounters.asp.

70.     The CITY and RPD never implemented a policy regarding the safe handling of dogs encountered during law enforcement activities.

71.     The CITY and RPD never provided any training to its law enforcement officers regarding the handling of dogs encountered during law enforcement activities.

72.     The CITY and RPD knew that dogs were often encountered during law enforcement activity.

73.     Algarin knew the CITY and RPD did not provide him with a policy or training regarding how to safely interact with and/or secure a dog while engaging in law enforcement activity.

74.     Despite Algarin and other law enforcement officers previously planning and discussing the policing of VICE activity in the area of Mr. Dempsey's residence, Algarin did not request a plan for the safe handling of any dog encountered during the policing activities.

75.     The Defendants' only plan during the attempted policing of the VICE activities in the neighborhood was to wing it and/or kill any dog that they encountered.

76.     Algarin should have reasonably expected that when he jumped the fence and entered a fenced-in back yard to a residential property, there could be domesticated animals, including dogs, that might approach him.

77.     Algarin's shooting of Tesla constitutes an unreasonable Fourth Amendment seizure.

78.     Algarin's shooting of Tesla constitutes an unreasonable Fourteenth Amendment deprivation of property without due process of law.

79.     The CITY appears to train its officers that if they subjectively feel fear, however minor the cause of that fear may be, they are entitled to kill anyone or anything who makes them have that subjective feeling. The City does not train its officers that they have a duty to question whether there is a rational basis for their fear before using deadly force.

80.     This is a bad policy, that kills innocent people and dogs. In this case, it killed Tesla. It could have killed Mr. Dempsey or his ten-year-old daughter, L.D. The City should take responsibility for the bullets fired by Algarin.

## VI. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### DEPRIVATION OF FEDERAL CIVIL RIGHTS
### UNDER 42 U.S.C. § 1983
### (Against the City)

81.     Plaintiffs re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

82.     All of the aforementioned acts of the Defendant CITY, and the Defendant Police Officers and their agents, servants and employees ("Defendants"), were carried out under the color of state law.

83.     All of the aforementioned acts deprived Plaintiffs of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

84.     The acts complained of were carried out by the aforementioned individual defendants in their capacities as Police Officers with all of the actual and/or apparent authority attendant thereto.

85.     The acts complained of were carried out by the aforementioned individual defendants in their capacities as Police Officers, pursuant to the customs, usages, practices, procedures, and the rules of Defendant CITY and the RPD, all under the supervision of ranking officers of said department.

86.     As a result of the above constitutionally impermissible conduct, Plaintiffs were caused to suffer personal injuries, violation of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, physical injuries, and damage to his reputation and standing within his community.

87.     Accordingly, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

88.     Defendant THE CITY and the RPD are responsible for the actions of their employees under the doctrine of *Monell* v. *City of New York Department of Social Services*, 436 U.S. 658 (1978).

89.     Since January 2013, RPD officers have shot and killed approximately 50 dogs during police activities, including while they were present on an individual's property without a warrant, exigent circumstances, consent or any other lawful purpose.

90.     None of the officers who shot and killed any of those approximately 50 dogs were ever disciplined as a result of shooting and killing the dogs.

91.    None of the officers who shot and killed any of those approximately 50 dogs received adequate training; instead, each of them received insufficient training or no training at all in how to safely and properly interact with dogs and other family pets during policing activities.

92.    As a result of Defendants' impermissible conduct, Plaintiffs were injured and harmed.

93.    The Plaintiffs are entitled to compensatory and punitive damages in an amount to be determined at trial, together with attorney's fees and costs.

## SECOND CLAIM FOR RELIEF
## DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS OF LAW
## UNDER 42 U.S.C. § 1983
## (Against ALGARIN)

94.    Plaintiffs re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

95.    The Defendants, individually and collectively, were acting under color of state law when they performed the acts complained of herein.

96.    Tesla was allegedly regarded as property under the law, even though the Plaintiffs' loved Tesla like a member of the family.

97.    Algarin deprived Plaintiffs of Tesla by killing her.

98.    Algarin did not provide any procedure by which the Plaintiffs could object to and prevent Tesla's killing.

99.    Instead, Algarin summarily and without warning shot and killed Tesla.

100.    In so doing, Algarin deprived the Plaintiffs of their rights to due

process.

101.    As a result, the Plaintiffs suffered physical and emotional injuries,

monetary losses, and loss of the present and future value of their property, as well

as other damages to be set forth and proved at trial.

102.    The plaintiff is entitled to compensatory and punitive damages in an

amount to be determined at trial, together with attorney's fees and costs.

### THIRD CLAIM FOR RELIEF
### UNREASONABLE SEARCH OF CURTILAGE
### UNDER 42 U.S.C. § 1983
### (Against Algarin and Gorman)

103.    Plaintiffs re-allege each and every allegation contained in the above

paragraphs with the same force and effect as if fully set forth herein.

104.    Algarin entered Plaintiffs' property without a search warrant or other

legal justification. Gorman instructed Algarin to enter Plaintiff's property. The

property was surrounded by a sturdy fence on all sides. The gate was closed. By

jumping the fence into Plaintiffs' back yard and approaching within feet of

Plaintiffs' home, therefore, Algarin entered the home's curtilage.

105.    This entry into the curtilage without a warrant constituted an

unreasonable search in violation of Plaintiffs' rights as guaranteed by the Fourth

Amendment to the United States Constitution.

106.    This violation of Plaintiffs' constitutional rights caused the loss of

Tesla and the other harms identified herein.

107.   As a result, the Plaintiffs suffered physical and emotional injuries, monetary losses, and loss of the present and future value of their property, as well as other damages to be set forth and proved at trial.

108.   The plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial, together with attorney's fees and costs.

## FOURTH CLAIM FOR RELIEF
### UNLAWFUL SEIZURE
### UNDER 42 U.S.C. § 1983
### (Against Algarin)

109.   Plaintiffs re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

110.   The Defendants, individually and collectively, were acting under color of state law when they performed the acts complained of herein.

111.   Algarin seized Mr. Dempsey by shooting at Tesla in his presence.

112.   Algarin seized Mr. Dempsey by pointing his gun at Mr. Dempsey.

113.   Algarin seized L.D. by shooting Tesla and pointing his gun at her.

114.   As a result, the Plaintiffs suffered physical and emotional injuries, monetary losses, and loss of the present and future value of their property, as well as other damages to be set forth and proved at trial.

115.   The plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial, together with attorney's fees and costs.

## FIFTH CLAIM FOR RELIEF
### FAILURE TO INTERVENE
### UNDER 42 U.S.C. §1983
### (Against Gorman)

116.    Plaintiffs re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

117.    Gorman had an affirmative duty to intercede on Plaintiffs' behalf to prevent and stop the violation of their constitutional rights by Algarin.

118.    Gorman failed to intervene on Plaintiffs' behalf despite having had a realistic opportunity to do so, and despite having substantially contributed to the circumstances within which Plaintiffs' rights were violated by his affirmative conduct.

119.    As a result of Gorman's aforementioned conduct, Plaintiffs' constitutional rights were violated.

120.    The plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial, together with attorney's fees and costs.

**SIXTH CLAIM FOR RELIEF**
**<u>ASSAULT</u>**
**(Against Algarin)**

121.    Plaintiffs re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

122.    Algarin engaged in physical conduct which placed Mr. Dempsey in immediate fear of harmful contact.

123.    Algarin engaged in physical conduct which placed L.D. in immediate fear of harmful contact.

124.    As a result, the Plaintiffs suffered physical and emotional injuries, as well as other damages to be set forth and proved at trial.

125.    The Plaintiffs are entitled to compensatory and punitive damages in an amount to be determined at trial, together with attorneys' fees and costs.

126.    Defendants were at all times agents, servants, and employees acting within the scope of their employment by the CITY, which is therefore responsible for their conduct.

127.    The CITY, as the employer of individual RPD defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

128.    As a result of Defendants' assault and impermissible conduct, Plaintiffs were injured and harmed. Accordingly, Plaintiffs demand judgment against Defendants in a sum of money to be determined at trial, together with attorney's fees and costs.

## SEVENTH CLAIM FOR RELIEF
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against Algarin)

129.    Plaintiffs re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

130.    Algarin engaged intentional outrageous conduct when he shot and killed Tesla.

131.    As a result, the Plaintiffs suffered physical and emotional injuries, as well as other damages to be set forth and proved at trial.

132.    Defendants were at all times agents, servants, and employees acting within the scope of their employment by the CITY, which is therefore responsible for their conduct.

133.   The CITY, as the employer of individual RPD defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

134.   As a result of Defendants' assault and impermissible conduct, Plaintiffs were injured and harmed. Accordingly, Plaintiffs demand judgment against Defendants in a sum of money to be determined at trial, together with attorney's fees and costs.

## EIGHTH CLAIM FOR RELIEF
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Against Algarin)

135.   Plaintiffs re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

136.   Algarin engaged intentional and/or negligent outrageous conduct when he shot and killed Tesla.

137.   As a result, the Plaintiffs suffered physical and emotional injuries, as well as other damages to be set forth and proved at trial.

138.   Algarin was at all times an agent, servant, and employee acting within the scope of his employment by the CITY, which is therefore responsible for his conduct.

139.   The CITY, as the employer of individual RPD defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

140.   As a result of Defendants' impermissible conduct, Plaintiffs were injured and harmed. Accordingly, Plaintiffs demand judgment against Defendants in a sum of money to be determined at trial, together with attorney's fees and costs.

## NINTH CLAIM FOR RELIEF
## NEGLIGENCE
### (Against Algarin)

141.   Plaintiffs re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

142.   Algarin was negligent in handling and using his gun, causing him to kill Tesla in Plaintiffs' presence.

143.   As a result, the Plaintiffs suffered physical and emotional injuries, as well as other damages to be set forth and proved at trial.

144.   Algarin was at all times an agent, servant, and employee acting within the scope of his employment by the CITY, which is therefore responsible for his conduct.

145.   The CITY, as the employer of individual RPD defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

146.   As a result of Defendants' impermissible conduct, Plaintiffs were injured and harmed. Accordingly, Plaintiffs demand judgment against Defendants in a sum of money to be determined at trial, together with attorney's fees and costs.

## TENTH CLAIM FOR RELIEF
## NEGLIGENT TRAINING AND SUPERVISION
### (Against the CITY)

147.   Plaintiffs re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

148.   Defendant City was negligent in the hiring and retention of the defendant police officers.

149. Defendant City failed to use reasonable care in the training and supervision of the Defendant Police Officers, permitting and enabling them to engage in the wrongful conduct heretofore alleged in this Complaint. As a result, Mr. Dempsey and L.D. were harmed.

150. Defendant John Doe Responsible for Training Javier Algarin failed to train Algarin not to fire his weapon without cause, and not to fire his weapon in close proximity to people such as Mr. Dempsey and L.D. who might be injured.

151. Defendant City knew, or should have known in the exercise of reasonable care, the propensities of Algarin to engage in the wrongful conduct heretofore alleged in this Complaint. As a result, the Mr. Dempsey and L.D. were harmed.

152. Algarin was at all times an agent, servant, and employee acting within the scope of his employment by the CITY, which is therefore responsible for his conduct.

153. The CITY, as the employer of individual RPD defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

154. As a result, the Plaintiffs suffered physical and emotional injuries, as well as other damages to be set forth and proved at trial.

155. Plaintiffs demand judgment against Defendants in a sum of money to be determined at trial, together with attorney's fees and costs.

### ELEVENTH CLAIM FOR RELIEF
### TRESPASS
### (Against Algarin and Gorman)

156.    Plaintiffs re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

157.    Plaintiffs had the exclusive right to possession of their back yard.

158.    Algarin intentionally entered Plaintiff's back yard without justification or permission.

159.    Gorman instructed Algarin to enter Plaintiff's back yard without justification or permission.

160.    As a result, the Plaintiffs suffered physical and emotional injuries, as well as other damages to be set forth and proved at trial.

161.    Algarin and Gorman were at all times agents, servants, and employees acting within the scope of their employment by the CITY, which is therefore responsible for their conduct.

162.    The CITY, as the employer of individual RPD defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

163.    Plaintiffs demand judgment against Defendants in a sum of money to be determined at trial, together with attorney's fees and costs.

## TWELFTH CLAIM FOR RELIEF
## TRESPASS TO CHATTELS / CONVERSION
### (Against Algarin and Gorman)

164.    Plaintiffs re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

165.    By shooting and killing Tesla, Algarin interfered with Plaintiffs' possessory interests in Tesla.

166.    The acts and conduct of the individual defendants were the direct and proximate cause of injury and damage to Plaintiffs and violated their statutory and common law rights as guaranteed by the Constitution and laws of New York. The defendants, therefore, are liable for conversion for properties destroyed from Plaintiffs, which have not been returned to them in an unharmed condition.

167.    Defendants were at all times agents, servants, and employees acting within the scope of their employment by the CITY, which is therefore responsible for their conduct.

168.    The CITY, as the employer of individual RPD defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

169.    Plaintiffs demand judgment against Defendants in a sum of money to be determined at trial, together with attorney's fees and costs.

## THIRTEENTH CLAIM FOR RELIEF
## DEPRIVATION OF RIGHTS GUARANTEED BY THE NEW YORK STATE CONSTITUTION
### (Against Algarin and Gorman)

170.    Plaintiffs re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

171.    As a result of the aforesaid conduct of the CITY and the Defendant RPD OFFICERS, Plaintiffs were deprived of rights guaranteed to them by the New York State Constitution, including though not limited to the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures as described in Article I §§ 6, 11 and 12 of the New York State Constitution.

172.    Defendants were at all times agents, servants, and employees acting within the scope of their employment by the CITY, which is therefore responsible for their conduct.

173.    The CITY, as the employer of individual RPD defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

174.    As a result, the Plaintiffs suffered physical and emotional injuries, as well as other damages to be set forth and proved at trial.

175.    Plaintiffs demand judgment against Defendants in a sum of money to be determined at trial, together with attorney's fees and costs.

**WHEREFORE and in light of the foregoing**, Plaintiffs respectfully requests that the Court assume jurisdiction and:

> [a] Invoke pendent party and pendent claim jurisdiction.
> [b] Award appropriate compensatory and punitive damages.
> [d] Empanel a jury.
> [e] Award attorney's fees and costs.
> [f] Award such other and further relief as the Court deems to be in the interest of justice.

Dated: New York, New York                 Respectfully Submitted,
       October 21, 2019

                                    ROTH & ROTH, LLP


By:      _____~//s//~_____
                Elliot D. Shields
                Roth & Roth, LLP
                Counsel for Plaintiff
                192 Lexington Avenue, Suite 802
                New York, New York 10016
                Phone:      (212) 425 1020
                Fax:          (212) 532 3801
                Email eshields@rothandrothlaw.com