UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHARLES DEMPSEY, individually, and L.D. by her
father and natural guardian, CHARLES DEMPSEY,

                  Plaintiffs,

v.

THE CITY OF ROCHESTER, a municipal entity,
JAVIER ALGARIN, "JOHN DOE" RPD OFFICER
RESPONSIBLE FOR TRAINING JAVIER ALGARIN,

                  Defendants.

AFFIDAVIT OF
JASON HOROWITZ

Case No. 19-cv-6780 (EAW)

**STATE OF NEW YORK)**
**COUNTY OF MONROE) ss:**

**JASON HOROWITZ**, being first duly sworn, deposes and says as follows:

1. I am a Police Officer with the Rochester Police Department.

2. I submit this Affidavit in opposition to Plaintiffs' Motion for Summary Judgment.

3. On October 19, 2018, at approximately 4:33 p.m., the RPD received a 911 call reporting a group of black males in front of 61 Kosciusko Street engaging in open-air drug transactions.

4. At that time, I was already familiar with 61 Kosciusko Street, which was a recurring location of open-air drug activity.

5. On prior occasions that I had responded to 61 Kosciusko Street in response to complaints of drug sales, the suspects ran from the location upon police arrival. Those who fled from the police would run through the back yards behind the houses on the south side of Kosciusko Street, then towards Sobieski Street, one block to the south.

6. Upon learning of the October 19, 2018 911 call, I discussed the situation with

fellow RPD Officers Javier Algarin, Ryan DiSabatino, and Adam Horman. Considering that, on prior occasions, those selling drugs at 61 Kosciusko Street had run south through the Kosciusko backyards and to Sobieski Street, we decided that two officers would respond directly to 61 Kosciusko Street while two other officers would set up on Sobieski Street, to head off the suspects if they ran south again.

7. We decided that Officer Gorman and I would go to Sobieski Street and that Officers DiSabatino and Algarin would go to Kosciusko Street.

8. I arrived at Sobieski Street and, very soon after arriving there, received a radio call from Officers Algarin and DiSabatino that the drug dealers at 61 Kosciusko Street were running through the back yards towards Sobieski Street.

9. Hearing this, I made my way to a vacant lot at 54 Sobieski Street, which borders the back yards of 49, 53 and 57 Kosciusko Street.

10. I observed a black male climb over a tall wooden stockade fence surrounding the back yard of 57 Kosciusko Street and jump into the vacant lot at 54 Sobieski Street.

11. The man saw me approaching as he jumped the fence, and dropped a black plastic bag to the ground.

12. I immediately told this man to stop running and lie down on the ground, which he did.

13. I also observed at approximately this same time that another man in a red sweatshirt was fleeing west through the back yards behind the Kosciusko Street properties. This second man was stopped by Officer Gorman in the back yard of 49 Kosciusko Street.

14. I placed handcuffs on the individual that I had stopped at 54 Sobieski Street, then stood him up and began to search him.

15. While I was searching this man, Officer Algarin, who was in the back yard of 53 Kosciusko Street, called from the chain link fence separating 53 Kosciusko Street from 54 Sobieski Street, asking the man I had stopped whether he had a gun. The man denied having a gun.

16. After searching the man, I recovered the bag that he had thrown immediately after jumping the fence. Inside, I found seven red plastic bags of marijuana.

17. In my experience, it is not uncommon for an individual fleeing from police to discard contraband, just as this individual did. I estimate that in approximately half of the foot pursuits in which I have been involved, the perpetrator discarded contraband—including drugs and weapons—during the chase.

18. Because those who flee from police often discard contraband, the police usually back track over the course of the flight to make sure that no contraband was discarded. This is both to secure evidence of the crime and to ensure that no dangerous items are left behind, where they can pose a potential risk to innocent members of the public who might come across them.

19. I ultimately issued the man I had arrested an appearance ticket for unlawful possession of marijuana in violation of Penal Law 221.05.

20. At no point did I inspect the integrity of the fencing at the back yard of 53 Kosciusko Street and I cannot say whether there were any holes or gaps in the fencing.

_____
JASON HOROWITZ

Sworn to before me this

9th day of June, 2020

_____
Notary Public

MICHELLE BRADBURY
Notary Public State of New York
Qualified in Monroe County – 01BR6315209
Commission Expires November 24, 2022