UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHARLES DEMPSEY, individually,
AND L.D. by her father and
natural guardian, CHARLES DEMPSEY,

                Plaintiffs,

       v.

THE CITY OF ROCHESTER, a municipal
entity, JAVIER ALGARIN, "JOHN DOE"
RPD OFFICER RESPONSIBLE FOR
TRAINING JAVIER ALGARIN,

                Defendants.
_____

**DECISION AND ORDER**

6:19-CV-6780 EAW

## <u>INTRODUCTION</u>

Plaintiffs Charles Dempsey, individually, and L.D., by her father and natural guardian Charles Dempsey (collectively "Plaintiffs"), bring the instant lawsuit pursuant to 42 U.S.C. § 1983 and 1988 and New York state law, alleging defendants The City of Rochester, Javier Algarin, and John Doe, an RPD officer responsible for training Javier Algarin (collectively "Defendants"), are liable for damages arising from the entry into Plaintiffs' yard and death of Plaintiffs' dog.  Presently before the Court is Defendants' partial motion to dismiss the first, third, fourth, fifth, seventh, and ninth claims in Plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or for summary judgment pursuant to Federal Rule of Civil Procedure 56 (Dkt. 13), and Plaintiffs' cross-

motion for partial summary judgment (Dkt. 23) on their second and eighth claims.[1]  For the reasons that follow, Defendants' motion to dismiss is granted in part and denied in part, Defendants' motion for summary judgment is denied, and Plaintiffs' cross-motion for summary judgment is denied.

## **BACKGROUND**

On October 19, 2018, Plaintiffs resided at 53 Kosciusko Street in Rochester, New York, along with Tesla, Plaintiffs' four-year old dog.  (Dkt. 8 at ¶ 32; Dkt. 23-2 at ¶ 1; Dkt. 27-8 at ¶ 1).  At approximately 5:00 p.m., Rochester Police Department ("RPD") officers detained an individual in the backyard of 49 Kosciusko Street, the yard directly next to Plaintiffs.  (Dkt. 8 at ¶ 33; Dkt. 23-2 at ¶ 7; Dkt. 27-8 at ¶ 7).  An RPD officer directed Defendant Algarin to jump the fence between the yards to search Plaintiffs' backyard. (Dkt. 8 at ¶ 38; Dkt. 23-2 at ¶ 53; Dkt. 27-8 at ¶ 53).  Defendant Algarin jumped the fence without obtaining a warrant or consent.  (Dkt. at ¶ 39; Dkt. 23-2 at ¶¶ 22, 24; Dkt. 27-8 at ¶¶ 22, 24).  Unaware that Defendant Algarin was in the yard, Plaintiff Dempsey opened his back door to enter the yard with Tesla.  (Dkt. 8 at ¶ 45; Dkt. 23-2 at ¶ 26; Dkt. 27-8 at ¶ 26).  Tesla proceeded towards Defendant Algarin who fired two shots and killed Tesla. (Dkt. 8 at ¶¶ 48-50; Dkt. 23-2 at ¶¶ 27, 29; Dkt. 27-8 at ¶¶ 27, 29).  Defendant Algarin then pointed his firearm at Plaintiff Dempsey, screaming at him to get back.  (Dkt. 8 at ¶¶ 55, 56; Dkt. 23-2 at ¶ 36; Dkt. 27-8 at ¶ 36).  Plaintiff Dempsey ordered Defendant Algarin to

---

[1]     Plaintiffs initially filed their motion at Docket 19, but refiled it at Docket 23 to correct several errors.  Accordingly, the motion initially filed at Docket 19 is terminated as moot.

leave the property but Defendant Algarin refused to leave.  (Dkt. 8 at ¶ 57; Dkt. 23-2 at ¶¶ 38, 39; Dkt. 27-8 at ¶¶ 38, 39).  Ultimately the RPD officers allowed Plaintiff Dempsey to take Tesla for veterinary care but it was too late and she died from the gunshot wounds.  (Dkt. 8 at ¶ 71; Dkt. 23-2 at ¶ 51; Dkt. 27-8 at ¶ 51).

Plaintiffs commenced the instant lawsuit on October 21, 2019.  (Dkt. 1).  Defendants moved to dismiss the complaint (Dkt. 6), and Plaintiffs filed an amended complaint (Dkt. 8).  The amended complaint includes claims for municipal liability, unreasonable search of curtilage, unlawful seizure of personal property, unlawful seizure, failure to intervene, assault, negligence, trespass, and trespass to chattels/conversion.  Defendants filed the instant motion to dismiss and for summary judgment on January 31, 2020.  (Dkt. 13).  Plaintiffs filed their opposition to the motion to dismiss and cross-motion for partial summary judgment on March 27, 2020 (Dkt. 19), which they refiled on April 6, 2020 to correct deficiencies (Dkt. 23).

## DISCUSSION

## I.   Legal Standard

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff."  *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  To withstand dismissal, a claimant

must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

If a party presents matters outside the pleadings on a Rule 12(b)(6) motion, "the motion must be treated as one for summary judgment under Rule 56" and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). "The district court's conversion of a Rule 12(b)(6) motion into one for summary judgment is governed by principles of substance rather than form." *G. & A. Books, Inc. v. Stern,* 770 F.2d 288, 295 (2d Cir. 1985) ("Even where only the party moving to dismiss has submitted extrinsic material such as depositions or affidavits, the opposing party may be deemed to have had adequate notice that the motion to dismiss would be converted."); *Bd. of Trs. of Teamsters Local 918 Pension Fund v. Freeburg &*

*Freeburg*, C.P.A., No. 98-CV 4895(SJ), 1999 WL 803895, at *5 (E.D.N.Y. Sept. 28, 1999) ("[I]n a motion to dismiss under 12(b)(6), where affidavits and exhibits in addition to the pleadings are presented to and not excluded by the court, the court must convert the 12(b)(6) motion into a motion for summary judgment." (collecting cases)).

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). "The moving party bears the burden of showing the absence of a genuine dispute as to any material fact[.]" *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654

F.3d 347, 358 (2d Cir. 2011)).  Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358.  Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## II.   **Defendants' Motion to Dismiss and/or for Summary Judgment**

Defendants move to dismiss and/or for summary judgment on six of Plaintiffs' claims for relief: four claims arising under 42 U.S.C. § 1983 (municipal liability, unlawful seizure of property, unlawful seizure, and failure to intervene), and two state law claims of negligence and trespass.  The Court concludes that the record is sufficient (and Plaintiffs have had proper notice) to convert the motion directed to the unlawful seizure claims into a motion for summary judgment—indeed, Plaintiffs' cross-motion for summary judgment addresses some of the same facts at issue with the unlawful seizure claims.  However, with respect to the remaining claims that are the subject of Defendants' pending motion, the Court finds that the record is not adequately developed to treat the motion directed to those claims as one for summary judgment, and therefore it will limit its consideration of Defendants' motion to the allegations in the amended complaint.

### A.  **Section 1983 Claims**

The Court begins with Plaintiffs' claims arising under 42 U.S.C. § 1983, over which this Court has original jurisdiction.  28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of

the United States.").  Section 1983 provides a federal cause of action against persons who, under color of state authority, caused the deprivation of any rights, privilege, or immunities secured by the Constitution and laws of the United States.   42 U.S.C. § 1983. Municipalities and other local government entities are considered "persons" under § 1983. *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).  Here, Plaintiffs allege Defendants violated their Fourth Amendment rights pursuant to § 1983.

### 1.    Fourth Amendment Claim of Seizure of Property (Third Claim)

The Fourth Amendment states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause[.]"  U.S. Const. amend IV. It is settled law that "[a] 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interest in that property."  *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).  The "general rule" is that "absent an 'extraordinary situation' a party cannot invoke the power of the state to seize a person's property without a *prior* judicial determination that the seizure is justified." *United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 562 n. 12 (1983). "It is familiar history that indiscriminate searches and seizures conducted under the authority of 'general warrants' were the immediate evils that motivated the framing and adoption of the Fourth Amendment."  *Payton v. New York*, 445 U.S. 573, 583 (1980).  "[I]n the 'ordinary case,' seizures of personal property are 'unreasonable within the meaning of the Fourth Amendment,' without more, 'unless . . . accomplished pursuant to a judicial warrant,' issued by a neutral magistrate after a finding of probable cause."  *Illinois v.*

*McArthur*, 531 U.S. 326, 330 (2001) (quoting *United States v. Place*, 462 U.S. 696, 701 (1983)).  The "ultimate standard" of the Fourth Amendment is reasonableness; whether a particular seizure violates the Fourth Amendment therefore typically depends on an analysis that reflects a "careful balancing of governmental and private interests."  *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 71 (1992) (citations omitted).  There are recognized exceptions under which warrantless seizures will be considered "reasonable."  *See McArthur*, 531 U.S. at 330 (citing examples).  To be valid, however, "[a] warrantless seizure must meet one of the recognized exceptions to the [F]ourth [A]mendment's warrant requirement."  *United States v. Cosme*, 796 F.3d 226, 235 (2d Cir. 2015) (citation omitted).

The Second Circuit has concluded that "the unreasonable killing of a companion animal constitutes an unconstitutional 'seizure' of personal property under the Fourth Amendment."  *Carroll v. Cnty. of Monroe*, 712 F.3d 649, 651 (2d. Cir. 2013); *Azurdia v. City of New York,* No. 18-CV-04189-ARR-PK, 2019 WL 1406647, at *7 (E.D.N.Y. Mar. 28, 2019) ("[W]hen a dog is seized—and especially, as here, where it is killed, not merely injured or detained—the intrusion on the owner weighs heavily in favor of finding the seizure unreasonable." (quoting *Kendall v. Olsen*, 237 F. Supp. 3d 1156, 1167 (D. Utah 2017))).  In considering the reasonableness assessment in a case involving the fatal shooting of a companion animal, the test is "an objective one based on the totality of the circumstances and not an officer's subjective intent."  *Cabisca v. City of Rochester*, 14-CV-6485, 2019 WL 5691897, at *10 (W.D.N.Y. Nov. 4, 2019); *see also Shimburski v. McCarthy*, No. 17-CV-699S, 2020 WL 5653298, at *8 (W.D.N.Y. Sept. 23, 2020) ("Whether the seizure of property (the killing of the dog) is unreasonable depends upon the

balance of the nature and quality of the intrusion on Plaintiffs' Fourth Amendment interests and the Government's interest alleged to justify the intrusion.").

The court must keep in mind "the emotional attachment between a dog and an owner," *Matteson v. Hall*, No. 6:18-CV-06772-MAT, 2019 WL 2192502, at *7 (W.D.N.Y. May 21, 2019), but recognize that "dogs may represent a serious risk to the safety of officers and the general public, and in some circumstances, it may be 'reasonable for an officer to shoot a dog that he believes poses a threat to his safety or the safety of the community,'" *Cabisca*, 2019 WL 5691897, at *10 (quoting *Carroll*, 712 F.3d at 651). "As long as it was reasonable for the officer to believe that danger was imminent, a fatal seizure may be justified even if the dog did not actually pose a danger to the officer. '[T]he law does not require the officer to wait until the approaching animal is within biting distance or is leaping at him before taking protective action.'" *Azurdia,* 2019 WL 1406647, at *7 (quoting *Dziekan v. Gaynor*, 376 F. Supp. 2d 267, 272 (D. Conn. 2005)). "The key question, then, is whether a jury could reasonably conclude that the plaintiff had failed to prove that [the officer's] actions were unreasonable under the totality of the circumstances." *Carroll*, 712 F.3d at 650-51.

Among the factors a court may consider in its analysis of the totality of circumstances is the breed of the dog involved, *see Arurdia*, 2019 WL 1406647 at *8, as well as the dog's behavior, *Strong v. Perrone*, No. 17-CV-6183-FPG, 2020 WL 1445877, at *4 (W.D.N.Y. Mar. 25, 2020) ("If a dog is showing signs of aggression (baring teeth, ears back, tail straight, lunging, growling, snarling, barking, or charging), courts regularly find that it is reasonable for officers to defend themselves."). The court may also consider

the location of the dog at the time of the shooting and whether it was in a home or running free in public.  *Id.* at *3 (noting that the context of the situation where the dog was in the home at the time of the shooting "weighs in favor of finding the seizure of [the dog] unreasonable").

Defendants argue that it is undisputed and clearly depicted in the footage from Defendant Algarin's body worn camera that Tesla ran full speed at Defendant Algarin in a matter of two seconds, despite Defendant Algarin shouting, "whoa, whoa, whoa, whoa." (Dkt. 13-5 at 8).  To the contrary, Plaintiffs contend that the same footage demonstrates that Tesla "acted like a normal Labrador retriever when she unexpectedly encountered a stranger in her yard—she ran towards Algarin and barked.  The video clearly shows that Tesla did not bare her teeth, snarl, growl, or otherwise show signs of aggression."  (Dkt. 23-1 at 25).

Defendants rely on *Cabisca*, 2019 WL 5691897, at *11, for its holding that it was reasonable for an officer to conclude that a large unrestrained barking dog approaching him with no safe retreat presented a safety threat, justifying killing the animal.  But the *Cabisca* decision upon which Defendants rely was the court's decision following a bench trial. Importantly, the court in that case denied summary judgment on the same claim.  *Cabisca v. City of Rochester*, No. 14-CV-6485, 2017 WL 4221090, at *9 (W.D.N.Y. Sept. 21, 2017) ("A jury could reasonably determine that plaintiff's pet dog presented no immediate danger to the officers and that the animal was not uncontrolled and unsupervised when it was shot by Wengert.  Viewing the facts in the light most favorable to plaintiff, I find the current record creates an issue of fact on whether 'the totality of the circumstances' justified the

Fourth Amendment seizure of Bailey the dog.  Because of these disputed facts surrounding the shooting, summary judgment is denied on this Fourth Amendment claim."); *see also Matteson*, 2019 WL 2192502, at * 8 ("The fact that [the dog] may have been approaching [the officer] does not necessarily require the conclusion that he was displaying behaviors that could reasonably be considered threatening.  This is especially so when read in the context of Plaintiffs' other allegations about [the dog's] temperament, including that he had never displayed aggressive behavior toward anyone and, the day before, had greeted a visitor to the residence in an appropriate manner without incident.").

Here, too, issues of fact preclude resolution of this claim as a matter of law.  Many facts weigh in favor of a finding that the seizure was unreasonable, and as noted, the parties both rely on the same video footage to support their position on the reasonableness of the seizure.  Plaintiffs were at their own home at the time of the shooting, Tesla's breed is not one known for viciousness, and it is a factual question whether Defendant Algarin reasonably believed danger was imminent and if other non-lethal methods were available to him.  For these reasons, summary judgment on this claim is denied.

Alternatively, Defendants argue that Officer Algarin is entitled to qualified immunity on this claim.  "Qualified immunity insulates public officials from claims for damages where their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Defore v. Premore*, 86 F.3d 48, 50 (2d Cir. 1996) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Court "must look to both the clarity of the law establishing the right allegedly violated as well as whether a reasonable person, acting under the circumstances the[n]

confronting a defendant, would have understood that his actions were unlawful." *Ford v. McGinnis*, 352 F.3d 582, 596-97 (2d Cir. 2003) (quotation omitted).

"'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful." *District of Columbia v. Wesby*, __ U.S. __, 138 S. Ct. 577, 589 (2018) (quotation omitted). "This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (quotation omitted). "The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority." *Id.* at 589-90 (citation and quotations omitted). "It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* at 590.

"Before a court can determine if the relevant law was clearly established, 'the right allegedly violated must be defined at the appropriate level of specificity.'" *Barnes v. Fedele*, 337 F. Supp. 3d 227, 231 (W.D.N.Y. 2018) (quoting *Wilson v. Layne*, 526 U.S. 603, 615 (1999)*, aff'd in part, vacated in part, remanded*, 813 F. App'x 696 (2d Cir. 2020), *cert. denied*, No. 20-6033, 2020 WL 6829142 (U.S. Nov. 23, 2020). The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). Courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 741.

Here it was clearly established at the time of Tesla's death that the killing of a pet without justification violates the Fourth Amendment.  *Strong*, 2020 WL 1445877, at *6 ("It is further clearly established that killing 'a pet without justification constitutes a Fourth Amendment violation.'" (quoting *Azurdia*, 2019 WL 1406647, at *8)); *Matteson*, 2019 WL 2192502, at *8 ("At the time of [the dog's] death, the law clearly established that the fatal seizure of a pet dog without justification constituted a Fourth Amendment violation."); *Azurdia*, 2019 WL 1406647, at *8 ("At the time of [the dog's] death, the law clearly established that the fatal seizure of a pet without justification constitutes a Fourth Amendment violation.").  On this record and taking the facts in the light most favorable to Plaintiffs, a jury could find that a reasonable officer would have known that it was unlawful to use fatal force against Tesla under these circumstances.  In other words, for the reasons previously explained, the facts are plainly disputed as to whether the shooting of Tesla was justified under the circumstances, and resolving that issue as a matter of law on qualified immunity grounds at this stage of the proceedings would not be warranted.

Therefore, Defendant Algarin is not entitled to a finding of qualified immunity as a matter of law at this stage of the litigation.  *See Strong*, 2020 WL 1445877, at *6 (finding officer not entitled to summary judgment on the grounds of qualified immunity on claim arising from officer shooting of dog); *Matteson*, 2019 WL 2192502, at *8 (same); *Azurdia*, 2019 WL 1406647, at *8 (same).

Accordingly, Defendants' motion for summary judgment as to Plaintiffs' third claim for relief is denied.

2.      **Fourth Amendment Seizure (Fourth Claim)**

Separate from the seizure arising from Tesla's death, Plaintiffs also allege in their fourth claim for relief that Defendant Algarin seized Plaintiff Dempsey by shooting at Tesla in front of him and then pointing his gun at Plaintiff Dempsey.  (Dkt. 8 at ¶¶ 193-94).  They claim that Defendant Algarin also seized Plaintiff L.D. by shooting Tesla and pointing the gun at her as she stood in the door way behind her father.  (*Id.* at ¶ 195).  According to the amended complaint, Defendant Algarin yelled at Plaintiff Dempsey to "get back" while pointing the gun in his direction (*id.* at ¶ 55), and the video evidence supports these allegations.

"[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions.  So long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required."  *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (quotation and citation omitted).  "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."  *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968).  The Second Circuit has explained:

> Pertinent factors identifying a police seizure can include the threatening presence of several officers; *the display of a weapon*; physical touching of the person by the officer; *language or tone indicating that compliance with the officer was compulsory*; prolonged retention of a person's personal effects, such as airplane tickets or identification; and a request by the officer to accompany him to the police station or a police room.

*Brown v. City of Oneonta, N.Y.*, 221 F.3d 329, 340 (2d Cir. 2000) (emphasis added) (citations and quotations omitted); *see also Ozga v. Elliot*, 150 F. Supp. 3d 178, 188 (D. Conn. 2015) ("On the other hand, an encounter with the police may become so circumstantially coercive that it amounts to a seizure.  Among the circumstantial factors that may bear on whether a show-of-authority seizure has occurred is 'the threatening presence of several officers,' or 'the display of a weapon,' or the 'physical touching of the person by the officer,' or 'language or tone indicating that compliance with the officer was compulsory,' or 'a request by the officer to accompany him to the police station or a police room.') (quoting *Gilles v. Repicky,* 511 F.3d 239, 245 (2d Cir. 2007)).

Defendants do not dispute that Defendant Algarin pointed his gun at Dempsey at or around the time Tesla was shot, but contend that "pointing the gun in this fashion does not give rise to a Fourth Amendment seizure claim."  (Dkt. 13-5 at 16).  Yet, all of the circumstances must be considered—including Defendant Algarin's directions to Plaintiff Dempsey as he was pointing the gun.  The Court concludes that the facts as to whether Defendant Algarin's conduct rose to the level of an unconstitutional seizure cannot be resolved as a matter of law.  Accordingly, Defendants' motion for summary judgment on this claim is denied.

### 3.    Failure to Intervene (Fifth Claim)

Plaintiffs' fifth claim for relief, failure to intervene, is asserted against RPD Officer Adam Gorman who was originally named as a defendant in this matter.  Defendants argue that Gorman is no longer a defendant in this case following Plaintiffs' amendment of their

complaint and that the failure to intervene claim is subject to dismissal on that basis.[2]

Plaintiffs do not address this claim on the instant motions.  Having not contested the relief

sought, and having failed to name Gorman in the caption of the amended complaint, the

Court presumes Plaintiffs do not oppose dismissal of this claim.  *Jackson v. Fed. Exp.*, 766

F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when

appropriate, infer from a party's partial opposition that relevant claims or defenses that are

not defended have been abandoned."); *Chen v. Wolf*, No. 19-CV-9951 (AJN), 2020 WL

6825681, at *6 (S.D.N.Y. Nov. 20, 2020) ("This Court may, and generally will, deem a

claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim

should be dismissed." (quoting *Lipton v. Cnty. of Orange*, NY, 315 F. Supp. 2d 434, 446

(S.D.N.Y. 2004))).  Accordingly, Defendants' motion to dismiss on the claim for failure to

intervene is granted.  Although "[w]hen a motion to dismiss is granted, the usual practice

is to grant leave to amend the complaint," *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d

Cir. 1990), in this case it is not even apparent that Plaintiffs intend to pursue this claim,

and therefore the claim is simply dismissed without prejudice.

---

[2]      While the amended complaint removed Gorman's name from the caption, the body
of the pleading contains references to Gorman being a defendant (*see* Dkt. 8 at ¶ 26) and
claims being asserted against him (*see id.* Second, Third, Fifth, and Eighth Claims for
Relief).  In addition, counsel's December 24, 2019 letter to the Court indicates that it was
another defendant who was removed from the case, suggesting that Gorman remains. (*See*
Dkt. 10 ("On December 19, 2019, after reviewing Defendants['] motion and in an effort to
streamline the issues herein, Plaintiff responded to Defendants' motion by filing an
amended complaint that removed a defendant, Jason Rudolph. . . .")).  Elsewhere in
Plaintiffs' memorandum, they appear to reference the assertion of some claims remaining
against Gorman, (Dkt. 23-1 at 21), but do not address the failure to intervene claim at all.
The Court does not resolve whether Gorman remains a defendant on these other claims at
this stage.

### 4.   <u>Municipal Liability (First Claim)</u>

"[T]o establish municipal liability under § 1983, a plaintiff must prove that 'action pursuant to official municipal policy' caused the alleged constitutional injury." *Cash v. County of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2018)).  "[T]o hold a [municipality] liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to . . . prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983).  Official municipal policy includes "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61.  To survive a motion to dismiss, the plaintiff "cannot merely allege the existence of a municipal policy or custom, but must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Triano v. Town of Harrison, NY*, 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012) (quotation omitted).  A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (citations omitted).  "Failure to train is an actionable policy only where that failure reflects a deliberate or conscious choice by the municipality."  *Shimburski*, 2020 WL 5653298, at *10.

In their amended complaint, Plaintiffs allege that RPD officers shoot and kill dogs at a high rate and that this practice amounts to a "shoot-first" policy.  They allege that the City is deliberately indifferent to this situation by not training its officers how to properly and lawfully interact with the dogs they encounter.  (Dkt. 8 at ¶¶ 105, 107, 109, 110). Plaintiffs also cite to the Second Circuit's language in *Carroll* in support of their allegation of a policy and failure to train by the City of Rochester.  Specifically, in *Carroll*, the Second Circuit stated:  "Deputy Carroll, in particular, has apparently killed two other dogs in the course of executing no-knock search warrants, which indicates that officers in the County encounter these situations more frequently than they would probably prefer and that planning and training—while not always constitutionally required—may be advisable to avoid future tragedies and future litigation." *Carroll*, 712 F.3d at 653 n.2.

The Court finds that Plaintiffs have plausibly pled a claim for municipal liability sufficient to warrant discovery.  Plaintiffs have pled sufficient facts alleging deliberate indifference on the part of the municipality to allow this claim to go forward and advance to discovery.  Accordingly, Defendants' motion to dismiss Plaintiffs' first claim for relief is denied.

### B. **State Law Claims**

Plaintiffs also allege state law claims for negligence (seventh claim for relief) and trespass to chattel/conversion (ninth claim for relief).  Much like the failure to intervene claim, Plaintiffs put forth no argument in opposition to Defendants' motion to dismiss these claims.  Relying on *McCall v. Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000), Plaintiffs state in the initial portion of their brief that their failure to respond to any portion of Defendants' Rule 12(b)(6) motion should not be deemed a default.  (Dkt. 23-1 at 15).  However, these claims in the amended complaint are not well-pleaded.  For instance, there are no allegations about a special duty in the negligence allegations, nor do Plaintiffs address that aspect of Defendants' motion.  (*See* Dkt. 13-5 at 18).  Furthermore, the chattel/conversion claim attempts to assert claims against all defendants (including against Gorman, who, as noted, is no longer named in the caption of the amended complaint).  Thus, the Court concludes that Defendants' Rule 12(b)(6) motion directed to these claims should be granted, although the claims are dismissed without prejudice.

## III.   **Plaintiffs' Cross-Motion for Summary Judgment**

Plaintiffs cross-move for summary judgment on their unlawful entry claim pursuant to 42 U.S.C. § 1983 (second cause of action) and trespass claim pursuant to New York State law (eighth cause of action).

### A. **Unlawful Entry**

The Fourth Amendment recognizes the "right of the people to be secure in their persons . . . against unreasonable searches. . . ." U.S. Const. amend. IV.  "Whether a search is reasonable 'is determined by assessing, on the one hand, the degree to which it intrudes

upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate government interests.'" *United States v. Massey*, 461 F.3d 177, 178 (2d Cir. 2006) (quoting *Samson v. California*, 547 U.S. 843, 848 (2006)). "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979) (citations omitted).

"In general, a state actor must obtain a warrant based on probable cause to lawfully execute a search." *Anobile v. Pelligrino*, 303 F.3d 107, 117 (2d Cir. 2001). A warrantless search is per se unreasonable, "subject only to a few specifically established and well-delineated exceptions." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)); *Dalessandro v. Cty. of Nassau*, 758 F. App'x 165, 167 (2d Cir. 2019) ("The core premise underlying the Fourth Amendment is that warrantless searches of a home are presumptively unreasonable." (quoting *Harris v. O'Hare,* 770 F.3d 224, 231 (2d Cir. 2014)).

"[P]olice officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home." *Kirk v. Louisiana*, 536 U.S. 635, 638 (2002); *Dalessandro*, 758 F. App'x at 167 ("Warrantless entry is justified when there is both probable cause and exigency."). "Probable cause 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *Dalessandro*, 758 F. App'x at 167 (quoting *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983)). "The essential question in determining whether exigent circumstances justified a warrantless entry is whether law enforcement agents were confronted by an 'urgent need' to render aid or take

action." *United States v. MacDonald*, 916 F.2d 766, 770 (2d Cir. 1990) (quotation

omitted).  Examples of exigent circumstances "include the need to pursue a fleeing suspect,

protect individuals who are threatened with imminent harm, or prevent the imminent

destruction of evidence." *Carpenter v. United States*, ___ U.S. ___, 138 S. Ct. 2206, 2222-

23 (2018); *see also United States v. Santana*, 427 U.S. 38, 42-43 (1976) ("The District

Court was correct in concluding that 'hot pursuit' means some sort of a chase, but it need

not be an extended hue and cry 'in and about (the) public streets.' The fact that the pursuit

here ended almost as soon as it began did not render it any the less a 'hot pursuit' sufficient

to justify the warrantless entry into Santana's house.").

The area around an individual's home is entitled to the protection afforded by the

Fourth Amendment.  In *Collins v. Virginia*, ___ U.S. ___, 138 S. Ct. 1663 (2018), the

Supreme Court explained:

> Like the automobile exception, the Fourth Amendment's protection of
> curtilage has long been black letter law.  "[W]hen it comes to the Fourth
> Amendment, the home is first among equals." *Florida v. Jardines*, 569 U.S.
> 1, 6, 133 S. Ct. 1409, 185 L.Ed.2d 495 (2013).  "At the Amendment's 'very
> core' stands 'the right of a man to retreat into his own home and there be free
> from unreasonable governmental intrusion.'" *Ibid.* (quoting *Silverman v.
> United States*, 365 U.S. 505, 511, 81 S. Ct. 679, 5 L.Ed.2d 734 (1961)).  To
> give full practical effect to that right, the Court considers curtilage—"the area
> 'immediately surrounding and associated with the home'"—to be "'part of
> the home itself for Fourth Amendment purposes.'" *Jardines*, 569 U.S., at 6,
> 133 S .Ct. 1409 (quoting *Oliver v. United States*, 466 U.S. 170, 180, 104 S.
> Ct. 1735, 80 L.Ed.2d 214 (1984)).  "The protection afforded the curtilage is
> essentially a protection of families and personal privacy in an area intimately
> linked to the home, both physically and psychologically, where privacy
> expectations are most heightened." *California v. Ciraolo*, 476 U.S. 207, 212-
> 213, 106 S. Ct. 1809, 90 L.Ed.2d 210 (1986).  When a law enforcement
> officer physically intrudes on the curtilage to gather evidence, a search within
> the meaning of the Fourth Amendment has occurred. *Jardines*, 569 U.S., at

> 11, 133 S. Ct. 1409.  Such conduct thus is presumptively unreasonable absent
> a warrant.

*Collins*, 138 S. Ct. at 1670.

Here, Plaintiffs ask the Court to find as a matter of law that Defendant Algarin did not have probable cause to enter Plaintiffs' back yard.  They similarly urge the Court to conclude that no exigent circumstances were present justifying Defendant Algarin's entry into the yard, determining as a matter of law that any hot pursuit had concluded and no public safety danger was presented.  Defendants contend that multiple issues of fact exist that prohibit resolution of the claim in Plaintiffs' favor, including whether the area of the backyard qualifies as curtilage of the home, given that the area is untended and unprotected from public observation.  In addition, they argue that the question of whether the officers were in hot pursuit of a suspect at the time of entry justifying the entry is an open one.  The Court agrees that in light of the factual disputed issues in this case, these questions are not appropriately resolved at this stage of the proceedings, particularly without the benefit of discovery.  *See Schoolcraft v. City of New York*, 103 F. Supp. 3d 465, 503 (S.D.N.Y.) ("Similarly, the question of whether the remaining basis for the initial entry constitute an objectively reasonable basis for warrantless entry cannot be resolved as a matter of law on this record.  A jury could find that, the facts, as they appeared at the moment of entry, would lead a reasonable, experienced officer, to believe that there was an urgent need to render aid or take action." (citations omitted)), *on reconsideration in part*, 133 F. Supp. 3d 563 (S.D.N.Y. 2015).

Conversely, Defendants contend that the undisputed facts do demonstrate that Defendant Algarin is entitled to qualified immunity on the claim.  But much like the unlawful seizure claim, while it is settled law that the warrantless entry onto private property in the absence of exigent circumstances is a constitutional violation, *U.S. v. Allen*, 813 F.3d 76, 81 (2d Cir. 2016) ("It is [ ] settled law that, at a minimum, law enforcement officers violate *Payton* when, in the absence of exigent circumstances or consent, they physically enter protected premises to effect a warrantless search or arrest."), multiple issues of fact preclude resolution of the question of qualified immunity at this stage of the proceedings, *Fernandez*, 457 F. Supp. 3d at 383 ("Given that the altercation that led to the 911 call had ended, and that the alleged victim was safely outside the apartment building, no reasonable officer could have believed that exigent circumstances justified a warrantless entry of the apartment. Accordingly, qualified immunity does not shield the officers from liability for the warrantless entry.").

Accordingly, Plaintiffs' motion for summary judgment and Defendants' cross-motion for qualified immunity on this claim are denied.

### B. **Trespass**

While police personnel may be liable for trespass where they lack any authority to enter private property, in general under New York state law, "law-enforcement officials have a privilege to enter private property to perform their legal duties." *Reynolds v. United States*, 927 F. Supp. 91, 96 (W.D.N.Y. 1996) (dismissing a claim of trespass because the agent "was on the property precisely because he was a police officer acting within the scope of his employment"); *see also Fernandez v. City of New York*, 457 F. Supp. 3d 364, 380

(S.D.N.Y. 2020) ("[L]aw enforcement personnel acting lawfully in the furtherance of their duty are excused from what may be otherwise trespassory acts . . . ." (quoting *Hand v. Stray Haven Humane Soc. & S.P.C.A.*, Inc., 21 A.D.3d 626, 628 (3d Dep't 2005)), *reconsideration denied*, No. 17 CIV. 789 (PGG), 2020 WL 3448019 (S.D.N.Y. June 24, 2020); *People v. Malatesta*, 186 Misc. 2d 312, 319 (Sup. Ct. 1999) ("In the absence of such or similar authority to enter private property, police personnel may be liable to civil or criminal trespass.").

For all of the same reasons set forth above, issues of fact exist as to whether Defendant Algarin was investigating possible criminal conduct in furtherance of a legitimate law enforcement duty at the time he entered Plaintiffs' backyard without a warrant. Plaintiffs' motion for summary judgment on Plaintiffs' trespass claim is accordingly denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part, and Defendants' motion and Plaintiff's cross-motion for summary judgment are both denied.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: November 30, 2020
     Rochester, New York