Exhibit F

[Page 1]
June 9, 2023

```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-----------------------------------------x
CHARLES DEMPSEY, individually, and L.D. by her
father and natural guardian, CHARLES DEMPSEY,

                    Plaintiff(s),

                    Index No. 19-CV-6780(EAW)

        -against-

THE CITY OF ROCHESTER, a municipal entity, JAVIER
ALGARIN, ADAM GORMAN, "JOHN DOE" RPD OFFICER
RESPONSIBLE FOR TRAINING JAVIER ALGARIN,

                    Defendant(s).
-----------------------------------------x


                    June 9, 2023
                    11:08 a.m.


        VIDEO CONFERENCED EXAMINATION BEFORE
TRIAL of Defendant by SERGEANT JASON RUDOLPH,
pursuant to Order, before Laura B. Lowenthal, a
Notary Public within and for the State of New
York.
```

```
(1)
(2)     A P P E A R A N C E S:
(3)
           ROTH & ROTH, LLP
(4)        Attorneys for Plaintiff(s)
              192 Lexington Avenue, Suite 802
(5)           New York, New York 10016-6823
(6)        BY: ELLIOT DOLBY-SHIELDS, ESQ.
              E-mail:  eshields@rothandrothlaw.com
(7)
(8)        CITY OF ROCHESTER LAW DEPARTMENT
           Attorneys for Defendant(s)
(9)           30 Church Street
              Rochester, New York 14614
(10)
           BY: PEACHIE L. JONES, ESQ.
(11)          E-mail:  peachie.jones@cityofrochester.gov
(12)
(13)
(14)
(15)
(16)
(17)
(18)
(19)
(20)
(21)
(22)
(23)
(24)
(25)
```

[Page 8]
June 9, 2023

```
(1)
(2)   S E R G E A N T  J A S O N  R U D O L P H,
(3)       called as a witness, having been first duly
(4)       sworn by a Notary Public, was examined and
(5)       testified as follows:
(6)   EXAMINATION BY
(7)   MR. DOLBY-SHIELDS:
(8)       Q     Can you please state your full name
(9)   for the record?
(10)      A     Jason Rudolph.
(11)      Q     Can you please state your current work
(12)  address for the record?
(13)      A     I work at 185 Exchange Boulevard,
(14)  Rochester, New York  14614.
(15)            MS. JONES:  My name is Peachie Jones.
(16)            I am an attorney for the City of
(17)            Rochester.  I represent Jason Rudolph
(18)            and I am affirming that the witness
(19)            today is Jason Rudolph.
(20)      Q     Good morning, Sergeant.
(21)      A     Good morning.
(22)      Q     My name is Elliot Shields.  I
(23)  represent the father and daughter whose dog was
(24)  shot and killed in front of them in their yard.
(25)            I am going to ask you some questions
```

```
(1)                  Sergeant J. Rudolph
(2)      Q    Would you also be required to notify
(3)   PSS or only the lieutenant?
(4)      A    It depends, and we can talk about a
(5)   bunch of different scenarios, it just depends on
(6)   what occurred during any policy or general order
(7)   of violation on who would be called passed a
(8)   lieutenant.
(9)      Q    Is that laid out somewhere in a rule
(10)  like certain violations are required to be
(11)  reported to the lieutenant and others for example
(12)  maybe something more serious would be required to
(13)  be reported to someone else?
(14)     A    Yes.
(15)     Q    Do you know what general order that
(16)  would be detailing?
(17)     A    I don't know the number general order
(18)  but it is titled Discipline.
(19)     Q    Can you tell me all of the evidence
(20)  that you reviewed before you wrote your Incident
(21)  Report?
(22)     A    I responded to the scene and saw the
(23)  dog, I saw the area from which Officer Algarin
(24)  fired his weapon from and just checked the
(25)  general area if you will.
```

```
(1)                  Sergeant J. Rudolph
(2)       Q    Who did you speak with, before you
(3)  wrote your Incident Report who did you speak
(4)  with?
(5)       A    I spoke with -- say again, sorry.
(6)       Q    Before you wrote your Incident Report
(7)  who did you speak with?
(8)       A    Officer Algarin.
(9)       Q    Did you speak with any of the other
(10) officers who were at the scene?
(11)      A    I cannot recall.
(12)      Q    Did you speak with any of the
(13) witnesses at the scene?
(14)      A    I did speak with the dog owner at the
(15) time that was at the scene.
(16)      Q    Tell me everything you remember about
(17) your conversation with Mr. Dempsey?
(18)      A    Obviously he was at the time as you
(19) can see on the body-worn camera he was very
(20) upset, I remember telling him that he can bring
(21) his dog to the veterinarian if he wants to at any
(22) time, I did tell him that Animal Control was on
(23) the way.  Specifics passed that I can't recall.
(24)      Q    Did you speak with his daughter at
(25) all?
```

(1)              Sergeant J. Rudolph
(2)      **A    I do not recall speaking to his**
(3) **daughter.**
(4)      Q    Did you speak with any of the other
(5) civilian witnesses at the scene?
(6)      **A    I don't recall.**
(7)      Q    You watched body-worn camera recording
(8) prior to writing your report; correct?
(9)      **A    Yes.**
(10)     Q    Do you remember if you only watched
(11) Officer Algarin's body-worn camera or if you also
(12) watched body-worn camera recordings from the
(13) other officers who were at the scene?
(14)     **A    I know that I watched Officer**
(15) **Algarin's body-worn camera. I cannot recall if I**
(16) **viewed others.**
(17)     Q    In the Incident Report you said that
(18) there were no witnesses; is that right?
(19)     **A    If I can read through this. Do you**
(20) **want to direct me to a spot that?**
(21)     Q    I apologize because I had a version
(22) that I highlighted and that is not what I put up
(23) here. I apologize.
(24)          "No witnesses".
(25)     **A    Yes, no witnesses.**

```
(1)                  Sergeant J. Rudolph
(2)   not there was not.
(3)       Q    After you drafted your report have you
(4)   learned that there are potentially any other
(5)   inaccuracies in your report?
(6)            MS. JONES:  Objection.  Elliot, this
(7)            has been asked already.
(8)       Q    You can go ahead and answer the
(9)   question.
(10)      A    Yes, again, I am going to disagree
(11)  with you, sir, that there inaccuracies in my
(12)  report. I do not generate reports with
(13)  deficiencies and inaccuracies.
(14)      Q    I am just going to ask you to listen
(15)  to my specific question which was after you
(16)  drafted the report have you learned any other
(17)  information that could lead you to believe that
(18)  there is any other potential inaccuracies in your
(19)  report?
(20)           MS. JONES:  Objection.
(21)      A    No.
(22)      Q    And your report says that you notified
(23)  Lieutenant Person and Lieutenant Tordai; correct?
(24)      A    Correct.
(25)      Q    Who is Lieutenant Person?
```

```
(1)                  Sergeant J. Rudolph
(2)    them for example in your locker or somewhere
(3)    else?
(4)              MS. JONES:   Objection.
(5)         A    No.
(6)         Q    So they were not maintained in like
(7)    one specific place?
(8)         A    No.
(9)              MR. SHIELDS:  To the extent that
(10)             Officer or Sergeant Rudolph has any
(11)             relevant notes we call for the
(12)             production and I will followup in
(13)             writing.
(14)        Q    So back to Exhibit 3, the File History
(15)   Activity. I just want to go through it and ask
(16)   you about some of the individuals who viewed the
(17)   video.
(18)             So if we go above your entry next it's
(19)   Officer Algarin again and above him it's Ralph
(20)   Montinarelli; am I saying that right?
(21)        A    Montinarelli.
(22)        Q    Who is Ralph Montinarelli?
(23)        A    He I believe at the time was a
(24)   lieutenant.  He is currently retired.
(25)        Q    Do you know why Lieutenant
```

(1)              Sergeant J. Rudolph
(2) Montinarelli would have watched the video?
(3)         MS. JONES:    Objection.
(4)    A    I do not.
(5)    Q    Was he a Lieutenant in the Clinton
(6) section?
(7)    **A    I do not recall his assignment at the**
(8) **time.**
(9)    Q    Would he have been someone above you
(10) in the chain of command?
(11)    **A    Yes.**
(12)    Q    So can you explain the review process
(13) during an incident like this?
(14)         After you report the incident to,
(15) let's see, it was Lieutenant Person and PSS they
(16) would then someone at their level would then
(17) review the incident?
(18)    **A    At the PSS level, yes.**
(19)    Q    How about in the section level you
(20) said that Lieutenant Person was the lieutenant on
(21) duty that day for what was it?
(22)    **A    For the City.  He is basically in**
(23) **charge of the City that day.**
(24)    Q    Now was Lieutenant Montinarelli and
(25) Lieutenant Person did they have basically the

[Page 124]
June 9, 2023

(1)                     **Sergeant J. Rudolph**

(2)     Q    When a dog sees a stranger often they
(3) run up to that person; right?
(4)         **MS. JONES:   Objection.**
(5)     **A**    **I am not an expert on behaviors of**
(6) **dogs.**
(7)     Q    Have you ever received any training
(8) about behaviors of dogs?
(9)     **A**    **I have.**
(10)     Q    In that training did you learn that
(11) often times especially if you're on that dog's
(12) property it will run up to you and approach you?
(13)     **A**    **The dogs take interest in people, yes,**
(14) **but some dogs no. I have certainly in my**
(15) **experience gone onto properties during other jobs**
(16) **wherein there is a dog and there is no interest.**
(17)     Q    In your training were you taught what
(18) to do if a dog runs up to you?
(19)     **A**    **Yes, the training outlines various**
(20) **things, if the dog is aggressive, if it is**
(21) **submissive, if it is posturing in a certain way**
(22) **and if it runs towards you, yes, there is**
(23) **training on that and there has been.**
(24)     Q    What does the training tell you to do
(25) or permit you to do if a dog runs up to you when

(1)              Sergeant J. Rudolph
(2)  you're on its property?
(3)           MS. JONES:   Objection.
(4)     A    The training isn't just subjected to
(5)  property. It is just any dog encounters anywhere.
(6)           But when a dog runs up to you anywhere
(7)  based on that officer's perception of it if it is
(8)  aggressive or not you can use tools that you have
(9)  on your belt, you can use a firearm if you feel
(10) that that dog is going to injure you or a third
(11) person, to stop that.
(12)    Q    So it is a subjective standard that
(13) applies when you're responding to a dog that is
(14) approaching you?
(15)          MS. JONES:   Objection.
(16)    A    Again, it is based on the officer's
(17) perception of that dog and also take into account
(18) the environmental factors that are going on
(19) around him, people in the area, if there is
(20) someone there or not to take the dog, there is a
(21) lot of things that come into play as a dog comes
(22) running up at you.
(23)    Q    So my question is is the standard when
(24) you're reviewing whether or not the use of force
(25) against a dog was reasonable is that a subjective

[Page 198]
June 9, 2023

```
(1)                  Sergeant J. Rudolph
(2)   policies with respect to the legal requirements
(3)   to enter the curtilage to a residential property?
(4)        A     No policy changes that I can think of.
(5)        Q     Any updates in training?
(6)        A     Specific to?
(7)        Q     Specific to let's take it step by
(8)   step.
(9)              So since this incident in 2018 are
(10)  you -- October of 2018 are you aware of any new
(11)  training for how officers interact with dogs?
(12)       A     From the department I believe we may
(13)  have had a roll call training in there I believe.
(14)       Q     That is not a new training.  That is
(15)  just kind of a reiteration of the prior 2014
(16)  training?
(17)             MS. JONES:   Objection.
(18)       A     Yes, nothing newer.
(19)       Q     Same question, similar question, since
(20)  October of 2018 has there been any new or
(21)  additional training about the lawful requirement
(22)  to enter the curtilage to a residential property?
(23)       A     Not that I am aware of off the top of
(24)  my head.
(25)             MR. SHIELDS:  Thank you, Sergeant.  I
```