Exhibit J

C O N F I D E N T I A L

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - -
ERIN GURSSLIN,

    Plaintiff,

                  Civil Action No. 20-cv-6508
v.

THE CITY OF ROCHESTER, a municipal entity, POLICE OFFICER JEREMY NELLIST, POLICE OFFICER JOSHUA KELLY, COMMANDER FABIAN RIVERA, LIEUTENANT AARON SPRINGER,

    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - -

Video-recorded Deposition Upon Oral Examination of:

        Officer Jonathan P. Laureano

| | |
|---|---|
| Location: | Alliance Court Reporting, Inc. |
| | 109 South Union Street, Suite 400 |
| | Rochester, New York  14607 |
| Date: | February 27, 2023 |
| Time: | 10:00 a.m. |
| Reported By: | KIMBERLY A. BONSIGNORE |
| | Alliance Court Reporting, Inc. |
| | 109 South Union Street, Suite 400 |
| | Rochester, New York  14607 |



**Confidential**

2

```
 1              A P P E A R A N C E S
 2   Appearing Remotely on Behalf of Plaintiff:
 3   Elliot D. Shields, Esq.
 4      Roth & Roth LLP
 5      192 Lexington Avenue, Suite 802
 6      New York, New York  10016
 7      eshields@rothandrothlaw.com
 8
 9   Appearing on Behalf of Defendants:
10   Peachie L. Jones, Esq.
11      City of Rochester Law Department
12      City Hall, Room 400A
13      30 Church Street
14      Rochester, New York  14614
15      peachie.jones@cityofrochester.gov
16
17   Also Present:
18   Kenneth Williamson, Videographer
19      Alliance Court Reporting, Inc.
20      109 South Union Street, Suite 400
21      Rochester, New York  14607
22
23                     *    *    *
24
25
```



ALLIANCE COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

**Confidential**

5

|            |    |                                                                |
|------------|----|----------------------------------------------------------------|
|            | 1  | OFFICER JONATHAN P. LAUREANO - BY MR. SHIELDS                  |
| 10:40:42   | 2  |         Counsel, please state your appearances for            |
| 10:40:45   | 3  | the record, and please begin with the noticing                 |
| 10:40:48   | 4  | attorney.                                                      |
| 10:40:48   | 5  |         MR. SHIELDS:  Elliot Shields, Roth & Roth             |
| 10:40:51   | 6  | LLP, for the plaintiff.                                        |
| 10:40:52   | 7  |         MS. JONES:  Peachie Jones, with the City              |
| 10:40:55   | 8  | of Rochester, for all defendants.                              |
| 10:40:57   | 9  |         THE VIDEOGRAPHER:  Thank you, Counsel.                |
| 10:40:58   | 10 |         Our court reporter today is Kim                       |
| 10:41:02   | 11 | Bonsignore, also with Alliance Court Reporting, and            |
| 10:41:05   | 12 | she will now swear in our witness.                             |
|            | 13 |         You may begin, Counsel.                               |
|            | 14 | OFFICER JONATHAN P. LAUREANO,                                  |
|            | 15 |     called herein as a witness, first being sworn,             |
|            | 16 |     testified as follows:                                      |
| 10:41:17   | 17 |     EXAMINATION BY MR. SHIELDS:                                |
| 10:41:17   | 18 |     Q.  Good morning, Officer.                                 |
| 10:41:20   | 19 |     A.  Good morning.                                          |
| 10:41:20   | 20 |     Q.  My name is Elliot Shields.  I represent                |
| 10:41:24   | 21 | numerous people whose dogs have been shot and killed           |
| 10:41:28   | 22 | by RPD officers.  I'm going to ask you some questions          |
| 10:41:31   | 23 | today.  First I'm just going to go over some ground            |
| 10:41:35   | 24 | rules for the deposition.                                      |
| 10:41:37   | 25 |         Will you tell me if you don't understand              |



*Videography · Remote · Deposition Suites*
www.alliancecourtreporting.net · 585.546.4920

Confidential

43

```
                 1        OFFICER JONATHAN P. LAUREANO - BY MR. SHIELDS
11:26:20         2     that moment.
11:26:21         3            Q.   Okay.  Had you ever received specific
11:26:24         4     training about judging any objective factors that a
11:26:32         5     dog displays to determine whether what you perceive to
11:26:38         6     be a threat is an actual threat?
11:26:40         7               MS. JONES:  Objection.
11:26:44         8            A.   The department did training on that some
11:26:49         9     time ago.
11:26:50        10            Q.   Okay.  What do you remember from that
11:26:52        11     training?
11:26:52        12            A.   Some photos of aggressive dogs and just
11:27:00        13     more of a recognition on -- you know, things, again,
11:27:05        14     that we would already have been -- were already taught
11:27:09        15     about the growl -- you know, how they are as far as
11:27:14        16     posture or demeanor, like growling and like -- I don't
11:27:25        17     know -- lunging.
11:27:25        18               If you want to call it growling, like
11:27:28        19     lunging like when they snap their jaws.  There's
11:27:30        20     traits that are exhibited that are quite apparent when
11:27:36        21     a dog is not happy to see you, I'd say.
11:27:41        22            Q.   Okay.  If the traits are so apparent, what
11:27:46        23     was the point of the training?
11:27:47        24               MS. JONES:  Objection.
11:27:48        25            A.   I would say that there can never be too
```



Confidential

44

|  |  |
|---|---|
| | 1    OFFICER JONATHAN P. LAUREANO - BY MR. SHIELDS |
| 11:27:52 | 2    much training, and refreshers are always good. |
| 11:27:55 | 3         Q.  Did the training help you to recognize |
| 11:27:59 | 4    these signs of a dog's aggressiveness, aside from what |
| 11:28:09 | 5    you've learned during your experience working in the |
| 11:28:09 | 6    field as a police officer? |
| 11:28:10 | 7         A.  I mean, I wouldn't say that it was |
| 11:28:12 | 8    anything I hadn't heard before, but it was -- like I |
| 11:28:15 | 9    said, served as a good reinforcement because there are |
| 11:28:19 | 10   individuals who transfer, you know, go to |
| 11:28:21 | 11   administrative positions who are off the road for some |
| 11:28:25 | 12   time, and they come back to the road.  Sometimes |
| 11:28:27 | 13   people forget things or lose things, and that's why |
| 11:28:32 | 14   you have in-services. |
| 11:28:33 | 15        Q.  Okay.  Did the training include anything |
| 11:28:35 | 16   about how to avoid shooting a dog that you perceive to |
| 11:28:41 | 17   be aggressive? |
| 11:28:41 | 18        A.  I believe it did.  I don't recall |
| 11:28:43 | 19   specifically what that was, but I don't believe it -- |
| 11:28:47 | 20   I'm not sure if it deviated too much again from what |
| 11:28:49 | 21   we were already taught about time, distance, and |
| 11:28:53 | 22   cover. |
| 11:28:54 | 23        Q.  Okay.  With any of the instances that you |
| 11:29:00 | 24   shot at a dog, were you ever disciplined? |
| 11:29:05 | 25        A.  No. |



| | | |
|---|---|---|
| | 1 | OFFICER JONATHAN P. LAUREANO - BY MR. SHIELDS |
| 01:25:36 | 2 | avoid shooting the dog? |
| 01:25:37 | 3 | MS. JONES:  Objection. |
| 01:25:38 | 4 | A.   As I already stated, sir, it happened |
| 01:25:44 | 5 | within seconds.  So by the time we could make that |
| 01:25:48 | 6 | request, the dog had already made a couple aggressive |
| 01:25:54 | 7 | movements and was approaching -- was approaching us |
| 01:25:57 | 8 | and was a threat at that point. |
| 01:25:59 | 9 | Had it just remained seated and -- I guess |
| 01:26:04 | 10 | I've already described that sometimes they're more |
| 01:26:06 | 11 | alarmed and they're standoffish, they're aggressive, |
| 01:26:09 | 12 | but it's just posturing, and they're not really |
| 01:26:11 | 13 | looking to get into anything.  They're just looking to |
| 01:26:13 | 14 | let us know that we're not welcome.  And there's time |
| 01:26:15 | 15 | at that point to call for a less-lethal deployment, or |
| 01:26:18 | 16 | a catch pole, because we know the dog's, you know, not |
| 01:26:23 | 17 | imminently a threat.  It's not charging anybody and |
| 01:26:27 | 18 | it -- we have time.  In that moment, we did not have |
| 01:26:28 | 19 | time.  We had several seconds, and it was over as |
| 01:26:31 | 20 | quickly as it began. |
| 01:26:32 | 21 | Q.   What would have happened if the whole |
| 01:26:34 | 22 | team, before entering the gate, had paused, pointed |
| 01:26:39 | 23 | their guns at the three individuals in the driveway, |
| 01:26:43 | 24 | and said "Secure that dog" before entering the gate to |
| 01:26:47 | 25 | go up to the front door and enter the house? |

