Exhibit M

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - -
ERIN GURSSLIN,

       Plaintiff,

               Case No.  20-cv-6508(EAW)(MJP)
v.

THE CITY OF ROCHESTER, a municipal entity, POLICE OFFICER JEREMY NELLIST, POLICE OFFICER JOSHUA KELLY, COMMANDER FABIAN RIVERA, LIEUTENANT AARON SPRINGER,

       Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - -

Remote Deposition Upon Oral Examination Of:

           James W. Crosby, PhD

Date:         June 18, 2024

Time:        10:00 a.m.

Reported By:  CHRISTINE VIGNA
              Alliance Court Reporting, Inc.
              109 South Union Street, Suite 400
              Rochester, New York 14607



ALLIANCE COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

2

```
 1
 2                   A P P E A R A N C E S
 3      Appearing Remotely on Behalf of Plaintiff:
 4      Elliot D. Shields, Esq.
 5           Roth & Roth LLP
 6           192 Lexington Avenue, Suite 802
 7           New York, New York  10016
 8           eshields@rothandrothlaw.com
 9
10      Appearing Remotely on Behalf of Defendants:
11      Peachie L. Jones, Esq.
12           City of Rochester Law Department
13           City Hall, Room 400A
14           30 Church Street
15           Rochester, New York  14614
16           peachie.jones@cityofrochester.gov
17                       *     *     *
18
19
20
21
22
23
24
25
```



```
 1            JAMES W. CROSBY, PHD - BY MS. JONES
 2            regardless of the witness' location;
 3                 And finally, that there will be no
 4            objection to the admissibility of this
 5            transcript based on proceeding in this way
 6            starting with counsel for the plaintiff?
 7                 MR. SHIELDS:  Yes.  So stipulated.
 8                 MS. JONES:  Yes.  Defendant also
 9            stipulates.
10                 MR. SHIELDS:  I have no follow-up
11            questions from last time, so you can go
12            ahead, Peachie.
13                 MS. JONES:  Okay.  Great.
14       JAMES W. CROSBY, PHD,
15            called herein as a witness, first being
16            sworn, testified as follows:
17            EXAMINATION BY MS. JONES:
18            Q.   Mr. Crosby, again my name is Peachie
19       Jones.  Just to remind you from last time around,
20       will you please wait until I finish my question
21       before you answer?
22            A.   Yes.
23            Q.   Will you tell me if you don't
24       understand my question?
25            A.   Yes.
```



73

1           JAMES W. CROSBY, PHD - BY MS. JONES
2    have been trained to use and that use of deadly
3    force, whether it's with animals or others with
4    humans, should be your last option, not your first.
5           Q.   Did the city incorporate any of the
6    content or parts of the free and effective training
7    such as the LEDET or from California POST into their
8    training on dog encounters?
9           A.   I've looked at the DiDomenico
10   training, both the original longer version and the
11   shorter version that were supposed to be presented,
12   I guess, as roll call or in-service.  And many of
13   the same principles were included such as firearms
14   are a last -- a last option and trying to avoid or
15   shield oneself from an approaching dog is
16   appropriate, using less and non-lethal means of
17   force is not only appropriate, but desired.  So many
18   of the basic -- the very basic principles that run
19   through all of these trainings were there.
20                The officers, however, have testified
21   that they didn't remember or incorporate any of that
22   into their practices.
23           Q.   I believe in the prior deposition you
24   said that you principally relied on the officers'
25   deposition testimony in concluding that the city's



74

```
 1                JAMES W. CROSBY, PHD - BY MS. JONES
 2    training on dog encounters was subpar.  Am I
 3    remembering that correctly or did you rely on other
 4    things to support your opinion that the city failed
 5    to appropriately train its officers on dog
 6    encounters?
 7                MR. SHIELDS:  Objection to form.
 8         A.    It's a combination.  It's the
 9    officers' testimony coupled with the fact that they
10    are not practicing those techniques, at least in the
11    cases that I've directly examined here.  They're not
12    practicing the techniques that we're taught in the
13    training.
14                The training itself was very -- was
15    relatively speaking very short, which is in itself a
16    problem and fails -- fails to address enough
17    information and techniques.  There was no indication
18    that the training involved actually practicing any
19    of these techniques, which for police training is
20    very unusual.  Defensive tactics and firearms
21    tactics are typically subject to repeated long-term
22    training, many repetitions as opposed to just
23    sitting in a classroom with a PowerPoint.
24                The animal encounter training in this
25    case was -- was again not interactive.  It was not
```



```
                                                                  81

 1              JAMES W. CROSBY, PHD - BY MS. JONES
 2     State of Louisiana.
 3              So the last actual trial would have
 4     been 2019.  Again, because the process -- the
 5     attorneys tend to settle out.
 6          Q.   I'm sorry.  Can you spell the names
 7     in that St. Louis 2019 case?
 8          A.   Yes.  That was the case where the
 9     settlement was $750,000 in favor of the plaintiff.
10     The names were Zorich.  That's Z-O-R-I-C-H versus
11     Zavorka, Z-A-V-O-R-K-A, and the St. Louis County
12     Police Department.  And that was in St. Louis,
13     Missouri.
14          Q.   Thank you.
15              What good and accepted police
16     practice states that training on dog encounters
17     should last at least four hours?
18          A.   In my experience -- and I
19     wouldn't -- I wouldn't draw a hard line at four
20     hours.  I would say that teaching the subject
21     adequately should not be tried or done in less than
22     about four hours simply because of the volume of
23     behavioral issues, use of less and non-lethal forces
24     and the criteria one should consider when it is
25     appropriate to use deadly force.  That takes time.
```

