CONFIDENTIAL

1

2              UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF NEW YORK

3  - - - - - - - - - - - - - - - - - - - - - - - - - - -

ERIN GURSSLIN,

4

        Plaintiff,

5

                Civil Action No. 20-cv-6508

6  v.

7  THE CITY OF ROCHESTER, A MUNICIPAL ENTITY, POLICE
OFFICER JEREMY NELLIST, POLICE OFFICER JOSHUA

8  KELLY, COMMANDER FABIAN RIVERA, LIEUTENANT AARON
SPRINGER,

9

        Defendants.

10  - - - - - - - - - - - - - - - - - - - - - - - - - - -

11  Video-Recorded Deposition in the Above-Titled Matter:

12            Sergeant Eric Alexander

13

Location:     Alliance Court Reporting, Inc.

14            109 South Union Street, Suite 400
            Rochester, New York 14607

15

16

Date:        February 16, 2023

17

18

Time:        10:00 a.m.

19

20

21

22  Reported By:  CHRISTINE VIGNA

23            Alliance Court Reporting, Inc.

24            109 South Union Street, Suite 400

25            Rochester, New York 14607



ALLIANCE COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

Confidential

```
 1
 2                    A P P E A R A N C E S
 3   Appearing Remotely on Behalf of Plaintiff:
 4   Elliot D. Shields, Esq.
 5       Roth & Roth LLP
 6       192 Lexington Avenue, Suite 802
 7       New York, New York 10016
 8       eshields@rothandrothlaw.com
 9
10   Appearing on Behalf of Defendants:
11   Peachie L. Jones, Esq.
12       City of Rochester Law Department
13       City Hall, Room 400A
14       30 Church Street
15       Rochester, New York 14614
16       peachie.jones@cityofrochester.gov
17
18   Also Present:
19   Kenneth Williamson, Videographer
20       Alliance Court Reporting, Inc.
21       109 South Union Street, Suite 400
22       Rochester, New York  14607
23
24                   *       *       *
25
```



**ALLIANCE**
COURT REPORTING, INC.
*Videography · Remote · Deposition Suites*
www.alliancecourtreporting.net · 585.546.4920

Confidential

1              S T I P U L A T I O N S

2    THURSDAY, FEBRUARY 16, 2023;

3              (Proceedings in the above-titled matter

4              commencing at 10:15 a.m.)

5                    *      *      *

6              IT IS HEREBY STIPULATED by and between the

7    attorneys for the respective parties that this

8    deposition may be taken by the Plaintiff at this time

9    pursuant to subpoena;

10             IT IS FURTHER STIPULATED, that all

11   objections except as to the form of the questions and

12   responsiveness of the answers, be reserved until the

13   time of the trial;

14             IT IS FURTHER STIPULATED, that pursuant to

15   Federal Rules of Civil Procedure 30(e)(1) the witness

16   requests to review the transcript and make any

17   corrections to same before any Notary Public;

18             IT IS FURTHER STIPULATED, that if the

19   original deposition has not been duly signed by the

20   witness and returned to the attorney taking the

21   deposition by the time of trial or any hearing in this

22   cause, a certified transcript of the deposition may be

23   used as though it were the original;

24             IT IS FURTHER STIPULATED, that the

25   attorneys for the parties are individually responsible



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

| | |
|---|---|
| 1 | P R O C E E D I N G S |
| 2 | for their certified transcript charge, including any |
| 3 | expedite or other related production charges; |
| 4 | AND IT IS FURTHER STIPULATED, that the |
| 5 | Notary Public, CHRISTINE VIGNA, may administer the |
| 6 | oath to the witness. |
| 7 | *     *     * |

10:14:55   8    THE VIDEOGRAPHER:  We are on the record.
10:14:56   9  The time is 10:15 a.m. on Thursday, February 16, 2023.
10:15:04   10  My name is Ken Williamson for Alliance Court Reporting
10:15:08   11  located at 109 South Union Street, Rochester, New
10:15:13   12  York.  We are located today at Alliance Court
10:15:16   13  Reporting.  And we are -- we have one attorney
14  virtually.

10:15:19   15    We are about to begin the video-recorded
10:15:22   16  deposition of Sergeant Eric Alexander in the matter of
10:15:28   17  Erin Gursslin, Plaintiff, versus The City of
18  Rochester, a Municipal Entity, Police Officer Jeremy
19  Nellist, Police Officer Joshua Kelly, Commander Fabian
20  Rivera, Lieutenant Aaron Springer, Defendants.

10:15:45   21    Today's matter is being video-recorded on
10:15:47   22  behalf of the Plaintiffs.  Counsel, please state your
10:15:51   23  appearances for the record and please begin with the
10:15:53   24  noticing attorney.
10:15:55   25    MR. SHIELDS:  Good morning.  This is



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

```
           1              SERGEANT ERIC ALEXANDER - BY MR. SHIELDS
12:36:18   2    your -- there's a -- I wouldn't say -- there's
12:36:21   3    multiple written tests throughout it.  It's a
12:36:25   4    pass-fail based on your -- based on those tests and
12:36:27   5    your successful completion of the school.
12:36:30   6         Q.  Got it.
12:36:30   7              For the RPD, is that something that you're
12:36:35   8    only at that training with other RPD officers or would
12:36:40   9    there be like sheriff's deputies there too?
12:36:44  10         A.  It's situationally dependent.  It's a New
12:36:45  11    York State-certified school.  We and other -- other
12:36:49  12    agencies can be there.
12:36:50  13         Q.  So it's like the academy?
12:36:53  14         A.  Yeah.  Yes.
12:36:55  15         Q.  Okay.  At the academy, did you learn
12:36:59  16    anything about interacting with dogs?
12:37:01  17         A.  I don't --
12:37:02  18              MS. JONES:  Objection.
12:37:02  19         A.  -- I don't recall.
12:37:03  20         Q.  Okay.  So nothing stands out to you?
12:37:07  21         A.  No.
12:37:07  22         Q.  Okay.  Do you remember if at the academy
12:37:15  23    you learned anything about dog behavior?
12:37:18  24         A.  I don't recall.
12:37:18  25         Q.  At the academy, were you trained that you
```



ALLIANCE
COURT REPORTING, INC.

Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

Confidential

114

| | | |
|---|---|---|
| | 1 | SERGEANT ERIC ALEXANDER - BY MR. SHIELDS |
| 12:37:25 | 2 | could shoot a dog if you were afraid? |
| 12:37:27 | 3 | MS. JONES:  Objection. |
| 12:37:29 | 4 | A.  Again, I think that goes back to the last |
| 12:37:30 | 5 | question.  I don't -- I don't recall. |
| 12:37:31 | 6 | Q.  Do you recall anything about your training |
| 12:37:36 | 7 | at the academy regarding dogs? |
| 12:37:39 | 8 | A.  No.  No, sir.  I don't -- again, I don't |
| 12:37:43 | 9 | recall if it did or did not happen. |
| 12:37:45 | 10 | Q.  Okay.  All right.  Since the academy, not |
| 12:37:59 | 11 | including SWAT, what training have you received about |
| 12:38:02 | 12 | interacting with dogs? |
| 12:38:03 | 13 | A.  I believe there was a roll call training |
| 12:38:07 | 14 | and another training from the Humane Society that |
| 12:38:11 | 15 | was -- |
| 12:38:12 | 16 | Q.  Tell me everything -- tell me everything |
| 12:38:14 | 17 | you remember about those trainings. |
| 12:38:15 | 18 | A.  I think just dog posture and their -- how |
| 12:38:22 | 19 | to possibly identify their demeanor.  And that's |
| 12:38:26 | 20 | basically it.  Yup. |
| 12:38:28 | 21 | Q.  Okay.  That was basically what you |
| 12:38:29 | 22 | remember from those trainings? |
| 12:38:31 | 23 | A.  Yes. |
| 12:38:32 | 24 | Q.  Was one -- one was an in-service training? |
| 12:38:36 | 25 | A.  I believe it was an in-person.  Yes.  I |



|  | 1 | SERGEANT ERIC ALEXANDER - BY MR. SHIELDS |
|--|---|--|
| 12:38:40 | 2 | believe so. |
| 12:38:40 | 3 | Q.   Okay.   Do you remember when that was? |
| 12:38:43 | 4 | A.   No. |
| 12:38:43 | 5 | Q.   Okay.   And that was about dealing with |
| 12:38:49 | 6 | aggressive dogs? |
| 12:38:51 | 7 | MS. JONES:   Objection. |
| 12:38:51 | 8 | A.   About -- about dogs in general.   I don't |
| 12:38:53 | 9 | know what the purpose or -- about -- it was about |
| 12:38:56 | 10 | dogs.   I don't know if there was anything other |
| 12:38:58 | 11 | attached to it. |
| 12:38:59 | 12 | Q.   Okay.   And what you remember about that |
| 12:39:03 | 13 | training is just about the dog posture?   Is that what |
| 12:39:06 | 14 | you said? |
| 12:39:06 | 15 | MS. JONES:   Objection. |
| 12:39:07 | 16 | A.   Again, I think -- I think basically just |
| 12:39:09 | 17 | how to identify possible demeanor. |
| 12:39:13 | 18 | Q.   Okay.   And what do you remember about how |
| 12:39:15 | 19 | to identify possible demeanor? |
| 12:39:17 | 20 | A.   Just how a dog is, their -- their posture, |
| 12:39:21 | 21 | their body position, maybe what -- what they're doing |
| 12:39:24 | 22 | is showing how -- how they may react. |
| 12:39:27 | 23 | Again, I'm not a Humane Society person, |
| 12:39:30 | 24 | but, you know, they explained how these are all |
| 12:39:34 | 25 | possible things to identify. |



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

Confidential

116

|  | 1 | SERGEANT ERIC ALEXANDER - BY MR. SHIELDS |
|---|---|---|
| 12:39:35 | 2 | Q.  Okay.  All right.  I'll ask you some more |
| 12:39:41 | 3 | questions about that later. |
| 12:39:43 | 4 | What about the annual firearms training, |
| 12:39:47 | 5 | does that involve dog-shooting scenarios? |
| 12:39:50 | 6 | A.  I don't recall.  I don't believe so. |
| 12:39:55 | 7 | Q.  Okay.  And in addition to that in-service |
| 12:40:03 | 8 | training, I think you said there was one other |
| 12:40:05 | 9 | training you remembered? |
| 12:40:06 | 10 | A.  I believe there was something that |
| 12:40:08 | 11 | was -- it was a version of that called roll call |
| 12:40:12 | 12 | training. |
| 12:40:13 | 13 | Q.  Okay.  Do you remember when that was? |
| 12:40:14 | 14 | A.  No. |
| 12:40:15 | 15 | Q.  Okay.  But after the first training? |
| 12:40:19 | 16 | A.  I -- I'm not sure. |
| 12:40:21 | 17 | Q.  Okay. |
| 12:40:23 | 18 | A.  I don't know which one was first or |
| 12:40:25 | 19 | second. |
| 12:40:25 | 20 | Q.  And a roll call would be like five minutes |
| 12:40:28 | 21 | where they would show a PowerPoint or something? |
| 12:40:31 | 22 | MS. JONES:  Objection. |
| 12:40:31 | 23 | But go ahead. |
| 12:40:32 | 24 | A.  Correct. |
| 12:40:33 | 25 | Q.  All right.  Now, in your SWAT training, |



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

1   SERGEANT ERIC ALEXANDER - BY MR. SHIELDS

12:40:42 2 tell me everything that you've received about

12:40:45 3 interactions with dogs.

12:40:47 4   A.  How to use a catchpole.

12:40:50 5   Q.  Okay.  Anything else?

12:40:53 6   A.  No.

7   (The following exhibit was marked for

12:40:53 8   identification:  Number EXH 6.)

12:40:53 9   Q.  Okay.  All right.  Just for the record, I

12:40:58 10 want to put up what we'll mark as Exhibit 6.  And

12:41:04 11 it's, I believe, the -- well, it's a document entitled

12:41:09 12 "Catchpole" that the city produced in this case.

12:41:15 13   All right.  And, Sergeant, do you see on

12:41:18 14 your screen this first page that just says

12:41:22 15 "Catchpole"?

12:41:22 16   A.  Correct.

12:41:23 17   Q.  Have you seen this document before?

12:41:25 18   A.  I would have to see the rest of it.

12:41:28 19 I don't -- I don't recall or not.

12:41:30 20   Q.  Sure.

12:41:32 21   So this is a ten-page document.  Here's

12:41:36 22 the second page entitled "Ketch" with a K, K-E-T-C-H,

12:41:43 23 "All Pole."

12:41:43 24   A.  Okay.  Yeah.  That's just describing what

12:41:48 25 a catchpole is.  And it's -- it looks like what the



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

|          |    |                                                              |
|----------|----|--------------------------------------------------------------|
|          | 1  | SERGEANT ERIC ALEXANDER - BY MR. SHIELDS                      |
| 12:41:52 | 2  | parts and pieces are.                                        |
| 12:41:55 | 3  | Q.  Okay.  Do you remember seeing that page                  |
| 12:41:57 | 4  | previously?                                                   |
| 12:41:58 | 5  | A.  Again, it -- my memory is that we received               |
| 12:42:03 | 6  | training in it.  I can't tell you what all the slides        |
| 12:42:06 | 7  | are.                                                          |
| 12:42:07 | 8  | Q.  Okay.  Do you remember when you received                 |
| 12:42:08 | 9  | the catchpole training?                                      |
| 12:42:10 | 10 | A.  No.                                                       |
| 12:42:11 | 11 | Q.  Okay.  "Application" is the next page,                    |
| 12:42:17 | 12 | which is marked COR 180.  And for the record, the            |
| 12:42:21 | 13 | first page of this document is COR 178.                      |
| 12:42:27 | 14 | Do you -- I'm sorry.  So we were on                          |
| 12:42:32 | 15 | "Application."  Do you remember this page from your          |
| 12:42:33 | 16 | training?                                                     |
| 12:42:34 | 17 | A.  Again, sir, I can't tell you if I remember               |
| 12:42:37 | 18 | all the pages.  I know how to use -- how to use the          |
| 12:42:40 | 19 | catchpole, which I think is what this was.  The goal         |
| 12:42:44 | 20 | was to teach us how to use the catchpole.  Again, I          |
| 12:42:48 | 21 | can't tell you what is on page 12 or 15 of this.             |
| 12:42:51 | 22 | Q.  Okay.  So let's just scroll through the                  |
| 12:42:54 | 23 | pages and see if generally you remember this document.       |
| 12:42:59 | 24 | So the next page COR 181, it says "Not                       |
| 12:43:03 | 25 | Going According to Plan, Pre-Application."  And then         |



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

Confidential

119

```
              1           SERGEANT ERIC ALEXANDER - BY MR. SHIELDS
12:43:07      2    the next page, 182, "Not Going According to Plan,
12:43:12      3    Post-Application."  And then the next page, 183,
12:43:18      4    "Leash Applications."  And the next page, 184, there's
12:43:21      5    one -- two, three, four -- five images.
12:43:24      6           A.   Okay.
12:43:25      7           Q.   And then 185 says "Other Equipment."  And
12:43:32      8    then it says "Snare, Y Pole, animalcare.com."  And
12:43:36      9    then the last page is "Resources."
12:43:39     10           So it's actually a nine-page document and
12:43:42     11    then there's a different document after that.  So this
12:43:45     12    one, Exhibit 6, ends at COR 186.  So after scrolling
12:43:52     13    through all those pages, Sergeant, do you remember
12:43:54     14    previously seeing this document?
12:43:56     15           A.   Yes.
12:43:57     16           Q.   Okay.  And is the only time that you
12:44:03     17    previously saw this document at the catchpole training
12:44:06     18    that you got?
12:44:07     19           MS. JONES:  Objection.
12:44:08     20           But go ahead.
12:44:10     21           A.   This document, yes.
12:44:12     22           Q.   Okay.  Have you ever had to use the
12:44:14     23    catchpole?
12:44:14     24           A.   Yes.
12:44:15     25           Q.   How many times?
```



Confidential

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | SERGEANT ERIC ALEXANDER - BY MR. SHIELDS                      |
| 12:44:17 | 2  | A.  I don't know.  I can't give you a number.             |
| 12:44:20 | 3  | I've used it before.                                      |
| 12:44:21 | 4  | Q.  Okay.  More than one?                                 |
| 12:44:22 | 5  | A.  Yes.                                                  |
| 12:44:23 | 6  | Q.  Was it effective?                                     |
| 12:44:26 | 7  | MS. JONES:  Objection.                                    |
| 12:44:27 | 8  | But go ahead.                                             |
| 12:44:28 | 9  | A.  Both effective and ineffective in my -- in            |
| 12:44:31 | 10 | my uses.                                                  |
| 12:44:31 | 11 | Q.  Okay.  When it was ineffective, what                  |
| 12:44:39 | 12 | happened?                                                 |
| 12:44:39 | 13 | A.  The dog was just out of control.  We                  |
| 12:44:42 | 14 | weren't able to get the dog on the catchpole.             |
| 12:44:44 | 15 | Q.  Okay.  Did -- did anyone end up shooting              |
| 12:44:49 | 16 | the dog?                                                  |
| 12:44:49 | 17 | A.  I don't recall.  I don't believe so.                  |
| 12:44:53 | 18 | Q.  Okay.  So the catchpole didn't work but               |
| 12:44:56 | 19 | the officers were able to avoid shooting the dog?         |
| 12:45:00 | 20 | A.  I believe so, yes.                                    |
| 12:45:00 | 21 | Q.  Okay.  Do the SWAT team members carry, in             |
| 12:45:10 | 22 | addition to a catchpole, a leash?                         |
| 12:45:12 | 23 | A.  No.                                                   |
| 12:45:13 | 24 | Q.  How about any of the other equipment                  |
| 12:45:25 | 25 | mentioned like the snare or the Y pole here on page       |



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

Confidential

121

```
              1        SERGEANT ERIC ALEXANDER - BY MR. SHIELDS
12:45:28      2    185?
12:45:28      3        A.  No.
              4        (The following exhibit was marked for
12:45:28      5        identification:  Number EXH 7.)
12:45:28      6        Q.  Okay.  Okay.  I'm going to move on to
12:45:44      7    Exhibit 7, which is actually the last page, the -- the
12:45:50      8    tenth page on the prior document but we'll mark that
12:45:54      9    as a separate exhibit, Exhibit 7.
12:45:57     10        So this says "Special Weapons and Tactics,
12:46:02     11    Entry Team Training Schedule, Tuesday, 2/7/17."
12:46:07     12        Is that what you're seeing on your screen
12:46:10     13    right now, Sergeant?
12:46:11     14        A.  Correct.
12:46:12     15        Q.  Okay.  Now, it's mostly redacted, but it
12:46:16     16    says that at 11:30 on that day there was a dog
12:46:23     17    catchpole training that was a quarter-hour long.  The
12:46:28     18    location was Brooks.  The instructor was Jimenez.  And
12:46:34     19    then it lists that Kelly and Nellist were present for
12:46:39     20    that training.
12:46:40     21        Do you remember if maybe that was the date
12:46:43     22    that you took the training as well or do you think you
12:46:45     23    took it on a different date?
12:46:47     24        A.  That may be the same day.
12:46:50     25        Q.  Okay.  Do you remember taking your
```



Confidential

122

|  |  |  |
|---|---|---|
|  | 1 | SERGEANT ERIC ALEXANDER - BY MR. SHIELDS |
| 12:46:54 | 2 | training with Kelly and Nellist? |
| 12:46:57 | 3 | MS. JONES:  Objection. |
| 12:46:58 | 4 | But go ahead. |
| 12:46:59 | 5 | A.  Again, I believe so.  This would have been |
| 12:47:01 | 6 | done as a -- as a team. |
| 12:47:03 | 7 | Q.  Okay.  And this document that we're |
| 12:47:05 | 8 | looking at right now, that's like a specific SWAT team |
| 12:47:11 | 9 | training, I guess, roster document? |
| 12:47:15 | 10 | A.  Correct. |
| 12:47:15 | 11 | Q.  Okay.  So would that be something |
| 12:47:19 | 12 | different from if there was a training that was |
| 12:47:22 | 13 | required for every member of the department? |
| 12:47:24 | 14 | A.  Correct. |
|  | 15 | (The following exhibit was marked for |
| 12:47:24 | 16 | identification:  Number EXH 8.) |
| 12:47:24 | 17 | Q.  Okay.  So I want to move on and put up a |
| 12:47:34 | 18 | different document that we'll mark as Exhibit 8 and |
| 12:47:39 | 19 | the city produced this document in this case.  The |
| 12:47:43 | 20 | first Bates number is COR GUR 01669.  And it's |
| 12:47:53 | 21 | partially redacted on the first page, but it says |
| 12:47:59 | 22 | "Observation, Surveillance and Communications." |
| 12:48:02 | 23 | And, Sergeant, have you seen this document |
| 12:48:03 | 24 | before? |
| 12:48:04 | 25 | A.  I don't recall when. |



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

Confidential

123

|          | 1  | SERGEANT ERIC ALEXANDER - BY MR. SHIELDS |
| 12:48:09 | 2  | Q.  Okay.  Does this look like a SWAT team |
| 12:48:14 | 3  | document? |
| 12:48:14 | 4  | A.  Can you scroll it for me? |
| 12:48:16 | 5  | Well, yes.  It's published by us, |
| 12:48:19 | 6  | our -- our RPD SWAT team is on the front. |
| 12:48:24 | 7  | Q.  Okay.  So on -- on page 2 here or COR |
| 12:48:33 | 8  | 1670, it describes scouting as "the act of performing |
| 12:48:39 | 9  | an exploratory survey or examination, as in seeking |
| 12:48:45 | 10 | out information about a target location, its |
| 12:48:49 | 11 | surroundings and individuals involved." |
| 12:48:50 | 12 | I asked you this a little bit before. |
| 12:48:52 | 13 | Actually, let me -- yeah.  Okay.  Let me -- let me |
| 12:48:54 | 14 | just ask you.  Is that basically your understanding of |
| 12:48:57 | 15 | what scouting means? |
| 12:49:00 | 16 | A.  Correct. |
| 12:49:00 | 17 | Q.  Okay.  Is that something that's done |
| 12:49:04 | 18 | before every incident? |
| 12:49:05 | 19 | A.  Correct. |
| 12:49:06 | 20 | Q.  Okay.  And it says would also conduct |
| 12:49:13 | 21 | during planning stage. |
| 12:49:16 | 22 | All right.  So then page 5, it says |
| 12:49:23 | 23 | "Pre-Surveillance Scout."  So I guess my first |
| 12:49:27 | 24 | question is -- when I say "page 5," that's page 5 of |
| 12:49:32 | 25 | the PDF, which is Bates number COR GUR 1673. |



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

Confidential

124

1          SERGEANT ERIC ALEXANDER - BY MR. SHIELDS

12:49:41   2          So my question is, first -- this says

12:49:48   3    "Pre-Surveillance Scout."  Is that different from what

12:49:50   4    we saw on the prior page that just said scouting or is

12:49:53   5    scouting generally just, you know, one thing?  Is it

12:49:55   6    referring to the same thing?

12:49:56   7          A.  The prior page was the definition of a

12:50:01   8    scout.

12:50:04   9          Q.  Okay.  And then pre-surveillance scout,

12:50:08   10   this one is just more detail about the things that

12:50:10   11   should be done during the scout?

12:50:13   12         A.  Correct.

12:50:15   13              MR. SHIELDS:  Okay.

12:50:15   14              MS. JONES:  Just for the record, I'm

12:50:17   15   marking all the questions about this document, Exhibit

12:50:19   16   8, as confidential since we're talking about a

12:50:24   17   document that's been marked as confidential.

12:50:26   18              MR. SHIELDS:  Sure.

12:50:27   19         Q.  Okay.  And I think the majority of the

12:50:35   20   remainder of this document is marked as redacted, but

12:50:40   21   I have a couple of questions.

12:50:51   22              Okay.  So starting at page COR GUR 1691,

12:50:57   23   which is entitled "Vehicular Sniper Hides" and then it

12:51:06   24   goes on to 1694 for "Urban Sniper Hides" and then at

12:51:14   25   1697 "Rural Exterior Sniper Hides."  So I guess my



Confidential

125

|  |  |  |
|---|---|---|
|  | 1 | SERGEANT ERIC ALEXANDER - BY MR. SHIELDS |
| 12:51:20 | 2 | question generally is, would it just be situationally |
| 12:51:25 | 3 | dependent on what type of sniper hide is chosen for |
| 12:51:29 | 4 | which type of incident? |
| 12:51:30 | 5 | A.  I guess you would have to refer to a |
| 12:51:33 | 6 | sniper.  I'm not a -- on the sniper team nor am I a |
| 12:51:37 | 7 | certified sniper. |
| 12:51:38 | 8 | Q.  Okay.  So would it be the sniper team that |
| 12:51:41 | 9 | chooses the location where they hide and what type of |
| 12:51:45 | 10 | sniper hides would be used at any incident? |
| 12:51:47 | 11 | MS. JONES:  Objection. |
| 12:51:49 | 12 | But go ahead. |
| 12:51:49 | 13 | A.  In general, yes. |
| 12:51:50 | 14 | Q.  Okay.  So the rest of the team wouldn't be |
| 12:51:52 | 15 | involved in making that decision? |
| 12:51:54 | 16 | A.  Correct. |
| 12:51:55 | 17 | Q.  Okay.  Would the commander be involved in |
| 12:51:59 | 18 | making that decision? |
| 12:52:00 | 19 | MS. JONES:  Objection. |
| 12:52:00 | 20 | But go ahead. |
| 12:52:02 | 21 | A.  He would in the end, I would think, know |
| 12:52:05 | 22 | where they're going and approve it if he saw any |
| 12:52:10 | 23 | errors or anything that needed to be adjusted.  That |
| 12:52:12 | 24 | would be mentioned prior to the execution of it. |
| 12:52:20 | 25 | Q.  Okay.  In your experience as a police |



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

Confidential

126

| | | |
|---|---|---|
| | 1 | SERGEANT ERIC ALEXANDER - BY MR. SHIELDS |
| 12:52:34 | 2 | officer since 2005, what percentage of residential |
| 12:52:42 | 3 | properties in the city have dogs? |
| 12:52:45 | 4 | A.  I can't answer that.  I don't know. |
| 12:52:48 | 5 | Q.  On an average week, what percentage of |
| 12:52:56 | 6 | residential properties that you respond to have dogs? |
| 12:52:59 | 7 | MS. JONES:  Objection. |
| 12:53:02 | 8 | But go ahead. |
| 12:53:02 | 9 | A.  Again, it changes.  I can't -- I can't |
| 12:53:07 | 10 | give you a number. |
| 12:53:07 | 11 | Q.  Okay.  When's the last time that you |
| 12:53:10 | 12 | responded to a property that had a dog? |
| 12:53:13 | 13 | A.  Probably last -- my last wheel, so last |
| 12:53:23 | 14 | week. |
| 12:53:23 | 15 | Q.  Okay.  And were there more than one -- was |
| 12:53:29 | 16 | there more than one time last week that you responded |
| 12:53:33 | 17 | to a property that had a dog? |
| 12:53:35 | 18 | A.  I don't recall.  I can't give you a |
| 12:53:37 | 19 | number. |
| 12:53:37 | 20 | Q.  Okay.  Is it a high number, a high |
| 12:53:42 | 21 | percentage of properties or only a few? |
| 12:53:45 | 22 | MS. JONES:  Objection. |
| 12:53:46 | 23 | But go ahead. |
| 12:53:47 | 24 | A.  A high number. |
| 12:53:48 | 25 | Q.  More than half? |



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

|          | 1  | SERGEANT ERIC ALEXANDER - BY MR. SHIELDS |
|----------|----|------------------------------------------|
| 12:53:50 | 2  | MS. JONES:  Objection. |
| 12:53:51 | 3  | A.  Again, I can't give you a number. |
| 12:53:56 | 4  | Q.  And you've been an officer since 2005, |
| 12:53:59 | 5  | right? |
| 12:53:59 | 6  | A.  Correct. |
| 12:54:00 | 7  | Q.  And a large part of your job is responding |
| 12:54:05 | 8  | to calls or other incidents at people's homes? |
| 12:54:08 | 9  | MS. JONES:  Objection. |
| 12:54:09 | 10 | But go ahead. |
| 12:54:09 | 11 | A.  Correct. |
| 12:54:10 | 12 | Q.  And a lot of the time when you respond to |
| 12:54:14 | 13 | somebody's home there's a dog present? |
| 12:54:15 | 14 | MS. JONES:  Objection. |
| 12:54:16 | 15 | A.  Correct. |
| 12:54:17 | 16 | Q.  And would -- would you say it's more often |
| 12:54:23 | 17 | than not that there's a dog at the property? |
| 12:54:25 | 18 | MS. JONES:  Objection. |
| 12:54:27 | 19 | But go ahead. |
| 12:54:27 | 20 | A.  Correct. |
| 12:54:28 | 21 | Q.  Okay.  And based on your 18 years of |
| 12:54:43 | 22 | experience, have you ever heard of an RPD officer |
| 12:54:46 | 23 | being disciplined in any way for shooting a dog? |
| 12:54:50 | 24 | MS. JONES:  Objection. |
| 12:54:51 | 25 | A.  I'm not privy to officers' discipline. |



Confidential

128

|  |  |  |
|---|---|---|
|  | 1 | SERGEANT ERIC ALEXANDER - BY MR. SHIELDS |
| 12:54:56 | 2 | Q.  Sure. |
| 12:54:58 | 3 | Now, you're friends with other officers, |
| 12:55:02 | 4 | right? |
| 12:55:03 | 5 | A.  Of course. |
| 12:55:04 | 6 | Q.  Have any of your other -- are you aware |
| 12:55:09 | 7 | through your friendships with other officers or in any |
| 12:55:12 | 8 | other way of anybody ever being disciplined for any |
| 12:55:15 | 9 | reason? |
| 12:55:15 | 10 | A.  For any reason? |
| 12:55:18 | 11 | Q.  Yeah. |
| 12:55:18 | 12 | A.  In the -- in the RPD? |
| 12:55:20 | 13 | Q.  Correct. |
| 12:55:21 | 14 | A.  Yeah.  Many people have been disciplined. |
| 12:55:24 | 15 | Q.  Are you aware through any source of any |
| 12:55:30 | 16 | person ever being disciplined in any way for shooting |
| 12:55:36 | 17 | a dog? |
| 12:55:36 | 18 | A.  I don't recall. |
| 12:55:36 | 19 | Q.  You don't recall or no? |
| 12:55:37 | 20 | A.  I don't -- I don't -- I don't know if |
| 12:55:40 | 21 | anyone has been disciplined. |
| 12:55:42 | 22 | Q.  I'm not asking you if you know.  I'm just |
| 12:55:45 | 23 | asking you if you're aware of. |
| 12:55:47 | 24 | MS. JONES:  Objection. |
| 12:55:48 | 25 | A.  I'm not aware of anyone that I know being |



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

|  | 1 | SERGEANT ERIC ALEXANDER - BY MR. SHIELDS |
|---|---|---|
| 12:55:51 | 2 | disciplined by -- for engaging with a dog. |
| 12:55:54 | 3 | Q.  And based on your 18 years of experience, |
| 12:55:59 | 4 | have you ever heard of an officer being required to |
| 12:56:02 | 5 | get additional training of any kind because they shot |
| 12:56:06 | 6 | a dog? |
| 12:56:07 | 7 | MS. JONES:  Objection. |
| 12:56:07 | 8 | A.  I don't know.  I'm not privy to individual |
| 12:56:10 | 9 | officer's personnel files. |
| 12:56:11 | 10 | Q.  Okay.  So I'm just asking you about what |
| 12:56:15 | 11 | you are aware of. |
| 12:56:17 | 12 | So are you aware of anybody ever having to |
| 12:56:21 | 13 | get additional training because they shot a dog? |
| 12:56:24 | 14 | A.  No.  I'm not aware. |
| 12:56:26 | 15 | Q.  And how would you describe the general |
| 12:56:32 | 16 | attitude within the department about dogs being shot? |
| 12:56:36 | 17 | MS. JONES:  Objection. |
| 12:56:37 | 18 | A.  We do everything we can to make sure dogs |
| 12:56:40 | 19 | aren't shot. |
| 12:56:41 | 20 | Q.  Okay.  So it would be frowned upon when a |
| 12:56:45 | 21 | dog is shot? |
| 12:56:46 | 22 | A.  It's not -- |
| 12:56:46 | 23 | MS. JONES:  Objection. |
|  | 24 | A.  -- it's not frowned upon.  It's last |
| 12:56:50 | 25 | resort. |



ALLIANCE
COURT REPORTING, INC.

Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

Confidential

```
       1              SERGEANT ERIC ALEXANDER - BY MR. SHIELDS
12:56:50   2         Q.  Have you ever heard of an incident where,
12:56:56   3   you know, either a person -- another officer who shot
12:57:01   4   a dog where their supervisor said, you know, something
12:57:04   5   could have been done differently to avoid shooting the
12:57:07   6   dog?
12:57:07   7              MS. JONES:  Objection.
12:57:08   8         A.  Nothing that I've been a part of,
12:57:10   9   incidents that I have been a part of.
12:57:13  10         Q.  What has the department done to try and
12:57:16  11   reduce the number of dogs that are shot?
12:57:18  12              MS. JONES:  Objection.
12:57:19  13              But go ahead.
12:57:20  14         A.  They have given us training in regards to
12:57:24  15   demeanor of dogs.  We have access to some things that
12:57:29  16   are possibilities of use.
12:57:30  17              But again, it's -- we have to understand
12:57:34  18   that those can only be applied when it's safe to do so
12:57:37  19   and we can make a plan to do that.  If a dog presents
12:57:40  20   itself in a manner of which it's attacking someone
12:57:43  21   right away, those -- those things may or may not be
12:57:46  22   able to be used.
12:57:47  23              MR. SHIELDS:  Okay.  So I'm just going to
12:57:48  24   move to strike the nonresponsive portion of the
          25   answer.
```



Confidential

131

1          SERGEANT ERIC ALEXANDER - BY MR. SHIELDS

12:57:53   2          Q.  It sounded like you said you got some

12:57:55   3   training and there's some various different types of

12:57:58   4   equipment that can be used.  Is -- is that your

12:58:00   5   answer?

12:58:00   6          A.  Yeah.  Yeah.  I guess so.

12:58:02   7          Q.  Okay.  Other than the equipment that you

12:58:08   8   spoke about earlier, the foam baton and the catchpole,

12:58:13   9   is there any other equipment that they provided to

12:58:17   10  help you try to avoid shooting a dog?

12:58:20   11         A.  We have a less lethal shotgun called a

12:58:25   12  beanbag gun.

12:58:26   13         Q.  Are you aware of anybody ever using the

12:58:30   14  beanbag gun on a dog?

12:58:31   15         A.  Not that I recall.  But again, I'm not

12:58:34   16  privy to everyone's personnel files or incidents.

12:58:39   17         Q.  Did you ever get training where you were

12:58:42   18  told that the beanbag gun is an option to use against

12:58:47   19  a dog?

12:58:48   20         A.  I don't recall.

12:58:51   21         Q.  So you might have, but you don't remember?

12:58:57   22         A.  Correct.

12:58:57   23         MS. JONES:  Objection.

12:58:57   24         Q.  Did you ever get training on the use of

12:59:00   25  the beanbag gun generally?



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

Confidential

132

| | 1 | SERGEANT ERIC ALEXANDER - BY MR. SHIELDS |

12:59:02  2      A.  Yes.  We have to recertify on it every

12:59:05  3  year.

12:59:06  4      Q.  Okay.  Is that part of your firearms

12:59:08  5  training?

12:59:08  6      A.  Correct.

12:59:09  7      Q.  So is every officer in the department

12:59:12  8  certified to use the beanbag gun?

12:59:15  9      A.  If they pass the qualification, yes.

12:59:18  10      Q.  Okay.  If they fail that qualification,

12:59:23  11  can they remain an officer in good standing and just

12:59:29  12  not be allowed to use that beanbag gun?

12:59:33  13      A.  They all at some point -- they have to

12:59:37  14  re-qualify to be an active police officer.

12:59:37  15      Q.  Okay.  So the answer would be no?

12:59:39  16      A.  Correct.

12:59:39  17      Q.  If they don't re-qualify, they can't

12:59:42  18  continue working as an officer?

12:59:44  19      A.  Correct.

12:59:45  20          MS. JONES:  Objection.

12:59:45  21      Q.  To your knowledge, what's the review

12:59:53  22  process when a dog is shot?

12:59:56  23      A.  A review process?

12:59:58  24      Q.  Correct.

12:59:58  25      A.  So me, as a sergeant, I would respond out



Confidential

133

```
          1        SERGEANT ERIC ALEXANDER - BY MR. SHIELDS
01:00:01  2    there.  Speak to the officer.  Watch the body cam
01:00:06  3    footage.  Make sure everything happened in accordance
01:00:09  4    of RPD policy?  And then I notify my -- my superior
01:00:12  5    officer and Professional Standards Section
01:00:14  6    that -- that a firearm was used.
01:00:16  7        Q.  Okay.  And then what does Professional
01:00:22  8    Standards Section do?
01:00:23  9        A.  I don't know.
01:00:23  10       Q.  Okay.  So you never -- in your role as the
01:00:28  11   supervisor, as a sergeant, have you ever had to
01:00:31  12   communicate with the Professional Standards Section
01:00:34  13   about a dog being shot?
01:00:36  14       MS. JONES:  Objection.
01:00:37  15       But go ahead.
01:00:37  16       A.  Yes.  I notify that an officer fired a
01:00:41  17   weapon and shot a dog.  And that's as far as it goes
01:00:46  18   for me in regards to interacting with the Professional
          19   Standards Section.
01:00:53  20       Q.  Okay.  Aside from a dog shooting, have you
01:00:55  21   had to report other incidents like use of force
01:00:58  22   against a person to the Professional Standards
01:01:01  23   Section?
01:01:01  24       A.  Every use of force against a person
01:01:04  25   generates a report and then sum and substance
```



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

Confidential

134

| | | |
|---|---|---|
| | 1 | SERGEANT ERIC ALEXANDER - BY MR. SHIELDS |
| | 2 | goes -- goes to them. |
| | 3 | Q.  Have there ever been any instances -- any |
| 01:01:12 | 4 | use of force instances where after you reported to PSS |
| 01:01:17 | 5 | they come back and need more information from you |
| 01:01:21 | 6 | about the incident? |
| 01:01:21 | 7 | A.  From me personally, no. |
| 01:01:23 | 8 | Q.  Okay.  Have you ever been interviewed by |
| 01:01:27 | 9 | PSS in your role as a sergeant about something you've |
| 01:01:31 | 10 | had to report to them? |
| 01:01:32 | 11 | MS. JONES:  Objection. |
| 01:01:33 | 12 | A.  I guess I'm confused.  As in information |
| 01:01:38 | 13 | missing? |
| 01:01:38 | 14 | Q.  As in, you know, not using the person who |
| 01:01:43 | 15 | used force, but as the supervisor who reported an |
| 01:01:47 | 16 | incident.  Has PSS ever come back to you to talk to |
| 01:01:51 | 17 | you for any reason about the incident? |
| 01:01:55 | 18 | MS. JONES:  Objection. |
| 01:01:55 | 19 | A.  No.  Everything that I've referred to PSS |
| 01:01:59 | 20 | has been within policy and procedure. |
| 01:02:02 | 21 | Q.  Okay.  Now, I'm not trying to say, you |
| 01:02:06 | 22 | know, only limited to instances where they might have |
| 01:02:09 | 23 | found something to not be within policy or procedure, |
| 01:02:13 | 24 | just did they ever for any reason need more |
| 01:02:16 | 25 | information from you or want to talk to you about |



Confidential

135

|          |    | SERGEANT ERIC ALEXANDER - BY MR. SHIELDS |
|----------|----|-------------------------------------------|

1        SERGEANT ERIC ALEXANDER - BY MR. SHIELDS

01:02:19   2    maybe the subject officer for any reason?

01:02:21   3              MS. JONES:  Objection.

01:02:23   4         A.  No.  If that would come up, they would

01:02:24   5    have addressed me.  But I never -- I haven't had to

01:02:27   6    deal with that with them.

01:02:28   7         Q.  Okay.  In addition to PSS, does the

01:02:43   8    Professional Development Section review dog shooting

01:02:47   9    incidents?

01:02:48   10             MS. JONES:  Objection.

01:02:48   11        A.  I don't recall.  They're in

01:02:52   12   charge of -- they're in charge of development training

01:02:54   13   for the -- development training and records for -- for

01:02:56   14   us.

01:02:56   15        Q.  Okay.  So you don't know?

01:02:59   16        A.  No.  I don't know.

01:03:00   17             MS. JONES:  Objection.

01:03:01   18        Q.  Do you know if PDS is -- reviews use of

01:03:06   19   force incidents?

01:03:09   20        A.  I believe they do.

01:03:10   21        Q.  Okay.  So -- so if there's a use of force

01:03:16   22   incident, both PSS and PDS would review it?

01:03:20   23        A.  Yes.

01:03:21   24        Q.  Okay.  And do you know if that happens,

01:03:25   25   for instance, where dogs are shot also?



Confidential

136

1     SERGEANT ERIC ALEXANDER - BY MR. SHIELDS

01:03:28   2          A.   A use of force is only against a person.

01:03:33   3   It's not -- there's no use of force report generated

01:03:36   4   for a dog because it's not a person.  A use of force

01:03:40   5   report is generated for people, not dogs.

01:03:42   6          Q.   Okay.  So you don't know if both PDS and

01:03:46   7   PSS review incidents where dogs are shot?

01:03:49   8          MS. JONES:  Objection.

01:03:50   9          A.   Correct.

01:03:53  10          Q.   Okay.  I'm just trying to figure out if

01:03:56  11   it's the same review process where a dog is shot,

01:03:58  12   for -- if there was a use of force incident.

01:04:01  13          A.   A use of -- I think just for

01:04:03  14   clarification, a use of force against a person

01:04:06  15   generates a subject -- SRR, subject resistance report.

01:04:12  16   That goes to PDS and PSS.

01:04:13  17          I believe a -- a dog shot isn't -- it's

01:04:16  18   a -- it's a non-criminal incident report generated and

01:04:19  19   then PSS is notified of a firearms discharge, if

01:04:25  20   that's clarification.

01:04:26  21          Q.   Got it.  Yes.  Thank you.

01:04:34  22          Other than the two dog shooting incidents

01:04:37  23   we spoke about earlier, have you ever shot any other

01:04:41  24   dogs?

01:04:42  25          MS. JONES:  Objection.



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

Confidential

137

|          | 1  | SERGEANT ERIC ALEXANDER - BY MR. SHIELDS |
|----------|----|------------------------------------------|
| 01:04:42 | 2  | A.  No. |
| 01:04:43 | 3  | Q.  Have you ever been sued before? |
| 01:04:51 | 4  | A.  In the department? |
| 01:04:54 | 5  | MS. JONES:  Objection. |
| 01:04:56 | 6  | Q.  For anything having to do as your role as |
| 01:04:59 | 7  | a police officer. |
| 01:04:59 | 8  | A.  Yes. |
| 01:05:00 | 9  | Q.  Okay.  Did you have to testify at any of |
| 01:05:05 | 10 | those prior lawsuits? |
| 01:05:06 | 11 | A.  No. |
| 01:05:06 | 12 | Q.  Okay.  Do you remember the name of any of |
| 01:05:11 | 13 | those cases? |
| 01:05:12 | 14 | A.  No. |
| 01:05:12 | 15 | Q.  Was it once or more than once? |
| 01:05:15 | 16 | A.  I can recall two. |
| 01:05:17 | 17 | Q.  Do you remember when those lawsuits were |
| 01:05:21 | 18 | filed? |
| 01:05:22 | 19 | A.  No. |
| 01:05:22 | 20 | Q.  Was it like within the last year or many |
| 01:05:29 | 21 | years ago? |
| 01:05:30 | 22 | MS. JONES:  Objection. |
| 01:05:30 | 23 | A.  I believe many years ago. |
| 01:05:34 | 24 | Q.  Okay.  Have you ever received any training |
| 01:05:47 | 25 | about de-escalation during interactions with dogs? |



ALLIANCE
COURT REPORTING, INC.
*Videography · Remote · Deposition Suites*
www.alliancecourtreporting.net · 585.546.4920

Confidential

138

| | 1 | SERGEANT ERIC ALEXANDER - BY MR. SHIELDS |
|---|---|---|
| 01:05:53 | 2 | MS. JONES:  Objection. |
| 01:05:53 | 3 | But go ahead. |
| 01:05:54 | 4 | A.  I believe it was -- just going to refer |
| 01:05:56 | 5 | back to the prior Humane Society and the roll call |
| 01:06:01 | 6 | thing. |
| 01:06:01 | 7 | Q.  Okay.  Does the RPD require officers to |
| 01:06:05 | 8 | use de-escalation techniques in situations with |
| 01:06:08 | 9 | aggressive people? |
| 01:06:10 | 10 | A.  When it's applicable.  When it's possible, |
| 01:06:12 | 11 | yeah. |
| 01:06:12 | 12 | Q.  So there's -- okay. |
| 01:06:16 | 13 | Does the RPD permit officers to shoot a |
| 01:06:28 | 14 | dog if they're afraid? |
| 01:06:32 | 15 | MS. JONES:  Objection. |
| 01:06:32 | 16 | But go ahead. |
| 01:06:33 | 17 | A.  If an officer can articulate that they |
| 01:06:38 | 18 | were afraid because the dog was attacking them or |
| 01:06:41 | 19 | about to attack them, then yes, shooting a dog is |
| 01:06:45 | 20 | applicable. |
| 01:06:45 | 21 | Q.  Okay.  You said if they're -- if the dog |
| 01:06:50 | 22 | was going to attack them or about to attack them.  Is |
| 01:06:54 | 23 | that what you said? |
| 01:06:55 | 24 | A.  I guess either in the midst of being bit |
| 01:07:00 | 25 | or about to be bit.  That's -- I guess that's how I |



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

Confidential

139

|          | 1  | SERGEANT ERIC ALEXANDER - BY MR. SHIELDS |
|----------|----|---|
| 01:07:02 | 2  | would categorize it -- |
| 01:07:03 | 3  | Q.  Okay.  And -- |
| 01:07:05 | 4  | A.  -- or protecting somebody else |
| 01:07:08 | 5  | from -- from that. |
| 01:07:08 | 6  | Q.  How would the officer determine if the dog |
| 01:07:12 | 7  | is about to bite somebody? |
| 01:07:15 | 8  | A.  Again, it's a situational assessment of |
| 01:07:19 | 9  | every -- of every incident. |
| 01:07:24 | 10 | Q.  And what kind of objective factors would |
| 01:07:28 | 11 | you consider? |
| 01:07:28 | 12 | A.  I would say the distance from a dog to the |
| 01:07:33 | 13 | person, their -- the dog's demeanor.  The ability to |
| 01:07:36 | 14 | move or retreat in an effort to get away from the dog |
| 01:07:40 | 15 | or if that can't happen.  And I would say primarily is |
| 01:07:43 | 16 | it -- is the dog attacking me, another officer or an |
| 01:07:49 | 17 | innocent third party. |
| 01:07:50 | 18 | Q.  Okay.  So if the dog is attacking, then |
| 01:07:55 | 19 | you can shoot it, right? |
| 01:07:57 | 20 | MS. JONES:  Objection. |
| 01:07:58 | 21 | But go ahead. |
| 01:07:58 | 22 | A.  Or displaying the signs of -- to do so |
| 01:08:02 | 23 | knowing how fast a dog can close the distance. |
| 01:08:05 | 24 | Q.  Okay.  What kind of signs? |
| 01:08:07 | 25 | A.  Their aggressive posture.  Their demeanor. |



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

|       |    |                                                      |
|-------|----|------------------------------------------------------|
|       | 1  | SERGEANT ERIC ALEXANDER - BY MR. SHIELDS             |
| 01:08:10 | 2  | How -- how they're -- how they're reacting.          |
| 01:08:15 | 3  | That's -- I guess that's my best explanation.        |
| 01:08:17 | 4  | Q.  So let's say a dog is standing 10 feet            |
| 01:08:22 | 5  | away from you and it barks, can you shoot the dog?    |
| 01:08:26 | 6  | A.  No.  I would not shoot the dog.                   |
| 01:08:31 | 7  | Q.  Okay.  But if the dog is 10 feet away from        |
| 01:08:37 | 8  | you, it barks and then it starts to run at you, then  |
| 01:08:40 | 9  | you can shoot the dog?                                |
| 01:08:42 | 10 | MS. JONES:  Objection.                               |
| 01:08:43 | 11 | But go ahead.                                        |
| 01:08:43 | 12 | A.  I would try to create space and maybe yell        |
| 01:08:48 | 13 | at it.  But if it closes space to the point where     |
| 01:08:49 | 14 | they're coming at me and I had no other means, I      |
| 01:08:51 | 15 | would -- yeah.  I would shoot the dog.                |
| 01:08:53 | 16 | Q.  Would you consider potentially trying to          |
| 01:09:00 | 17 | use pepper spray instead of shooting the dog?         |
| 01:09:04 | 18 | A.  Those are all options.  Again, they're all        |
| 01:09:06 | 19 | options.  It's a matter of how much time we have      |
| 01:09:08 | 20 | to -- to deploy those -- deploy those tactics.        |
| 01:09:12 | 21 | Q.  Were you ever trained that pepper spray           |
| 01:09:16 | 22 | might work against a dog?                             |
| 01:09:17 | 23 | A.  I don't recall if...                              |
| 01:09:21 | 24 | Q.  Okay.  Do you recall if part of your              |
| 01:09:36 | 25 | firearms training involved shooting dogs?             |



ALLIANCE
COURT REPORTING, INC.

Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

1       SERGEANT ERIC ALEXANDER - BY MR. SHIELDS

01:09:42   2            MS. JONES:  Objection.

01:09:44   3            Go ahead.

01:09:44   4       A.  Again, I don't recall if we ever trained

01:09:48   5   specifically to -- to shoot a dog.

01:09:49   6       Q.  Did you ever receive a training where a

01:09:55   7   barrel was tied to a rope and that rope was pulled to

01:10:00   8   simulate a dog running at you at a fast speed?

01:10:03   9       A.  That's possible early in my career maybe.

01:10:07  10   I -- I don't -- I don't recall.  Again, you would have

01:10:09  11   to refer to PDS for what trainings that were given to

01:10:13  12   us.  I don't recall.

01:10:14  13       Q.  Okay.  Now, on the flip side, you were

01:10:22  14   never told that you're not allowed to shoot a dog,

01:10:25  15   right?

01:10:25  16            MS. JONES:  Objection.

01:10:26  17       A.  Well, the goal is to stay within policy

01:10:30  18   and procedure.

01:10:31  19       Q.  So the answer is no?

01:10:38  20            MS. JONES:  Well, objection.

01:10:39  21       A.  I guess if you -- every -- it's

01:10:42  22   situationally dependent.  But we're told that

01:10:43  23   we -- your question is have we ever been

01:10:45  24   trained -- told that we cannot shoot dogs?  Is that

          25   the question?



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

Confidential

142

| | | |
|---|---|---|
| | 1 | SERGEANT ERIC ALEXANDER - BY MR. SHIELDS |
| | 2 | Q.  Correct. |
| 01:10:49 | 3 | A.  Correct.  No.  I've never been told I |
| 01:10:51 | 4 | cannot shoot a dog. |
| 01:10:52 | 5 | Q.  And firing a gun, that constitutes the use |
| 01:11:01 | 6 | of deadly force, right? |
| 01:11:04 | 7 | MS. JONES:  Objection. |
| 01:11:04 | 8 | But go ahead. |
| 01:11:05 | 9 | A.  Toward -- yeah.  Correct. |
| | 10 | (The following exhibit was marked for |
| 01:11:07 | 11 | identification:  Number EXH 9.) |
| 01:11:07 | 12 | Q.  All right.  I want to just put up the next |
| 01:11:13 | 13 | exhibit.  It's going to be Exhibit 9 and it's General |
| 01:11:16 | 14 | Order 340.  And I just have a couple of questions on |
| 01:11:21 | 15 | that.  One second. |
| 01:11:29 | 16 | Sergeant, is that what you see on your |
| 01:11:31 | 17 | screen right now, General Order 340, Use of Deadly |
| 01:11:35 | 18 | Physical Force? |
| 01:11:36 | 19 | A.  Correct. |
| 01:11:37 | 20 | MS. JONES:  What's the Bates number on |
| 01:11:38 | 21 | this one? |
| 01:11:39 | 22 | MR. SHIELDS:  COR 107. |
| 01:11:43 | 23 | MS. JONES:  Thank you. |
| 01:11:44 | 24 | Q.  Okay.  So I'm going to fast-forward to the |
| 01:11:48 | 25 | bottom of the third page of this 15-page document. |



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

Confidential

143

|          | 1  | SERGEANT ERIC ALEXANDER - BY MR. SHIELDS |
|----------|----|---|
| 01:11:54 | 2  | All right.  So I've got it highlighted. |
| 01:11:57 | 3  | And that is section Roman numeral III and then B1 and |
| 01:12:07 | 4  | 2.  So it says "Members may use firearms against |
| 01:12:08 | 5  | animals when they are 1, attacking or presenting an |
| 01:12:14 | 6  | imminent danger to any person or 2, destructive, |
| 01:12:18 | 7  | injured or threatening with supervisory approval when |
| 01:12:23 | 8  | there's time to obtain it." |
| 01:12:25 | 9  | So, Sergeant, my question is, first, how |
| 01:12:35 | 10 | do you differentiate between whether a dog is an |
| 01:12:44 | 11 | imminent danger versus when it is threatening? |
| 01:12:48 | 12 | A.  Are you talking about the difference |
| 01:12:50 | 13 | between bullet -- or point 1 and point 2? |
| 01:12:54 | 14 | Q.  Correct. |
| 01:12:54 | 15 | A.  I would say imminent danger is, it's |
| 01:12:58 | 16 | basically at your feet or close to being at you.  And |
| 01:13:02 | 17 | then threatening is, I would say, their demeanor and |
| 01:13:06 | 18 | about to do that.  That's the difference.  That's my |
| 01:13:10 | 19 | interpretation. |
| 01:13:11 | 20 | Q.  So with the prior examples I've given you |
| 01:13:15 | 21 | with the dog standing 10 feet away and barking and the |
| 01:13:21 | 22 | dog standing 10 feet away, barking and then running at |
| 01:13:23 | 23 | you, would that be a good way to differentiate 1 from |
| 01:13:26 | 24 | 2? |
| 01:13:26 | 25 | MS. JONES:  Objection. |



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

Confidential

144

1      SERGEANT ERIC ALEXANDER - BY MR. SHIELDS

01:13:27  2      A.  I would say a dog barking is not

01:13:29  3  threatening.  I would say a dog barking and displaying

01:13:34  4  aggression in regards to their demeanor.

01:13:39  5      Imminent danger would be that -- that be

01:13:41  6  maybe threatening and then that same dog doing that

01:13:45  7  and then charging at me would be point 1, imminent

01:13:49  8  danger.

01:13:50  9      Q.  Okay.  So imminent danger would include

01:13:52  10  hey, like I -- it's running at you, you can't get

01:13:55  11  away, you're about to get injured, right?

01:13:58  12      A.  Correct.

01:13:59  13      MS. JONES:  Objection.

01:14:00  14      Q.  And then 2 would be, that dog is scary but

01:14:03  15  it's not running at me?

01:14:05  16      A.  Or I'm noticing that their -- its behavior

01:14:08  17  is -- could turn into number 1.

01:14:11  18      Q.  Got it.

01:14:13  19      And so -- and another difference between 1

01:14:17  20  and 2 is that 2 -- it's a -- it's a time element,

01:14:23  21  right?  2 requires you to get supervisory approval if

01:14:28  22  there's time?

01:14:29  23      A.  For that one, I would -- I would say it

01:14:33  24  may not be for -- it may not be for a dog.  I think

01:14:37  25  that one -- for purposes of that, I've used it as in



Confidential

145

|  | 1 | SERGEANT ERIC ALEXANDER - BY MR. SHIELDS |
|---|---|---|

01:14:40 2  regards to, we have a high deer population up here and

01:14:44 3  we have some areas where they get caught on fences.

01:14:47 4  And so that deer doesn't suffer, the deer is -- the

01:14:50 5  deer is put down which -- does that make sense?

01:14:52 6  That's supervisory approval saying -- if one of my

01:14:56 7  guys says hey, this deer is still alive, it's

01:14:58 8  about -- it's in bad condition, it's hung up on a

01:15:01 9  fence at one of our big cemeteries, I have to

01:15:04 10  shoot -- shoot the deer so it doesn't suffer.

01:15:07 11       Q.  So I'll tell you that yes, in fact I do

01:15:11 12  understand because I obtained all of the firearm

01:15:13 13  discharge reports from 2015 to 2020 and the majority

01:15:17 14  of them were shooting deers, so.

01:15:19 15       A.  Okay.  So -- okay.

01:15:20 16       Q.  Okay.  I understand exactly what you're

01:15:24 17  talking about.

01:15:25 18       So the situation where you'd seek

01:15:30 19  supervisory approval would primarily be in a situation

01:15:33 20  with an injured deer?

01:15:35 21       A.  Correct.

01:15:35 22       Q.  Have you ever heard of anybody trying to

01:15:39 23  obtain supervisory approval prior to shooting a dog?

01:15:43 24       A.  I have not been a part of those.  I -- I

01:15:45 25  can't say that I've heard that either.



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

Confidential

146

|          |    |                                                          |
|----------|----|----------------------------------------------------------|
|          | 1  | SERGEANT ERIC ALEXANDER - BY MR. SHIELDS                  |
| 01:15:47 | 2  | Q.  Okay.  So just to be clear, based on your            |
| 01:15:57 | 3  | training that you've received, what -- are there any     |
| 01:16:03 | 4  | other objective factors for how to assess whether a      |
| 01:16:07 | 5  | dog is presenting an imminent danger to any person?      |
| 01:16:10 | 6  | MS. JONES:  Objection.                                    |
| 01:16:11 | 7  | But go ahead.                                             |
| 01:16:11 | 8  | A.  I think every -- every situation is -- is            |
| 01:16:15 | 9  | independent.  Every officer has to make their own        |
| 01:16:19 | 10 | individual assessment of what's going on there.  I       |
| 01:16:23 | 11 | don't think we can make a rough general -- generalization |
| 01:16:24 | 12 | of when they -- when and why they make their decision.   |
| 01:16:27 | 13 | Q.  Okay.  So I guess my question is, you                |
| 01:16:31 | 14 | know, have you ever watched, for example, videos to      |
| 01:16:36 | 15 | learn how to assess whether a dog is in fact an          |
| 01:16:41 | 16 | imminent danger?                                          |
| 01:16:41 | 17 | A.  I think --                                            |
| 01:16:42 | 18 | MS. JONES:  Objection.                                    |
| 01:16:43 | 19 | But go ahead.                                             |
| 01:16:45 | 20 | A.  -- I think that Humane Society training              |
| 01:16:47 | 21 | gave us different dog postures or positions maybe.       |
| 01:16:52 | 22 | Q.  Okay.  Do you remember if that Humane                |
| 01:16:57 | 23 | Society training included videos?                         |
| 01:16:59 | 24 | A.  I don't -- I don't recall.                            |
| 01:17:01 | 25 | Q.  Okay.  What objective factors would you              |



|       |    |                                                          |
|-------|----|----------------------------------------------------------|
|       | 1  | SERGEANT ERIC ALEXANDER - BY MR. SHIELDS                  |
| 01:17:10 | 2  | consider to determine whether the dog is an imminent  |
| 01:17:15 | 3  | danger?                                                |
| 01:17:16 | 4  | MS. JONES:  Objection.                                 |
| 01:17:17 | 5  | But go ahead.                                          |
| 01:17:18 | 6  | A.  I -- again, I think I'll refer back to my          |
| 01:17:21 | 7  | last statement.  It's in every officer's own          |
| 01:17:25 | 8  | interpretation of -- interpretation of that.          |
| 01:17:28 | 9  | Q.  Okay.  For example, I think you said              |
| 01:17:29 | 10 | earlier in the situation in 2015 you were like in an  |
| 01:17:35 | 11 | enclosed space or something, you couldn't escape from |
| 01:17:40 | 12 | the yard.  Wouldn't that be a factor if you're in     |
| 01:17:43 | 13 | someone's yard?                                        |
| 01:17:43 | 14 | MS. JONES:  Objection.                                 |
| 01:17:44 | 15 | A.  2015 was the search warrant.                       |
| 01:17:46 | 16 | Are you talking about the one in 20 like 6            |
| 01:17:49 | 17 | or 7, the initial one?                                 |
| 01:17:51 | 18 | Q.  I think I was confused.  And what I meant          |
| 01:17:55 | 19 | to say was 2006 or '7.                                 |
| 01:17:59 | 20 | A.  Yes.  Correct.  It was attacking me.  I            |
| 01:18:01 | 21 | had nowhere to go.  I had no other means of -- no      |
| 01:18:03 | 22 | other means other than to shoot it.  My attempts to   |
| 01:18:06 | 23 | either yell at it or kick at it were unsuccessful.    |
| 01:18:10 | 24 | Q.  Okay.  Would you consider whether there           |
| 01:18:12 | 25 | are other people around?                              |



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

Confidential

148

|          | 1  | SERGEANT ERIC ALEXANDER - BY MR. SHIELDS |

01:18:13   2      A.  Before discharging a firearm?

01:18:16   3      Q.  Correct.

01:18:16   4      A.  100 percent.

01:18:17   5      Q.  And would you consider whether you had

01:18:23   6  other non-lethal options available to you?

01:18:26   7      A.  If I could use those and if they would be

01:18:29   8  effective.  Like if someone was there to do that while

01:18:33   9  I was covering them.  Does that make sense?  If

01:18:35  10  someone had that availability to do that and then me

01:18:37  11  be a deadly physical force person as a backup.

01:18:41  12      Q.  Got it.

01:18:42  13      A.  Because if it was not successful, I'm

01:18:46  14  getting bit anyway.

01:18:46  15      Q.  Well, you -- you might get bit.  You might

01:18:51  16  not, right?

01:18:52  17      A.  No.  You're getting bit.  Okay.  I think

01:18:53  18  we're just debating.  They're coming at us for a

01:18:58  19  reason.  I don't think they're not going -- not going

01:19:00  20  to bite us if we don't take some sort of action.

01:19:04  21      Q.  Do you -- do you own any dogs?

01:19:05  22      A.  No.

01:19:06  23      Q.  Have you ever owned a dog?

01:19:08  24      A.  No.  Well, in my childhood.  I don't --

01:19:10  25      Q.  Has a dog ever run up to you and not



Confidential

149

|  | 1 | SERGEANT ERIC ALEXANDER - BY MR. SHIELDS |
|---|---|---|

01:19:13  2    bitten you?

01:19:14  3         A.  Has a dog ever run up to me and not bitten

01:19:17  4    me?

01:19:17  5         Q.  Correct.

01:19:18  6         A.  Correct.  But I'm assessing their

01:19:22  7    demeanor.  But yes.  Correct.  I've been run up to and

01:19:24  8    not bit, yes.

01:19:25  9         Q.  So maybe a dog will run up to you to greet

01:19:29  10   you?

01:19:30  11        A.  Yes.

01:19:31  12        Q.  And not simply to bite you, right?

01:19:35  13             MS. JONES:  Objection.

01:19:36  14        A.  Correct.  But I think what I'm doing even

01:19:39  15   in -- in that situation, you're -- you're seeing their

01:19:41  16   demeanor from far away to close up.  I think

01:19:45  17   that's -- I think that's the point I'm trying to make.

01:19:48  18        Q.  Have you received any training about how

01:19:51  19   to assess whether a dog is running up to you to greet

01:19:55  20   you versus whether the dog is running up to you and

01:20:01  21   might bite you?

01:20:02  22             MS. JONES:  Objection.

01:20:02  23        A.  I believe I'll refer back to the prior

01:20:06  24   Humane Society document where they showed us, I think

01:20:09  25   it was, positions of a dog --



Confidential

150

|     |     |
| --- | --- |
|     | 1   | SERGEANT ERIC ALEXANDER - BY MR. SHIELDS |
|     | 2   | Q.  Okay. |
| 01:20:11 | 3 | A.  -- or what -- or what they believed to be |
| 01:20:13 | 4 | positions of a dog and what that dog's possible state |
| 01:20:16 | 5 | is. |
|     | 6   | (The following exhibit was marked for |
| 01:20:17 | 7 | identification:  Number EXH 10.) |
| 01:20:17 | 8 | Q.  Okay.  Just give me one second here. |
| 01:20:41 | 9 | All right.  So I'm going to put up what |
| 01:20:45 | 10 | I've marked as Exhibit 10 and that's the PowerPoint |
| 01:20:48 | 11 | from that Humane Society training. |
| 01:20:53 | 12 | So on your screen right now, do you see a |
| 01:20:57 | 13 | document with the picture of an aggressive-looking dog |
| 01:21:01 | 14 | on the front entitled "Dog Bite Prevention For Law |
| 01:21:06 | 15 | Enforcement"? |
| 01:21:06 | 16 | A.  Correct. |
| 01:21:07 | 17 | Q.  And, Sergeant, do -- does this first page |
| 01:21:13 | 18 | of the document -- looking at that, does that refresh |
| 01:21:17 | 19 | your recollection as to whether or not you've seen |
| 01:21:20 | 20 | this document before? |
| 01:21:20 | 21 | A.  Correct. |
| 01:21:21 | 22 | Q.  Do you remember if you've seen this |
| 01:21:27 | 23 | document prior to your preparation with Ms. Jones this |
| 01:21:32 | 24 | morning? |
| 01:21:32 | 25 | A.  At -- at that training.  But other than |



|   | 1 | SERGEANT ERIC ALEXANDER - BY MR. SHIELDS |
|---|---|---|

01:21:35  2  that, no.

01:21:35  3         Q.  Okay.  At that training, did they give you

01:21:40  4  a copy of this document to take with you?

01:21:43  5         A.  I don't recall.

01:21:44  6         Q.  Okay.  Between the training and this

01:21:49  7  morning, have you ever reviewed this document for any

01:21:52  8  reason?

01:21:52  9         A.  I don't recall.

01:21:54 10         Q.  Okay.  And do you remember when you

01:22:00 11  received the training?

01:22:01 12         A.  No, sir.

01:22:01 13         Q.  All right.  I just want to scroll through

01:22:06 14  this and ask you some questions.

01:22:12 15         The officer on the second page, Reno

01:22:17 16  Di Domenico, do you remember if he was the teacher at

01:22:20 17  the training?

01:22:20 18         A.  I don't recall.

01:22:21 19         Q.  Okay.  All right.  So on this page, which

01:22:33 20  is the fifth page of the PDF and it's COR 76, it says

01:22:43 21  "Officers will encounter a dog in at least one out of

01:22:46 22  three residences."

01:22:46 23         I think earlier you said about more than

01:22:49 24  half of residences have dogs in your experience.

01:22:52 25         MS. JONES:  Objection.



**ALLIANCE**
COURT REPORTING, INC.
*Videography · Remote · Deposition Suites*
www.alliancecourtreporting.net · 585.546.4920

Confidential

152

| | 1 | SERGEANT ERIC ALEXANDER - BY MR. SHIELDS |
|---|---|---|

01:22:55   2       MR. SHIELDS:  He said there's a greater

01:22:56   3   likelihood than not that he'd encounter a dog.

01:23:01   4       Q.  Do you -- so somewhere between one and

01:23:06   5   three and maybe 50 percent, is that accurate, in your

01:23:10   6   experience?

01:23:10   7       A.  Sure.

01:23:11   8       Q.  All right.  As we scroll through this, I'm

01:23:21   9   just going to ask you, do you remember any discussions

01:23:24  10   that were had about this page right here, problems for

01:23:28  11   law enforcement, from the training?

01:23:31  12       A.  I don't -- I received the training.  I

01:23:35  13   don't know when it -- when it was, nor like what we

01:23:38  14   talked about.  Obviously, we went over these slides.

01:23:40  15   But after that, I haven't had discussions about it.

01:23:45  16       Q.  Okay.  Do you remember any discussions at

01:23:46  17   the training about this particular slide?

01:23:49  18       A.  Nope.  I imagine they hit the bullet

01:23:52  19   points and then moved on.  Again, I don't -- I know we

01:23:55  20   had the training and then that's it.  I don't recall

01:23:58  21   what discussions happened whenever this was.

01:24:00  22       Q.  Okay.  New York State law, do you remember

01:24:06  23   any discussions from the training about this

01:24:10  24   particular slide, which is marked as COR 79?

01:24:14  25       MS. JONES:  Objection.



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

Confidential

153

```
                1        SERGEANT ERIC ALEXANDER - BY MR. SHIELDS
01:24:15        2            A.   I would say the same answer for all those
01:24:17        3    slides.
01:24:21        4            Q.   Okay.  So you might save us some time by
01:24:24        5    doing that.  So as we scroll through all these sides,
01:24:27        6    including this one that says "Fourth Amendment," your
01:24:31        7    answer is going to be you don't remember any specific
01:24:33        8    discussions about any of the information on any of the
01:24:35        9    slides?
01:24:36       10            A.   Correct.
               11            Q.   Okay.
01:24:38       12            A.   I remember that we hit the bullet points
01:24:40       13    and talked about them.  I don't know about the
01:24:42       14    discussion that went on like in between the bullet
01:24:45       15    points or about the points.
01:24:48       16            Q.   Okay.  This page entitled "Dog Postures,"
01:24:54       17    COR 89, do you remember anything specific about these
01:25:01       18    dog postures as displayed on this page?
01:25:04       19            MS. JONES:  Objection.
01:25:05       20            But go ahead.
01:25:06       21            A.   I guess I would refer back to our prior
01:25:09       22    comments as what -- we went over what they are and how
01:25:13       23    to read them.  And that's it.  I don't remember
01:25:16       24    specifics of off -- not off topic.  But other
01:25:21       25    than -- other than what's displayed here.
```



ALLIANCE
COURT REPORTING, INC.
*Videography · Remote · Deposition Suites*
www.alliancecourtreporting.net · 585.546.4920

Confidential

154

```
              1      SERGEANT ERIC ALEXANDER - BY MR. SHIELDS
01:25:24      2          Q.  Okay.  So if we're not looking at this
01:25:27      3   page, you're out in the field, would you be able to
01:25:31      4   independently recall what a defensive threat posture
01:25:39      5   looks like?
01:25:39      6          A.  Yes.
01:25:40      7          Q.  Okay.  How about an active posture?
01:25:45      8          A.  Maybe.  They look pretty close to the
01:25:51      9   same.
01:25:51     10          Q.  Okay.  So if you're out in the field,
01:25:53     11   would you be able to differentiate between a defensive
01:25:59     12   threat and an active appeasement?
01:26:00     13          A.  I would probably treat them both the same
01:26:03     14   and watch what they're doing, their actions before
01:26:06     15   that, during this and after that, which is the
01:26:08     16   assessment I would make.
01:26:10     17          Q.  All right.  And do you remember any
01:26:13     18   discussions that were had at the training itself about
01:26:17     19   how to treat dogs differently based on their different
01:26:21     20   postures?
01:26:21     21          A.  No.  I think that's based on our
01:26:25     22   assessment, of me watching them figuring out what
01:26:29     23   they're doing.
01:26:29     24          Q.  Okay.  All right.  So I'm assuming it's
01:26:37     25   the same answer for all of these other slides here
```



Confidential

155

|   |   |   |
|---|---|---|
| | 1 | SERGEANT ERIC ALEXANDER - BY MR. SHIELDS |
| 01:26:41 | 2 | about, for example, aggression on page 93? |
| 01:26:46 | 3 | A.  Correct.  That's what I would be looking |
| 01:26:48 | 4 | for before, during and after, the dog's demeanor. |
| 01:26:52 | 5 | Q.  Okay.  But you don't remember any specific |
| 01:27:00 | 6 | discussion, for example, about this page, 94, fear and |
| 01:27:05 | 7 | aggression? |
| 01:27:06 | 8 | A.  No. |
| 01:27:07 | 9 | Could you reflect -- could you tell me |
| 01:27:09 | 10 | when this was given?  I don't even know when this was |
| 01:27:13 | 11 | given as -- as an instruction. |
| 01:27:16 | 12 | Q.  Do you remember when you might have |
| 01:27:19 | 13 | received the training? |
| 01:27:20 | 14 | A.  No.  I think that's what I just asked you. |
| 01:27:23 | 15 | I don't know when it was. |
| 01:27:24 | 16 | MR. SHIELDS:  Okay.  I need to take just a |
| 01:27:28 | 17 | two-minute break to grab my computer charger, so I'll |
| 01:27:33 | 18 | be right back.  I got to run to my other room. |
| 01:27:38 | 19 | THE VIDEOGRAPHER:  Okay.  The time is |
| 01:27:40 | 20 | 1:27.  We are off the record. |
| 01:27:43 | 21 | (The proceedings recessed at 1:27 p.m.) |
| 01:37:04 | 22 | (The proceedings reconvened at 1:37 p.m.; |
| | 23 | appearances as before noted.) |
| | 24 | THE VIDEOGRAPHER:  We are on the record. |
| | 25 | The time is 1:37.  Please continue. |



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

```
                    1          SERGEANT ERIC ALEXANDER - BY MR. SHIELDS
                    2   SERGEANT ERIC ALEXANDER, resumes;
01:37:05            3          CONTINUING EXAMINATION BY MR. SHIELDS:
01:37:05            4          Q.  All right.  So, Sergeant Alexander, we
01:37:09            5   just took a short break.  Did you have the time -- did
01:37:13            6   you have time to talk with your attorney during that
01:37:16            7   break?
01:37:17            8          A.  I did.
01:37:17            9          Q.  And are there any questions that you
01:37:19           10   answered that you'd like to change your answer to
01:37:23           11   after speaking with your attorney?
01:37:25           12          A.  No.
                   13          Q.  Okay.  So I'm going to put --
01:37:29           14          MS. JONES:  Can I also add that we had a
01:37:31           15   discussion about federal rules and civil procedure 30
01:37:33           16   and whether or not we're supposed to state additional
                   17   information in between each segment of the recording.
01:37:38           18   And I have been informed that that's not how we're
01:37:43           19   supposed to do things.  So I guess that information
01:37:44           20   won't appear at every segment.  That's all.
01:37:47           21          MR. SHIELDS:  And -- and for the record,
01:37:48           22   that information came from Maia, the owner of Alliance
01:37:53           23   Court Reporting and the court reporter -- I mean, I'm
01:37:55           24   sorry -- and the court videographer, Ken Williamson.
01:38:00           25          MS. JONES:  I'm sorry.  I think we just
```



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

|  | 1 | SERGEANT ERIC ALEXANDER - BY MR. SHIELDS |
| 01:38:02 | 2 | have different interpretations of the federal rules. |
| 01:38:04 | 3 | So the city maintains its objection.  We |
|  | 4 | would prefer to comply with the plain language of the |
| 01:38:12 | 5 | rule, but I'm not pressing the issue at this time. |
| 01:38:14 | 6 | MR. SHIELDS:  Okay.  Your objection is |
| 01:38:15 | 7 | noted.  And we will proceed. |
| 01:38:19 | 8 | Q.  All right.  Sergeant, I'm just going to |
| 01:38:23 | 9 | ask a couple more questions about this Exhibit 10 that |
| 01:38:28 | 10 | we had on the screen before we took our break. |
| 01:38:35 | 11 | So we are on page Bates number COR 99, |
| 01:38:42 | 12 | "Appeasement."  Is it fair to say that you don't |
| 01:38:44 | 13 | remember any specific discussions about this page? |
| 01:38:47 | 14 | A.  It's safe to say about all the pages. |
| 01:38:51 | 15 | Q.  Okay.  All right.  So let me just scroll |
| 01:38:56 | 16 | through these and see if I have any other specific |
| 01:39:00 | 17 | questions. |
| 01:39:05 | 18 | Page COR 108 where it says "Do you |
| 01:39:08 | 19 | approach these two dogs the same way," one named |
| 01:39:13 | 20 | Pepper, one named Baby, do you remember any specific |
| 01:39:17 | 21 | discussions about this page? |
| 01:39:19 | 22 | A.  No. |
| 01:39:20 | 23 | Q.  Okay.  So it would be fair to say if you |
| 01:39:25 | 24 | found these dogs in the field during your work as a |
| 01:39:28 | 25 | police officer, you wouldn't be able to reference your |



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

Confidential

158

|  | 1 | SERGEANT ERIC ALEXANDER - BY MR. SHIELDS |
|---|---|---|
| 01:39:33 | 2 | training for how to interact with these dogs? |
| 01:39:36 | 3 | MS. JONES:  Objection. |
| 01:39:37 | 4 | A.  I'm making my own interpretation and |
| 01:39:41 | 5 | assessment of each dog every time I interact with it. |
| 01:39:46 | 6 | Q.  Okay.  And that assessment is just based |
| 01:39:47 | 7 | on your personal experience, not based on this |
| 01:39:50 | 8 | training document that we're looking at? |
| 01:39:54 | 9 | MS. JONES:  Objection. |
| 01:39:55 | 10 | But go ahead. |
| 01:39:56 | 11 | A.  I think that would be a reference to it. |
| 01:39:58 | 12 | But me -- me knowing some demeanor dealing with dogs, |
| 01:40:03 | 13 | I would say it's both.  My interpretation and what |
| 01:40:09 | 14 | training that we were given.  What I guess -- I |
| 01:40:12 | 15 | guess -- |
| 01:40:12 | 16 | Q.  Okay.  But you don't remember anything |
| 01:40:13 | 17 | from the training, so you're not really referencing |
|  | 18 | the training, right? |
| 01:40:16 | 19 | A.  No.  You asked me about discussions about |
| 01:40:19 | 20 | the bullets.  That's what you asked me.  Am I correct? |
| 01:40:21 | 21 | Q.  Sure. |
| 01:40:24 | 22 | I guess I asked you here on this page, you |
| 01:40:26 | 23 | know, if you remembered any specific discussions from |
| 01:40:30 | 24 | this page about how to approach these dogs |
|  | 25 | differently. |

