CONFIDENTIAL

1

2                 UNITED STATES DISTRICT COURT
                 WESTERN DISTRICT OF NEW YORK
3    - - - - - - - - - - - - - - - - - - - - - - - - - -
     ERIN GURSSLIN,
4
              Plaintiff,
5
                             Civil Action No. 20-cv-6508
6    v.

7    THE CITY OF ROCHESTER, a municipal entity, POLICE
     OFFICER JEREMY NELLIST, POLICE OFFICER JOSHUA
8    KELLY, COMMANDER FABIAN RIVERA, LIEUTENANT AARON
     SPRINGER,
9
              Defendants.
10   - - - - - - - - - - - - - - - - - - - - - - - - - -

11

     Remote Deposition Upon Oral Examination:
12
                      Sergeant Joshua Paul Kelly
13

14

15
     Date:            February 22, 2023
16

17
     Time:            10:00 a.m.
18

19

20

21   Reported By:   Jayme C. Wintish

22                   Alliance Court Reporting, Inc.

23                   109 South Union Street, Suite 400

24                   Rochester, New York 14607

25



Confidential

```
 1
 2                    A P P E A R A N C E S
 3   Appearing Remotely on Behalf of Plaintiff:
 4   Elliot D. Shields, Esq.
 5        Roth & Roth LLP
 6        192 Lexington Avenue, Suite 802
 7        New York, New York  10016
 8        eshields@rothandrothlaw.com
 9
10   Appearing Remotely on Behalf of Defendants:
11   Peachie L. Jones, Esq.
12        City of Rochester Law Department
13        City Hall, Room 400A
14        30 Church Street
15        Rochester, New York  14614
16        peachie.jones@cityofrochester.gov
17
18   Also Present Remotely:
19   Dave Parrotta, Videographer
20        Alliance Court Reporting, Inc.
21        109 South Union Street, Suite 400
22        Rochester, New York 14607
23
24                    *      *      *
25
```



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

Confidential

1                S T I P U L A T I O N S

2     WEDNESDAY, FEBRUARY 22, 2023;

3               (Proceedings in the above-titled matter

4               commencing at 10:04 a.m.)

5                         *      *      *

6               IT IS HEREBY STIPULATED by and between the

7     attorneys for the respective parties that this

8     deposition may be taken by the Plaintiff at this time

9     pursuant to subpoena;

10              IT IS FURTHER STIPULATED, that all

11    objections except as to the form of the questions and

12    responsiveness of the answers, be reserved until the

13    time of the trial;

14              IT IS FURTHER STIPULATED, that pursuant to

15    Federal Rules of Civil Procedure 30(e)(1) the witness

16    requests to review the transcript and make any

17    corrections to same before any Notary Public;

18              IT IS FURTHER STIPULATED, that if the

19    original deposition has not been duly signed by the

20    witness and returned to the attorney taking the

21    deposition by the time of trial or any hearing in this

22    cause, a certified transcript of the deposition may be

23    used as though it were the original;

24              IT IS FURTHER STIPULATED, that the

25    attorneys for the parties are individually responsible



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

Confidential

4

1           P R O C E E D I N G S

2    for their certified transcript charge, including any

3    expedite or other related production charges;

4               AND IT IS FURTHER STIPULATED, that the

5    Notary Public, JAYME C. WINTISH, may administer the

6    oath to the witness.

7                    *     *     *

8               THE COURT REPORTER:  Will counsel please

9    stipulate to me remotely swearing in the witness

10   located in New York State; that counsel will not

11   object to the admissibility of the transcript based on

12   proceeding in this way and that the witness has

13   verified that he is, in fact, Sergeant Joshua Paul

14   Kelly?

15               MS. JONES:  Yes.  Defendants will.

16               MR. SHIELDS:  Plaintiff stipulates.

10:04:36  17          THE VIDEOGRAPHER:  We are on the record at

10:04:38  18   10:04 a.m.  Today is Wednesday, February 22nd, 2023.

10:04:47  19   I am David Parrotta for Alliance Court Reporting

10:04:49  20   located at 109 South Union Street, Suite 400, in

10:04:54  21   Rochester, New York.  We are at the offices of

10:04:54  22   Alliance Court Reporting.

10:04:57  23          We are about to begin the video-recorded

10:04:59  24   deposition of Joshua P. Kelly in the matter of Erin

10:05:04  25   Gursslin, Plaintiff, versus the City of Rochester, a



|        |    |                                                               |
|--------|----|---------------------------------------------------------------|
|        | 1  | SERGEANT JOSHUA PAUL KELLY - BY MR. SHIELDS                    |
| 01:55:27 | 2  | A.  I can't recall.                                         |
| 01:55:28 | 3  | Q.  Okay.  After the academy, other than your              |
| 01:55:34 | 4  | SWAT training, tell me all the training that you've         |
| 01:55:37 | 5  | received about interacting with dogs.                      |
| 01:55:45 | 6  | A.  I believe it was either Animal Control or              |
| 01:55:45 | 7  | the SPCA, possibly a representative from them, maybe       |
| 01:55:51 | 8  | came out and taught a PowerPoint.  And I think there       |
| 01:55:59 | 9  | might have been one other training, but I can't recall     |
| 01:56:03 | 10 | the specifics of it.                                       |
| 01:56:03 | 11 | Q.  Okay.  Now, if -- if I say to you that it              |
| 01:56:12 | 12 | wasn't the ASPCA, but, you know, the documents that        |
| 01:56:15 | 13 | the City has produced in the case show that it was         |
| 01:56:19 | 14 | like the Human Society, does that sound right to you?      |
| 01:56:23 | 15 | A.  Yeah.  Possibly.                                        |
| 01:56:24 | 16 | Q.  Okay.  Did you review that PowerPoint                  |
| 01:56:28 | 17 | before your deposition today to prepare for your           |
| 01:56:31 | 18 | deposition?                                                 |
| 01:56:32 | 19 | A.  I briefly looked at it.                                 |
| 01:56:34 | 20 | Q.  Okay.  Prior to reviewing that PowerPoint              |
| 01:56:38 | 21 | in preparation for today's deposition, when is the         |
| 01:56:41 | 22 | last time that you had looked at that document?            |
| 01:56:44 | 23 | A.  The day that it was presented to me.                    |
| 01:56:48 | 24 | Q.  Okay.  Do you remember when that training              |
| 01:56:51 | 25 | was?                                                         |



|        | 1  | SERGEANT JOSHUA PAUL KELLY - BY MR. SHIELDS |
|--------|----|---------------------------------------------|

01:56:59  2    A.  Maybe -- if I had to guess, maybe 2017 or

01:57:07  3    2019 or...

01:57:10  4    Q.  Okay.  You don't remember if it was before

01:57:12  5    or after this incident?

01:57:13  6    A.  No, sir.  I don't.

01:57:15  7    Q.  Tell me everything that you remember about

01:57:18  8    that training.

01:57:20  9    MS. JONES:  Objection.

01:57:22  10    Go ahead.

01:57:23  11    A.  I remember them going over some of the

01:57:27  12    visual cues about a dog.

01:57:31  13    Q.  Okay.  Did you watch any videos at that

01:57:34  14    training?

01:57:38  15    A.  I don't remember any video in particular,

01:57:41  16    but I'm sure there was.

01:57:43  17    Q.  Okay.  What did you learn at that

01:57:46  18    training?

01:57:49  19    A.  Indicators for dog behavior.

01:57:54  20    Q.  Okay.  Anything else?

01:57:57  21    A.  That's specifically what I remember.

01:58:01  22    Q.  Okay.  And was that training geared

01:58:04  23    towards dealing with aggressive dogs?

01:58:10  24    A.  I don't remember if it was geared towards

01:58:14  25    an aggressive dog or a docile dog.  I just -- I



Confidential

162

| | 1 | SERGEANT JOSHUA PAUL KELLY - BY MR. SHIELDS |
| 01:58:17 | 2 | remember them going over different characteristics |
| 01:58:22 | 3 | that a dog might exhibit visually to give you |
| 01:58:27 | 4 | indicators as far as what their possible state of mind |
| 01:58:33 | 5 | might be. |
| 01:58:33 | 6 | Q.  Okay.  And indicators as to whether or not |
| 01:58:42 | 7 | they might be attacking or about to attack? |
| 01:58:46 | 8 | A.  Yeah. |
| 01:58:48 | 9 | MS. JONES:  Objection. |
| 01:58:48 | 10 | A.  Indicators for possible aggressiveness or |
| 01:58:53 | 11 | playfulness. |
| 01:58:55 | 12 | Q.  Okay.  Do you remember anything about how |
| 01:58:58 | 13 | to tell whether a dog is approaching you in an |
| 01:59:05 | 14 | aggressive manner versus approaching you just to greet |
| 01:59:11 | 15 | you like a normal dog would do, you know, if you |
| 01:59:14 | 16 | entered its yard that you learned at the training? |
| 01:59:17 | 17 | MS. JONES:  Objection. |
| 01:59:18 | 18 | Go ahead. |
| 01:59:19 | 19 | A.  I can try to give you an idea.  It's hard |
| 01:59:27 | 20 | to differentiate between life experience and what I |
| 01:59:30 | 21 | remember from that training and if they're crossing |
| 01:59:34 | 22 | paths or if one was from life experience. |
| 01:59:38 | 23 | Q.  Okay.  So what I'm try to figure out is, |
| 01:59:44 | 24 | is there anything you took away from that training |
| 01:59:48 | 25 | about how to differentiate between a dog that might be |



ALLIANCE
COURT REPORTING, INC.
*Videography · Remote · Deposition Suites*
www.alliancecourtreporting.net · 585.546.4920

| | 1 | SERGEANT JOSHUA PAUL KELLY - BY MR. SHIELDS |
|01:59:53| 2 | a threat versus one that you might misperceive as a |
|01:59:58| 3 | threat, but really is not a threat? |
|02:00:01| 4 | A. Okay. I think, from what I can remember, |
|02:00:06| 5 | they talked about hair standing up on the back of a |
|02:00:09| 6 | dog's neck, the stance it takes, the showing of teeth, |
|02:00:20| 7 | the audible sounds it may make, as far as whether it's |
|02:00:29| 8 | growling or barking. Just the overall posture. |
|02:00:39| 9 | Q. Was there any discussion of how to avoid |
|02:00:44| 10 | using a firearm against a dog that you perceive as a |
|02:00:50| 11 | threat? |
|02:00:51| 12 | A. I can't recall if they went over less |
|02:00:56| 13 | lethal options or not in that. |
|02:01:00| 14 | Q. Other than less lethal options, do you |
|02:01:06| 15 | remember if they went over any other ways to avoid |
|02:01:09| 16 | shooting a dog that you perceived as a threat? |
|02:01:13| 17 | MS. JONES: Objection. |
|02:01:14| 18 | A. Not that I can recall. |
|02:01:18| 19 | Q. Okay. Does the annual firearms training |
|02:01:24| 20 | involve dog-shooting scenarios? |
|02:01:29| 21 | A. Are you talking about like the |
|02:01:33| 22 | qualification? |
|02:01:33| 23 | Q. Correct. |
|02:01:35| 24 | A. No, sir. |
|02:01:36| 25 | Q. Are there any other incidents where you |



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

Confidential

164

|       |    |                                                            |
|-------|----|------------------------------------------------------------|
|       | 1  | SERGEANT JOSHUA PAUL KELLY - BY MR. SHIELDS                 |
| 02:01:41 | 2  | have shot a dog?                                        |
| 02:01:43 | 3  | A.  Yes, sir.                                           |
| 02:01:44 | 4  | Q.  When was that?                                      |
| 02:01:47 | 5  | A.  I'd have to look at the document to give           |
| 02:01:53 | 6  | you an exact day, but it was last year in 2022.        |
| 02:01:58 | 7  | Q.  Okay.  What month?                                  |
| 02:02:00 | 8  | A.  Again, I'd have to see the document to             |
| 02:02:05 | 9  | remember exactly what month it was.                    |
| 02:02:05 | 10 | (Document request - all incident reports and           |
| 02:02:05 | 11 | body-worn camera footage)                              |
| 02:02:09 | 12 | MR. SHIELDS:  Okay.  I'm going to call for             |
| 02:02:12 | 13 | production of all incident reports, IRs, body-worn     |
| 02:02:18 | 14 | cameras related to this incident to the extent they    |
| 02:02:21 | 15 | haven't been provided.                                 |
| 02:02:22 | 16 | And Peachie, do you have any idea sitting              |
| 02:02:25 | 17 | here right now if those have been produced?            |
| 02:02:30 | 18 | MS. JONES:  First, I need you to follow up             |
| 02:02:33 | 19 | in writing for any requests for the productions.  And  |
| 02:02:36 | 20 | second, no, I don't think they have been produced.     |
| 02:02:40 | 21 | MR. SHIELDS:  Okay.  We're going to have               |
| 02:02:42 | 22 | to call him back and ask him additional questions      |
| 02:02:44 | 23 | about this incident.  This is something that's         |
| 02:02:48 | 24 | critical to the case that I should have had, that you  |
| 02:02:52 | 25 | should have told me about.  We've demanded -- it's     |



ALLIANCE
COURT REPORTING, INC.
*Videography · Remote · Deposition Suites*
www.alliancecourtreporting.net · 585.546.4920

| | | |
|---|---|---|
| | 1 | SERGEANT JOSHUA PAUL KELLY - BY MR. SHIELDS |
| 02:03:12 | 2 | something that's responsive to our demands.  It's |
| 02:03:12 | 3 | something that's responsive to our demands.  And it's |
| 02:03:17 | 4 | obviously something that's critical to the claims in |
| 02:03:17 | 5 | our case. |
| 02:03:21 | 6 | MS. JONES:  Yeah.  I disagree that it's |
| 02:03:23 | 7 | critical or that we should have responded prior to |
| 02:03:26 | 8 | today's deposition. |
| 02:03:29 | 9 | MR. SHIELDS:  You don't think you needed |
| 02:03:31 | 10 | to turn over body-worn camera footage or records |
| 02:03:37 | 11 | related to -- okay.  Well, will you agree to reproduce |
| 02:03:39 | 12 | Sergeant Kelly so that I can ask him questions about |
| 02:03:43 | 13 | this 2022 dog-shooting incident after you respond to |
| 02:03:48 | 14 | my demands that encompass the body-worn camera in the |
| 02:03:53 | 15 | records related to that incident? |
| 02:03:56 | 16 | MS. JONES:  No. |
| 02:03:57 | 17 | MR. SHIELDS:  Okay.  We'll make a motion. |
| 02:03:59 | 18 | MS. JONES:  Elliott, it didn't happen in |
| 02:04:04 | 19 | 2022 -- I'm sorry.  The incident -- the most recent |
| 02:04:05 | 20 | was in 2022, and the incident in this lawsuit was in |
| 02:04:09 | 21 | 2018. |
| 02:04:10 | 22 | MR. SHIELDS:  Correct.  And it goes to the |
| 02:04:25 | 23 | Monell claims in the case, the policy and practice |
| 02:04:25 | 24 | claims against the City of Rochester in the case.  And |
| 02:04:28 | 25 | if it wasn't relevant to those claims, then there |



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

|   |   |
|---|---|
| | 1 |
| 02:04:32 | 2 |
| 02:04:36 | 3 |
| 02:04:38 | 4 |
| 02:04:42 | 5 |
| 02:04:46 | 6 |
| 02:04:49 | 7 |
| 02:04:52 | 8 |
| 02:04:55 | 9 |
| 02:04:57 | 10 |
| 02:05:00 | 11 |
| 02:05:06 | 12 |
| 02:05:09 | 13 |
| 02:05:15 | 14 |
| 02:05:31 | 15 |
| 02:05:38 | 16 |
| 02:05:43 | 17 |
| 02:05:46 | 18 |
| 02:05:52 | 19 |
| 02:05:59 | 20 |
| 02:06:06 | 21 |
| 02:06:12 | 22 |
| 02:06:17 | 23 |
| 02:06:23 | 24 |
| 02:06:30 | 25 |

1    SERGEANT JOSHUA PAUL KELLY - BY MR. SHIELDS
2    would have been no reason for you to produce all of
3    the other dog-shooting incident reports and body-worn
4    cameras that post-dated the other incidents in this
5    lawsuit and the other lawsuit.  So you know that it's
6    relevant.  And you should have produced it.
7         MS. JONES:  Like I said, you can follow up
8    in writing, but we're not agreeing to produce Sergeant
9    Kelly again.
10        Q.  Okay.  Sergeant Kelly, can you please tell
11   me everything about that most recent dog-shooting
12   incident in 2022 that you can recall?
13        A.  Yes, sir.  There was a call for shots
14   fired in the area of Kappel Place, I believe.
15   Officers responded, and they encountered some people
16   outside.  And I don't know the exact address.  I don't
17   want to give you any wrong information.  But they
18   encountered some people outside.  They became
19   uncooperative and officers located casings for -- I
20   believe it was a handgun located in the property in
21   the -- I guess on a makeshift piece of concrete off to
22   the side.  At that point in time, based upon the
23   information, I went over to assist the officers and
24   the residents continued to open the door, yell and
25   being very uncooperative.



ALLIANCE
COURT REPORTING, INC.

Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

```
              1        SERGEANT JOSHUA PAUL KELLY - BY MR. SHIELDS
02:06:33      2              At some point during this, information was
02:06:35      3     received.  I think it was one of the people opened the
02:06:39      4     door and said something about legally owning handguns
02:06:44      5     or something along the lines of a pistol permit.  At
02:06:49      6     that point in time, another sergeant and I determined
02:06:53      7     that it wasn't worth it to stay out there and try to
02:07:00      8     get cooperation out of the people from this residence.
02:07:07      9              I directed my personnel to recover the
02:07:13     10     casings, photograph them as evidence, and then we were
02:07:18     11     planning on leaving the area.  As they were collecting
02:07:24     12     this -- the casings, I was positioned between them and
02:07:27     13     the house along with another SWAT member who was
02:07:33     14     working patrol for me at the time.  At that point in
02:07:38     15     time, the resident opened the door and a -- she
02:07:43     16     started to yell something that -- I can't recall what
02:07:46     17     it was -- but a dog came running out of the house at
02:07:52     18     that point in time.  The dog ran -- kind of looped
02:07:58     19     just a little bit, and then ran directly at me.  When
02:08:02     20     it got within I'd say 5 feet I fired one round.
02:08:09     21        Q.  Did the round strike the dog?
02:08:13     22        A.  Yes, sir.
02:08:14     23        Q.  And did the dog die?
02:08:17     24        A.  I don't believe so.
02:08:20     25        Q.  Were there other people around when you
```



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

Confidential

168

|          | 1  | SERGEANT JOSHUA PAUL KELLY - BY MR. SHIELDS |
|----------|----|---------------------------------------------|
| 02:08:25 | 2  | shot the dog? |
| 02:08:26 | 3  | A.   There was other officers on the scene. |
| 02:08:30 | 4  | Q.   Okay.  And behind you -- was the house |
| 02:08:35 | 5  | behind you or something else? |
| 02:08:37 | 6  | A.   The way the dog came out and the way I |
| 02:08:42 | 7  | positioned, I was facing back towards the street. |
| 02:08:47 | 8  | Q.   Away from the house that the dog exited |
| 02:08:50 | 9  | from? |
| 02:08:50 | 10 | A.   Yes, sir. |
| 02:08:51 | 11 | Q.   Were there other houses down range from |
| 02:08:55 | 12 | where you fired? |
| 02:08:57 | 13 | A.   Yes, sir. |
| 02:08:57 | 14 | Q.   What time of day was it? |
| 02:08:59 | 15 | A.   I work first platoon, which is -- which |
| 02:09:06 | 16 | you'd consider a midnight shift, from 11 at night |
| 02:09:11 | 17 | until 7 in the morning.  It happened sometime, I'd |
| 02:09:14 | 18 | say, between -- again, this is a rough estimate -- |
| 02:09:17 | 19 | between probably 2 and 4 o'clock. |
| 02:09:25 | 20 | Q.   Was it dark outside? |
| 02:09:32 | 21 | A.   I'm sorry? |
| 02:09:33 | 22 | Q.   I'm sorry.  I cut you off. |
| 02:09:33 | 23 | A.   It's okay. |
| 02:09:33 | 24 | Q.   My question was, was it dark outside? |
| 02:09:33 | 25 | A.   Yes, sir. |



**ALLIANCE**
COURT REPORTING, INC.
*Videography · Remote · Deposition Suites*
www.alliancecourtreporting.net · 585.546.4920

Confidential

169

| | 1 | SERGEANT JOSHUA PAUL KELLY - BY MR. SHIELDS |
|---|---|---|

02:09:37   2      Q.   What kind of dog was it?

02:09:39   3      A.   I believe it was a pit bull.

02:09:43   4      Q.   How big was the dog?

02:09:47   5      A.   I guess, if I had to judge by size, I'd

02:09:54   6   say it was a decent-sized dog.

02:09:56   7      Q.   Had the dog tried to bite anybody before

02:09:59   8   you shot it?

02:10:01   9      A.   I don't think it charged at anybody else

02:10:07  10   other than me.

02:10:08  11      Q.   Okay.  Did it bark or growl before it

02:10:17  12   charged at you?

02:10:18  13      A.   That, I can't recall.

02:10:21  14      Q.   Okay.  Did you have your pepper spray on

02:10:26  15   you?

02:10:26  16      A.   Yes, sir.  I did.

02:10:27  17      Q.   Did you have a Taser on you?

02:10:29  18      A.   At that time, I can't recall if I had it

02:10:33  19   on me or not.

02:10:34  20      Q.   Did you consider using any other less

02:10:38  21   lethal options instead of firing your gun?

02:10:41  22      A.   No, sir.

02:10:42  23      Q.   And why not?

02:10:43  24      A.   I didn't feel as if I had time.

02:10:46  25      Q.   Could you have kicked the dog?



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

Confidential

|  |  |  |
|---|---|---|
|  | 1 | SERGEANT JOSHUA PAUL KELLY - BY MR. SHIELDS |
| 02:10:52 | 2 | MS. JONES:  Objection. |
| 02:10:54 | 3 | Go ahead. |
| 02:10:55 | 4 | A.  I guess that's always an option. |
| 02:10:58 | 5 | Q.  Is there anything else you could have done |
| 02:11:03 | 6 | to avoid shooting that dog? |
| 02:11:05 | 7 | MS. JONES:  Objection. |
| 02:11:06 | 8 | A.  In this circumstance? |
| 02:11:09 | 9 | Q.  Correct. |
| 02:11:09 | 10 | A.  I don't feel as if I could have. |
| 02:11:13 | 11 | Q.  So the Sergeant usually signs the incident |
| 02:11:18 | 12 | report when a dog is shot; correct? |
| 02:11:21 | 13 | MS. JONES:  Objection. |
| 02:11:22 | 14 | A.  A sergeant generally writes up the report |
| 02:11:25 | 15 | when an officer shoots a dog. |
| 02:11:29 | 16 | Q.  But you were the sergeant at the scene; |
| 02:11:31 | 17 | correct? |
| 02:11:32 | 18 | A.  That's correct. |
| 02:11:33 | 19 | Q.  So did you sign -- did you write up the |
| 02:11:36 | 20 | report or someone else? |
| 02:11:38 | 21 | A.  No, sir.  Someone else did. |
| 02:11:40 | 22 | Q.  Okay.  Who wrote up that report? |
| 02:11:42 | 23 | A.  Lieutenant Bing Reaves, R-E-A-V-E-S. |
| 02:11:58 | 24 | Q.  And did you review your body-worn camera |
| 02:12:06 | 25 | footage from that incident? |



ALLIANCE
COURT REPORTING, INC.
*Videography · Remote · Deposition Suites*
www.alliancecourtreporting.net · 585.546.4920

Confidential

171

|  |  |  |
|---|---|---|
| | 1 | SERGEANT JOSHUA PAUL KELLY - BY MR. SHIELDS |
| 02:12:06 | 2 | A.  Yes, sir.  I did. |
| 02:12:07 | 3 | Q.  And do you know if Lieutenant Reaves |
| 02:12:11 | 4 | reviewed your body-worn camera from that incident? |
| 02:12:13 | 5 | MS. JONES:  Objection. |
| 02:12:15 | 6 | A.  I'm assuming he did, but I can't speak for |
| 02:12:18 | 7 | the lieutenant. |
| 02:12:21 | 8 | Q.  Okay.  Do you know if anyone else reviewed |
| 02:12:24 | 9 | the body-worn camera footage from that incident? |
| 02:12:26 | 10 | MS. JONES:  Objection. |
| 02:12:27 | 11 | A.  That, I don't know. |
| 02:12:28 | 12 | Q.  Do you know if the incident was reviewed |
| 02:12:31 | 13 | by PSS? |
| 02:12:32 | 14 | A.  That, I don't know. |
| 02:12:34 | 15 | Q.  Okay.  Do you know if the incident from |
| 02:12:37 | 16 | September 6th, 2018, was reviewed by PSS? |
| 02:12:41 | 17 | MS. JONES:  Objection. |
| 02:12:42 | 18 | A.  No, sir.  I don't know. |
| 02:12:44 | 19 | Q.  Okay.  From either of the two incidents |
| 02:12:51 | 20 | that we've spoken about, no one from PSS ever came and |
| 02:12:58 | 21 | spoke with you about the incident; correct? |
| 02:13:01 | 22 | MS. JONES:  Objection. |
| 02:13:01 | 23 | A.  Not that I can recall. |
| 02:13:03 | 24 | Q.  Okay.  They never required you to answer |
| 02:13:07 | 25 | any questions in writing either; correct? |



Confidential

|  | 1 | SERGEANT JOSHUA PAUL KELLY - BY MR. SHIELDS |
| 02:13:09 | 2 | MS. JONES:  Objection. |
| 02:13:09 | 3 | A.  No, sir. |
| 02:13:13 | 4 | Q.  Are there any other incidents where you've |
| 02:13:16 | 5 | shot a dog? |
| 02:13:17 | 6 | A.  No, sir. |
| 02:13:19 | 7 | Q.  Okay.  Are there any other incidents where |
| 02:13:21 | 8 | you've used less lethal force against a dog? |
| 02:13:25 | 9 | A.  No, sir. |
| 02:13:37 | 10 | Q.  Were you required to get any type of |
| 02:13:39 | 11 | additional training after you shot the dog in 2022? |
| 02:13:39 | 12 | A.  No, sir. |
| 02:13:39 | 13 | (There was a discussion off the record.) |
| 02:14:11 | 14 | THE VIDEOGRAPHER:  It's 2:14 p.m.  We're |
| 02:14:11 | 15 | going off the record. |
| 02:14:11 | 16 | (The proceeding recessed at 2:13 p.m.) |
| 02:14:11 | 17 | (The proceeding reconvened at 2:25 p.m.; |
| 02:14:11 | 18 | appearances as before noted.) |
| 02:25:49 | 19 | THE VIDEOGRAPHER:  It's 2:25 p.m.  We're |
| 02:25:51 | 20 | back on the record. |
| 02:25:51 | 21 | SERGEANT JOSHUA PAUL KELLY, resumes; |
| 02:25:53 | 22 | CONTINUING EXAMINATION BY MR. SHIELDS: |
| 02:25:53 | 23 | Q.  Good afternoon, Sergeant Kelly.  Same |
| 02:25:56 | 24 | questions as before.  After we took the break, did you |
| 02:26:00 | 25 | have an opportunity to speak with your attorney during |

