```
                         CONFIDENTIAL
 1

 2           UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF NEW YORK
 3   - - - - - - - - - - - - - - - - - - - - - - - - -
     ERIN GURSSLIN,
 4
             Plaintiff,
 5
                         Civil Action No. 20-cv-6508
 6   v.

 7   THE CITY OF ROCHESTER, a municipal entity, POLICE
     OFFICER JEREMY NELLIST, POLICE OFFICER JOSHUA
 8   KELLY, COMMANDER FABIAN RIVERA, LIEUTENANT AARON
     SPRINGER,
 9
             Defendants.
10   - - - - - - - - - - - - - - - - - - - - - - - - -

11   Video-Recorded Deposition in the Above-Titled Matter:

12               Deputy Chief Aaron Springer

13
     Location:     Alliance Court Reporting, Inc.
14                 109 South Union Street, Suite 400
                   Rochester, New York 14607
15

16
     Date:         February 28, 2023
17

18
     Time:         10:00 a.m.
19

20

21   Reported By:  CHRISTINE VIGNA

22                 Alliance Court Reporting, Inc.

23                 109 South Union Street, Suite 400

24                 Rochester, New York 14607

25
```



*Videography · Remote · Deposition Suites*
www.alliancecourtreporting.net · 585.546.4920

**Confidential**

2

```
 1
 2                  A P P E A R A N C E S
 3   Appearing Remotely on Behalf of Plaintiff:
 4   Elliot D. Shields, Esq.
 5      Roth & Roth LLP
 6      192 Lexington Avenue, Suite 802
 7      New York, New York 10016
 8      eshields@rothandrothlaw.com
 9
10   Appearing on Behalf of Defendants:
11   Peachie L. Jones, Esq.
12      City of Rochester Law Department
13      City Hall, Room 400A
14      30 Church Street
15      Rochester, New York 14614
16      peachie.jones@cityofrochester.gov
17
18   Also Present:
19   Kenneth Williamson, Videographer
20      Alliance Court Reporting, Inc.
21      109 South Union Street, Suite 400
22      Rochester, New York  14607
23
24                     *     *     *
25
```



```
 1                S T I P U L A T I O N S
 2   TUESDAY, FEBRUARY 28, 2023;
 3           (Proceedings in the above-titled matter
 4           commencing at 10:08 a.m.)
 5                       *     *     *
 6             IT IS HEREBY STIPULATED by and between the
 7   attorneys for the respective parties that this
 8   deposition may be taken by the Plaintiff at this time
 9   pursuant to subpoena;
10             IT IS FURTHER STIPULATED, that all
11   objections except as to the form of the questions and
12   responsiveness of the answers, be reserved until the
13   time of the trial;
14             IT IS FURTHER STIPULATED, that pursuant to
15   Federal Rules of Civil Procedure 30(e)(1) the witness
16   requests to review the transcript and make any
17   corrections to same before any Notary Public;
18             IT IS FURTHER STIPULATED, that if the
19   original deposition has not been duly signed by the
20   witness and returned to the attorney taking the
21   deposition by the time of trial or any hearing in this
22   cause, a certified transcript of the deposition may be
23   used as though it were the original;
24             IT IS FURTHER STIPULATED, that the
25   attorneys for the parties are individually responsible
```



```
 1               P R O C E E D I N G S
 2   for their certified transcript charge, including any
 3   expedite or other related production charges;
 4               AND IT IS FURTHER STIPULATED, that the
 5   Notary Public, CHRISTINE VIGNA, may administer the
 6   oath to the witness.
 7                        *     *     *
 8               THE VIDEOGRAPHER:  We are on the record.
 9   The time is 10:08 on Tuesday, February 28, 2023.  My
10   name is Ken Williamson for Alliance Court Reporting
11   located at 109 South Union Street, Rochester, New
12   York.  Today we are located at the offices of Alliance
13   Court Reporting.  We are about to begin the
14   video-recorded deposition of Deputy Chief Aaron
15   Springer in the matter of Erin Gursslin versus the
16   City of Rochester, a municipal entity, Police Officer
17   Jeremy Nellist, Police Officer Joshua Kelly, Commander
18   Fabian -- Fabian Rivera and Lieutenant Aaron Springer,
19   Defendants.  Today's matter is being video-recorded on
20   behalf of the Plaintiffs.
21               Counsel, please state your appearances for
22   the record and please begin with the noticing
23   attorney.
24               MR. SHIELDS:  Elliot Shields, Roth & Roth,
25   LLP for the Plaintiff, Erin Gursslin.
```



```
           1      DEPUTY CHIEF AARON SPRINGER - BY MR. SHIELDS
01:44:06   2   members will have their police badges and coms readily
01:44:12   3   available and accessible.  So that would have been the
01:44:14   4   extent of the -- the -- the training, not specific to
01:44:17   5   Officer Nellist and Officer Kelly, but for the whole
01:44:19   6   entire team for future operations.
01:44:21   7           Q.  Okay.  By signing the after action report,
01:44:28   8   you approved the basis for the actions of Kelly and
01:44:33   9   Nellist on September 6, 2018?
01:44:37  10           MS. JONES:  Objection.
01:44:38  11           A.  I -- I wouldn't say that.  This -- this is
01:44:42  12   the documentation in an attempt to accurately reflect
01:44:45  13   what took place.  There was another report that was
01:44:48  14   issued that -- that outlined specifically the -- the
01:44:55  15   incident for -- for shooting the dog.  That
01:44:58  16   was -- that was documented on an incident report
01:45:02  17   separate to this particular document.
01:45:06  18           Q.  And Nellist and Kelly both testified that
01:45:14  19   in no way by you or anyone else were they ever
01:45:17  20   disciplined as a result of this incident.  Does that
01:45:22  21   sound accurate to you?
01:45:23  22           MS. JONES:  Objection.
01:45:23  23           A.  Yes.
01:45:24  24           Q.  Okay.  And that they were never required
01:45:28  25   to undergo any additional training.  That's what they
```



```
            1      DEPUTY CHIEF AARON SPRINGER - BY MR. SHIELDS
01:45:30    2   both testified to as well.  Does that sound accurate
01:45:33    3   to you?
01:45:34    4              MS. JONES:  Objection.
01:45:34    5        A.    Yes.  That's accurate.
01:45:37    6              MR. SHIELDS:  Okay.  I want to just take a
01:45:39    7   quick two-minute bathroom break if that's okay?
01:45:43    8              MS. JONES:  Sure.
01:45:45    9              THE WITNESS:  Good with me.
01:45:46   10              THE VIDEOGRAPHER:  Okay.  The time is 1:46
01:45:49   11   p.m.  We are off the record.
01:45:53   12            (The proceedings recessed at 1:46 p.m.)
01:55:15   13            (The proceedings reconvened at 1:55 p.m.;
           14              appearances as before noted.)
01:55:25   15              THE VIDEOGRAPHER:  We are on the record.
01:55:30   16   The time is 1:55 p.m. on February 28, 2023.  This is a
01:55:37   17   hybrid deposition.  We are located at Alliance Court
01:55:44   18   Reporting, 109 South Union Street, Rochester, New
01:55:45   19   York.  Our deponent is Deputy Chief Aaron Springer.
01:55:49   20              Please continue.
           21   DEPUTY CHIEF AARON SPRINGER, resumes;
01:55:50   22              CONTINUING EXAMINATION BY MR. SHIELDS:
01:55:50   23        Q.    All right.  Chief, welcome back.  Same
01:55:53   24   questions as before.  We just took a break for about
01:55:58   25   ten minutes.  And during that ten-minute break, did
```



**Confidential**

252

| | | |
|---|---|---|
| | 1 | DEPUTY CHIEF AARON SPRINGER - BY MR. SHIELDS |
| 04:25:42 | 2 | MS. JONES: Thank you. |
| 04:25:44 | 3 | MR. SHIELDS: You're welcome. |
| 04:25:45 | 4 | Q. Okay. And when you were chief, I think we |
| 04:25:59 | 5 | talked a little bit earlier -- I'm sorry. |
| 04:26:01 | 6 | When you were the SWAT commander for the |
| 04:26:03 | 7 | RPD, I think we talked a little bit earlier about the |
| 04:26:09 | 8 | fact that the SWAT team has monthly trainings; is that |
| 04:26:13 | 9 | right? |
| 04:26:13 | 10 | A. That's correct. |
| 04:26:14 | 11 | Q. Okay. And did any of those monthly |
| 04:26:17 | 12 | trainings ever involve scenarios for how to determine |
| 04:26:23 | 13 | whether a dog was aggressive or not? |
| 04:26:26 | 14 | A. Not that I recall. |
| 04:26:28 | 15 | Q. Okay. Did any of those trainings ever |
| 04:26:31 | 16 | involve the legal requirements to enter the curtilage |
| 04:26:36 | 17 | to a property? |
| 04:26:37 | 18 | A. Not that I recall. |
| 04:26:42 | 19 | Q. Okay. When you were with the RPD, what |
| 04:26:48 | 20 | was the general attitude within the department about |
| 04:26:51 | 21 | incidents where officers shoot dogs? |
| 04:26:54 | 22 | MS. JONES: Objection. |
| 04:26:55 | 23 | A. I -- I -- I don't know if I could speak to |
| 04:27:02 | 24 | the general attitude. I could speak to the general |
| 04:27:05 | 25 | attitude about the group that I most commonly had |



ALLIANCE COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

```
          1         DEPUTY CHIEF AARON SPRINGER - BY MR. SHIELDS
04:27:09  2    contact with on SWAT?  And it was an -- an unfortunate
04:27:12  3    but objective analysis of the circumstance that
04:27:14  4    required the use of force on dogs.
04:27:20  5            That -- that was it.  As -- as objective
04:27:24  6    as was possible given the circumstance, unfortunate as
04:27:31  7    it was.
04:27:32  8         Q.  And every incident that you were ever
04:27:36  9    involved in either personally or as the SWAT commander
04:27:43  10   where a dog was shot, it was ultimately determined by
04:27:47  11   the RPD that the shooting was justified, correct?
04:27:51  12           MS. JONES:  Objection.
04:27:52  13        A.  I can say that I -- any -- any shooting of
04:27:56  14   a dog that I was involved in personally or was -- was
04:27:59  15   responsible for as the SWAT commander, did not or was
04:28:03  16   not brought to my attention that there were any
04:28:05  17   requirements for additional training or discipline.
04:28:08  18           So I think it's important to note though,
04:28:10  19   because it's a -- it was a collateral-duty team that
04:28:14  20   while I would like to think that I would have been
04:28:17  21   made aware of any discipline resultant from a PSS
04:28:20  22   investigation, they were not bound or responsible to
04:28:23  23   notify me.  I wasn't in their chain of command.
04:28:27  24           That would have went through the -- the
04:28:28  25   home unit of the -- the officer's unit of assignment's
```



**Confidential**

254

|  |  |
|---|---|
| | 1    DEPUTY CHIEF AARON SPRINGER - BY MR. SHIELDS |
| 04:28:34 | 2    chain of command.  And -- and -- and I don't recall |
| 04:28:35 | 3    any officer bringing that to my attention. |
| 04:28:38 | 4         Q.   In order to maintain membership on the |
| 04:28:42 | 5    SWAT team, isn't it true that the members had to |
| 04:28:47 | 6    maintain a clean disciplinary history? |
| 04:28:50 | 7              MS. JONES:  Objection. |
| 04:28:51 | 8         A.   Yeah.  Per the policy that we reviewed |
| 04:28:54 | 9    earlier, yes. |
| 04:28:55 | 10        Q.   Okay.  So if any of your SWAT members had |
| 04:28:59 | 11   ever been disciplined in any way, that would be |
| 04:29:02 | 12   brought to your attention somehow, correct? |
| 04:29:06 | 13             MS. JONES:  Objection. |
| 04:29:06 | 14        A.   I would like to think that that would have |
| 04:29:09 | 15   been brought to my attention, yes. |
| 04:29:12 | 16        Q.   Okay.  Because that would be a grounds for |
| 04:29:12 | 17   potentially dismissing that member from the SWAT team? |
| 04:29:14 | 18             MS. JONES:  Objection. |
| 04:29:15 | 19        A.   Correct. |
| 04:29:16 | 20        Q.   What has the department done to try and |
| 04:29:22 | 21   reduce the number of dogs that are shot? |
| 04:29:26 | 22             MS. JONES:  Objection. |
| 04:29:26 | 23        A.   I -- I can't say with any certainty |
| 04:29:30 | 24   because of the period of separation. |
| 04:29:32 | 25        Q.   Okay.  In the time that you were with the |



```
         1       DEPUTY CHIEF AARON SPRINGER - BY MR. SHIELDS
04:29:35 2    RPD from 1996 to 20 -- to January of 2020, what did
04:29:42 3    the department do to try and reduce the number of dogs
04:29:45 4    that were shot?
04:29:46 5            MS. JONES:  Objection.
04:29:47 6         A.   I don't recall any specific effort on the
04:29:50 7    part of the department based on an identification of
04:29:53 8    an -- of an issue to reduce the number of dogs being
04:29:58 9    shot with the exception of a training bulletin or a
04:30:04 10   presentation that was conducted or that was provided
04:30:06 11   to officers that -- that -- that maybe had some
04:30:10 12   pictures of what dogs looked like to show when a dog
04:30:12 13   was or was not, you know, in an aggressive posture.
04:30:16 14   Aside from that, I don't recall really anything else.
04:30:18 15       Q.   Did you receive that training?
04:30:21 16       A.   I don't have the -- what I can remember is
04:30:29 17   I remember the -- the pictures of the dogs, the -- the
04:30:34 18   diagrams of the dogs in different postures, but I -- I
04:30:37 19   don't remember specifically attending the training,
04:30:40 20   reviewing any training material, when or where the
04:30:43 21   training was.  I just remember that there was pictures
04:30:46 22   of -- of dogs in different poses.
04:30:48 23       Q.   So you don't have an independent
04:30:54 24   recollection of attending any in-service training?
04:30:56 25            MS. JONES:  Objection.
```



```
             1     DEPUTY CHIEF AARON SPRINGER - BY MR. SHIELDS
04:30:57     2         A.   With regards to that specific topic,
04:31:00     3     correct.
04:31:01     4         Q.   Other than that, do you remember any
04:31:07     5     trainings provided by the RPD about how to deal with
04:31:14     6     dogs in any way?
04:31:15     7         A.   I do not.
04:31:16     8         Q.   Does the RPD require the use of
04:31:23     9     de-escalation techniques in situations with aggressive
04:31:29    10     people?
04:31:30    11         A.   I'm trying to recall what -- what the
04:31:41    12     policy states.  And I can't recall if there is a note
04:31:49    13     with regards to a requirement for de-escalation or
04:31:53    14     not.  I can't say with any level of certainty,
04:31:57    15     especially, you know, with what they require now.
04:31:59    16         Q.   Does the RPD require de-escalation
04:32:08    17     techniques in situations with dogs that they perceive
04:32:10    18     to be aggressive?
04:32:12    19         A.   Not that I'm aware of.
04:32:14    20         Q.   Does the RPD permit officers to shoot dogs
04:32:20    21     if they're afraid of the dog?
04:32:22    22         A.   If the officer feels that they're in
04:32:29    23     imminent risk of -- of a threat of a dog, yes.  RPD
04:32:35    24     policy allows for that.
04:32:37    25         Q.   Does the RPD provide any training
```



|  |  |
|---|---|
| | 1    DEPUTY CHIEF AARON SPRINGER - BY MR. SHIELDS |
| 04:32:40 | 2    regarding how to objectively evaluate whether the |
| 04:32:49 | 3    officer is actually at an imminent risk as a result of |
| 04:32:53 | 4    what they perceive to be an aggressive dog? |
| 04:32:57 | 5            MS. JONES:  Objection. |
| 04:32:59 | 6        A.   I don't believe so.  I -- I -- I think |
| 04:33:02 | 7    that it's based on the officer's perception.  And I |
| 04:33:05 | 8    don't believe that the RPD, while I was there, |
| 04:33:09 | 9    provided any specific guidance on how to conclude |
| 04:33:12 | 10   that -- that they are -- an individual is in imminent |
| 04:33:18 | 11   risk. |
| 04:33:18 | 12       Q.   Okay.  And the RPD trains its officers |
| 04:33:25 | 13   that if a dog is coming towards them, they can shoot |
| 04:33:28 | 14   it? |
| 04:33:28 | 15           MS. JONES:  Objection. |
| 04:33:29 | 16       A.   I wouldn't say that's accurate, no. |
| 04:33:32 | 17       Q.   Okay.  Does the RPD train its officers |
| 04:33:35 | 18   that if a dog is running towards them and they |
| 04:33:39 | 19   perceive that to pose an imminent risk, then they're |
| 04:33:46 | 20   permitted to shoot the dog? |
| 04:33:48 | 21           MS. JONES:  Objection. |
| 04:33:48 | 22       A.   I think that's a more fair statement |
| 04:33:52 | 23   according to the policy. |
| 04:33:53 | 24       Q.   You were never told by the RPD that you |
| 04:34:04 | 25   are not allowed to shoot dogs, correct? |



ALLIANCE COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

```
        1       DEPUTY CHIEF AARON SPRINGER - BY MR. SHIELDS
04:34:04 2                MS. JONES:  Objection.
04:34:05 3           A.   Not that I recall.  There was never a time
04:34:09 4   when we were told by RPD that we were not allowed to
04:34:15 5   shoot dogs.
04:34:16 6           Q.   And you were never told by the RPD that
04:34:19 7   prior to shooting a dog you were required to consider
04:34:22 8   the use of less lethal force, correct?
04:34:25 9                MS. JONES:  Objection.
04:34:25 10          A.   I don't recall that, no.
04:34:31 11          Q.   And do you think that this lawsuit is
04:34:39 12  frivolous?
04:34:39 13               MS. JONES:  Objection.
04:34:39 14          A.   I -- I don't have an opinion on whether I
04:34:46 15  think the lawsuit is frivolous or not.  It's -- I
04:34:50 16  don't have an opinion on that.  It is what it is.
04:34:53 17          Q.   Okay.  Earlier you testified that you took
04:34:57 18  responsibility for the officers entering
04:35:01 19  Ms. Gursslin's yard without a warrant, consent or
04:35:03 20  exigent circumstances?
04:35:05 21               MS. JONES:  Objection.
04:35:05 22          A.   Yes, I did.
04:35:07 23               However, I asked to qualify that response
04:35:09 24  by saying that I deferred the explanation or the
04:35:13 25  definition of the exigency to the officers.
```



ALLIANCE COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920