UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

CHARLES DEMPSEY, individually, and L.D., by her father and natural guardian, CHARLES DEMPSEY,

                                        Plaintiff,

            -against-

THE CITY OF ROCHESTER, a municipal entity, JAVIER ALGARIN, ADAM GORMAN, RPD OFFICER RESPONSIBLE FOR TRAINING JAVIER ALGARIN,

                                        Defendants.

———————————————————————

Case no. 19-cv-6780

**MEMORANDUM OF LAW IN SUPPORT OF**

**DEFENDANTS' MOTION TO PRECLUDE EXPERT WITNESSES**

**JAMES CROSBY, BRIGID LYONS, AND ALLISON PRINCE**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 1

LEGAL STANDARD .................................................................................................. 2

ARGUMENT ............................................................................................................... 4

I.   THE COURT MUST PRECLUDE THE PROFFERED EXPERT
     TESTIMONY OF JAMES CROSBY ................................................................. 4

     A.   MR. CROSBY SHOULD NOT OPINE REGARDING THE FOURTH
          AMENDMENT, SEARCHES, AND SEIZURES ....................................................... 5

          1.   Mr. Crosby Is Not—And Does Not Purport To Be—An Expert
               On Searches, Seizures, And Related Fourth Amendment
               Issues ............................................................................................. 5

          2.   Mr. Crosby Cannot Aid The Jury In Accurately Understanding
               Fourth Amendment Issues, Because He Misunderstands
               Them .............................................................................................. 6

               a.   Mr. Crosby misunderstands principles regarding
                    searches ................................................................................ 7

               b.   Mr. Crosby misunderstands principles regarding seizures ...... 8

          3.   Mr. Crosby's Fourth Amendment Conclusions Are Not Based
               On Sufficient Facts Or Data .............................................................. 9

     B.   MR. CROSBY IS NOT AN EXPERT IN POLICE PRACTICES ............................... 9

     C.   THE COURT MUST EXCLUDE HIS OPINION ON DISCIPLINE,
          SUPERVISION, AND LEGAL CONCEPTS ....................................................... 12

          1.   Mr. Crosby Is Not An Expert On Police Officer Supervision Or
               The Law ........................................................................................ 13

          2.   Mr. Crosby's Opinion Regarding Deliberate Indifference From
               A Lack Of Supervision And Training Is Unsupported By Facts
               ..................................................................................................... 14

     D.   THE COURT MUST PRECLUDE THE PROFFERED EXPERT TESTIMONY
          REGARDING DOG AND DOG ENCOUNTERS ................................................. 14

          1.   Dogs And Dog Behavior Do Not Require Expert Testimony .......... 14

          2.   Mr. Crosby Should Be Precluded, Because He Seeks To
               Replace The Jury, Not Aid It ........................................................ 15

i

3. Mr. Crosby's Assertions Of "Many Bad Shootings" Is Unsupported By Fact ..................................................................15

E. THE COURT MUST PRECLUDE THE PROFFERED EXPERT TESTIMONY REGARDING FIREARMS ........................................................15

1. Mr. Crosby Is Not An Expert On Firearms .....................................15

2. The Court Should Preclude Mr. Crosby From Testifying Regarding The Proper Use Of Firearms.......................................16

II. THE COURT MUST EXCLUDE THE PROFFERED EXPERT TESTIMONY OF BRIGID VILARDO LYONS.............................................16

A. MS. LYONS IS NOT QUALIFIED TO OPINE ON A PTSD DIAGNOSIS .........16

B. MS. LYONS HAS NOT DETERMINED THE CAUSATION OF THESE DISORDERS, AND MUST BE PROHIBITED FROM TESTIFYING ABOUT ORIGIN OR CAUSATION ..........................................................18

III. THE COURT MUST EXCLUDE THE PROFFERED EXPERT TESTIMONY OF ALLISON T. PRINCE. .....................................................19

A. MS. PRINCE IS NOT QUALIFIED TO OPINE ON A PTSD DIAGNOSIS ................

B. MS. PRINCE HAS NOT DETERMINED THE CAUSATION OF THESE DISORDERS, AND MUST BE PROHIBITED FROM TESTIFYING ABOUT ORIGIN OR CAUSATION......................................................

CONCLUSION.......................................................................................

## PRELIMINARY STATEMENT

Mr. Dempsey and his daughter have proposed that James Crosby, a man with education and experience in dog behavior, be recognized as an expert in this matter regarding dogs *and* the Fourth Amendment, supervision and discipline of law enforcement officers, and *Monell*/municipal liability. The Court, as the gatekeeper, should grant Defendants' motion and preclude Mr. Crosby from testifying in areas for which he lacks expertise and when he reaches conclusions unsupported by the facts.

## STATEMENT OF FACTS

The Dempseys propose that James Crosby provide evidence as an expert witness in this matter. He provided an expert report and was deposed in this matter and others. See Exhibit ("Exh.") A, *Dempsey* Expert Report; Exh. C, Crosby Deposition Transcript from the *Dempsey* and *Cox* cases ("Crosby DC Depo. Tr.").

Mr. Crosby believes himself to be an expert, because he has been accepted as an expert in local, state, and federal courts in "K-9 aggression, the behavior of domestic dogs, dog bites, dog bite investigations, dangerous dog investigations, […t]he investigation of fatal dog attacks on human beings, the investigation of dog bites on human beings[,…p]roper animal control policies, procedures and practices, [and ….p]olice procedures and practices insofar as they apply to encounters with animals and the use of force specifically regarding animals, usually domestic K-9s[.]" Exh. C, Crosby DC Depo. Tr. 19:12 - 20:8.

## LEGAL STANDARD

Federal Rule of Evidence 702 states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise *if the proponent demonstrates to the court that it is more likely than not* that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; *and*
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702 (emphases added).

The proponent must establish by a preponderance of the evidence that a proffered expert satisfies each prong, in order for the individual to be considered an expert. *Simmons v. Ferrigno*, No. 17-cv-6176, 2024 WL 1229285, at *11 (W.D.N.Y. Mar. 22, 2024). "For an expert's testimony to be admissible under this Rule, however, it must be directed to matters within the witness' scientific, technical, or specialized knowledge and not to lay matters which a jury is capable of understanding and deciding without the expert's help." *Med. Depot, Inc. v. Med Way US, Inc.*, No. 22-cv-0127, 2024 WL 1835374, at *2 (E.D.N.Y. Apr. 26, 2024), citing to *Andrews v. Metro N. Commuter R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989).

The December 2023 amendments to Federal Rule of Evidence 702 "clarify and emphasize" the court's role as a gatekeeper and that courts are required to "analyze the expert's data and methodology at the admissibility stage more critically than in

the past." *Boyer v. City of Simi Valley*, no. 19-cv-0560, 2024 WL 993316, at *1 (C.D. Cal. Feb. 13, 2024) (granting motion to preclude expert witness); see also *United States v. Pulliam*, No. 21-cr-00156, 2024 WL 1142004, at *1 (D. Conn. Mar. 15, 2024) (clarified court's gatekeeping function); see also *Johnson v. United States*, No. 21-cv-2851, 2024 WL 1246503, at *3-4 (E.D.N.Y. Jan. 16, 2024) (acknowledging 2023 Amendments).

To be clear, it is an "incorrect application of Rules 702 and 104(a)" to consider "the sufficiency of an expert's basis, and the application of the expert's methodology [as] questions of weight and not admissibility." Advisory Committee Notes, Rule 702, 2023 Amendments, quoted in *Boyer*, 2023 WL 993316, at *1.

Decisions from other district court judges are not binding on other trial judges, and judges need not reach identical conclusions on identical issues. *Dempsey v. City of Rochester*, No. 19-cv-06780, 2025 WL 1132847, at *3-4 (W.D.N.Y. Apr. 16, 2025). In other words, this Court may reach its own conclusion regarding Mr. Crosby as an expert witness, even though Judge Wolford permitted Mr. Crosby to offer expert opinion on some topics in a related case (*Gursslin v. City of Rochester et al*, No. 20-cv-6508, 2025 WL 26669 (W.D.N.Y. January 3, 3025)).

**ARGUMENT**

## I. THE COURT MUST PRECLUDE THE PROFFERED EXPERT TESTIMONY OF JAMES CROSBY.

### A. MR. CROSBY SHOULD NOT OPINE REGARDING THE FOURTH AMENDMENT, SEARCHES, AND SEIZURES.

The proposed expert James Crosby should be precluded as requested from testifying regarding the Fourth Amendment.

To be more specific, Defendants seek preclusion of all of Mr. Crosby's statements under the Fourth Amendment, including: (1) the presence (or lack thereof) of an emergency or exigent circumstances (Exh. A, pgs. 5, 18-19 [Opinion 1, 2, 7]; (2) actions that officers could have taken prior to searching and related hypotheticals (*id.* at pgs. 5, 18 - 19 [Opinion 3, 7]); (3) the reasonableness of Officer Algarin's search location (*id.* at pg. 5); (4) backtracking (*id.* at pg. 7); (5) (the adequacy of) City training regarding searches or "Fourth Amendment intrusions on the curtilage (*id.* at pg. 7, 17-18 [Opinion 1, 2]); (6) entries in the yard (*id.* at pg. 7, 18, 19 [Opinion 2, 3, 7]; (7) the lack of "justification for [Officer] Algarin to fire his sidearm" because there was no "credible and immediate threat of serious bodily injury or death" (Exh. A, pg. 19 [Opinion 5]); (8) Officer Algarin's "deadly force" was unreasonable (Exh. A, pg. 20 [Opinion 8, 9]); (9) the City was deliberately indifferent because the City did not respond to officers "shooting dogs when they do not pose an immediate threat of causing serious bodily harm or death" (Exh. A, pg. 22 [Opinion 17]); (10) that Mr. Dempsey was detained by officers (while the dog was bleeding) (*id.*, pg. 6);

(11) that Officers Nellist and Kelly[1] also backtracked, unlawfully searched, or unlawfully entered Ms. Gursslin's yard (Exh. A, pg. 7); and (12) "numerous examples of officers shooting dogs in situations where the dog did not objectively pose a threat of serious bodily injury or death to the officer" or "many bad shootings" (Exh. A, 10).

1.    **Mr. Crosby Is Not—And Does Not Purport To Be—An Expert On Searches, Seizures, And Related Fourth Amendment Issues.**

Mr. Crosby does not believe himself to be an expert on the Fourth Amendment, searches, warrants, or related issues. Exhibit C, Transcript of Mr. Crosby Deposition in *Dempsey* and *Cox* ("Crosby DC Depo. Tr.") 19:9 - 21:2. Mr. Crosby's averred statements in this regard should be enough to prohibit him from speaking to the Fourth Amendment issues of search, seizure, and force.[2]

For further support of his preclusion in this area, Mr. Crosby does not outline any qualifications that demonstrate an expertise in searches, seizures, or force. Exhibit A (Crosby Report), pgs. 1-3. In contrast, he describes *at length* his qualifications, experience, and education regarding dog behavior, dog aggression,

---

[1] Mr. Crosby referenced Defendants Kelly and Nellist from the *Gursslin* case, even though Judge Wolford entered summary judgment for Defendants on Plaintiff *Gursslin*'s unlawful search claim. *Gursslin v. City of Rochester*, No. 20-cv-06508, 2025 WL 26669, at *8 (W.D.N.Y. Jan. 3, 2025), *motion for relief from judgment denied,* No. 6:20-cv-06508, 2025 WL 1132854, at *8-9 (W.D.N.Y. Apr. 16, 2025).

[2] Mr. Crosby purports to have been accepted as an expert on police procedures […on] the use of force specifically regarding animals, usually domestic [canines]." Crosby DC Depo. Tr. 20:4-8. While this could be considered part of seizures, Defendants address this separately.

canine encounters, canine behavior, animal care, animal control, and dog incident investigation. Exhibit A (Crosby Report), pgs. 1-3, 31-37.

While Mr. Crosby states that he served as Police Officer from 1997 to 1999, he does not include searches or *property* seizures as a routine element of his job and does not otherwise suggest a command of Fourth Amendment principles. Exhibit A (Crosby Report), pg. 3. Mr. Crosby mentioned that during his law enforcement employment he investigated "complaints regarding use of force by his officers" and whether the force complied with department policy. Exh. A, pg. 3.[3] However, Mr. Crosby's experience, from two decades ago, with force applied to *people* does not make him an expert on whether the seizure of a *piece of personal property* was reasonable.

Moreover, Fourth Amendment case law has developed since the end of Mr. Crosby's law enforcement career in 1999. See e.g., *Kyllo v. United States*, 533 U.S. 27, 34 (2001) (thermal imaging as a search); *Florida v. Jardines*, 569 U.S. 1, 5-6 (2013) (drug-sniffing dog constitutes a search); *United States v. Jones*, 565 U.S. 400, 404-409 (2012) (GPS device is a search). Mr. Crosby, however, does not identify any education on Fourth Amendment, search, or seizure since his law enforcement career that ended more than two decades ago.

---

[3] "During my career, I have made many arrest and have had many occasions to make on-scene decisions as to what level of force would be necessary under the totality of the circumstances."

6

The Court must preclude Mr. Crosby from testifying as an expert about searches, seizures, and related Fourth-Amendment issues, because he does not purport to be, and indeed is not, an expert in Fourth Amendment issues.

> **2.    Mr. Crosby Cannot Aid The Jury In Accurately Understanding Fourth Amendment Issues, Because He Misunderstands Them Himself.**

The Court should prohibit Mr. Crosby from addressing Fourth Amendment searches and seizures, due to his misunderstanding of the applicable Fourth Amendment legal principles.

> a.    <u>Mr. Crosby misunderstands principles regarding searches.</u>

Mr. Crosby testified that he did not understand that unauthorized entry is distinct from an impermissible search. See e.g., Exhibit B, Transcript of Mr. Crosby's Deposition in *Gursslin* ("Crosby G Depo. Tr.") 16:7 - 17:10. He also frequently used the terms search and entry interchangeably, even though they are not equivalent. Crosby DC Depo. Tr. 139:17 - 141:12; *United States v. Jones*, 565 U.S. 400, 406-407 (2012) (holding that physical presence or trespass combined with information-gathering constitutes a search); *Gursslin v. City of Rochester*, No. 6:20-cv-06508, 2024 WL 4198154, at *5-7 (W.D.N.Y. Sept. 16, 2024) (dismissing unlawful search claim due to no allegation or proof of information-gathering or seeking with the entry).

Mr. Crosby also believes that a yard adjacent to a residence necessarily constitutes curtilage, and that, contrary to legal precedent, no other factors or considerations implicate that determination. Crosby DC Depo. Tr. 141:15-21, 142:3-9; Crosby G Depo. Tr. 12:8 - 13:9; 23:21 - 24:10; see also *id.* at 13:10 - 15:18; *United*

*States v. Dunn*, 480 U.S. 294, 300 (1987) (outlining four factors to consider whether an area constitutes curtilage). Because the Fourth Amendment protects only the home and curtilage, his misunderstanding of yards versus curtilage impacts and ultimately leads to erroneous conclusions about searches and when exigency is required.

Because Mr. Crosby misunderstands Fourth Amendment searches, his testimony would confuse and mislead the jury. The Court should, therefore, preclude any opinion from Mr. Crosby regarding searches, entries, and curtilage, including the presence (or lack thereof) of an emergency or exigent circumstances (Exh. A, pgs. 5, 18, 19 [Opinion 1, 2, 7]; actions that officers could have taken prior to searching and/or entering the yard (*id.* at pgs. 5, 18 – 19 [Opinion 3, 7]); the reasonableness of Officer Algarin's search location (*id.* at pg. 5); backtracking (*id.* at pg. 7); City training regarding searches or "Fourth Amendment intrusions on the curtilage" (*id.* at pg. 7, 17-18 [Opinion 1, 2]); and entries in the yard (*id.* at pg. 7, 18, 19 [Opinion 2, 3, 7]).

> b.    Mr. Crosby misunderstands principles regarding seizures.

Mr. Crosby also erroneously maintains that officers may only discharge their firearms at dogs when they or others are "threatened with death or severe injury." Crosby DC Depo. Tr. 56:3-10, 56:21 - 57:11. Officers, however, may permissibly defend themselves from *any level of* imminent threat to safety, not just *severe injury or death*. *Azurdia v. City of New York*, No. 18-cv-04189, 2019 WL 1406647, *8 (E.D.N.Y. March 28, 2019); *Carroll v. Cnty. of Monroe*, 712 F.3d 649, 651 (2d Cir.

8

2013)("[A]t least in some circumstances, it is reasonable for an officer to shoot a dog that he believes poses a threat to his safety or the safety of the community.")

Because Mr. Crosby's statements regarding the appropriateness of firearm discharges are based on an incorrect understanding of the law applicable to seizures of personal property, the Court should preclude him from testifying regarding the reasonableness of the seizure in this matter. To be more specific, Defendants seek a Court order prohibiting Mr. Crosby from saying that "there was no justification for [Officer] Algarin to fire his sidearm" because there was no "credible and immediate threat of serious bodily injury or death" (Exh. A, pg. 19 [Opinion 5]); Officer Algarin's "deadly force" was unreasonable (Exh. A, pg. 20 [Opinion 8, 9]); "numerous examples of officers shooting dogs in situations where the dog did not objectively pose a threat of serious bodily injury or death to the officer" or "many bad shootings" (Exh. A, 10); and the City was deliberately indifferent because the City did not respond to officers "shooting dogs when they do not pose an immediate threat of causing serious bodily harm or death" (Exh. A, pg. 22 [Opinion 17]).

### 3.    Mr. Crosby's Fourth Amendment Conclusions Are Not Based On Sufficient Facts Or Data.

Mr. Crosby determined that the Rochester Police Department ("RPD") fails to adequately trains its officers on exigency and curtilage (Opinion 1, pg. 18), even though he was not provided (and thus, did not review) any materials on RPD trainings on Fourth Amendment or curtilage. Crosby G Depo. Tr. 34:2-19, 35:7-15. He, therefore, lacks any factual basis for this opinion, and should be precluded from giving it.

9

**B.    MR. CROSBY IS NOT AN EXPERT IN POLICE PRACTICES.**

Mr. Crosby's education and experience in veterinary sciences, dangerous dogs, and dog behavior—but not with police practices and policies regarding canine encounters. He should not be admitted as an expert in the latter, despite being proffered as one.

Mr. Crosby's experience and education does not qualify him to address police practices. He obtained advanced degrees in veterinary medicine and veterinary forensics, and is a certified dog behaviorist. Exh. A, pg. 1, 34. He obtained his Ph.D. and Masters degrees in 2023 and 2016, respectively (Crosby DC Depo. Tr. 10:9-22), and first became a certified behavior consultant sometime between 2012 - 2015 (Crosby DC Depo. 12:22 – 13:4). That education did not inform his law enforcement career, because received this education well after law enforcement career ended in 1999 (Crosby DC Depo. Tr. 13:25 – 14:9). Moreover, he did not list dog encounters among his responsibilities or routine experiences as a law enforcement officer, so his purported expertise did not originate from work experience. Exh. A, pg. 3, 34.

Moreover, his various certifications focus on dog behavior and animal control—not police practices. Exh. A, pgs. 35-36. His membership in professional organizations connotes a focus on veterinary forensics, animal behavior, and animal control—and notably his current memberships exist only in (veterinary) forensics. Exh. A, pgs. 34-35. Unsurprisingly, he represents that his "primary wo[r]k has been focused on human fatalities from dog bite related cases" and is a "recognized expert in canine behavior dog bites and attacks, and shelter management and operations" (Exh. A, pg.

31). He has "work[ed] with aggressive and dangerous dogs for over ten years" (Exh. A, pg. 1) and therefore, is a repeat speaker on dog forensics, related criminal investigations, and animal behavior (Exh. A, pgs. 41-43). He does not describe any education, witness testimony, or work experience regarding police practices regarding canine encounters.

While "police shooting" cases—as he describes them—are among the cases he has been accepted as an expert throughout 2019 - 2024, they are the clear minority. However, he declines to identify the subject matter of his testimony in those "dog shooting" cases, so the Court does not know whether he was an expert on *police practices* relative to canines or only identifying an aggressive dog. While Mr. Crosby has testified in "dangerous dog" or "dog bite" cases—again, as he describes them— those are distinct from his proposed testimony here about *police practices*. Exh. A, pgs. 37-41.

*Azurdia* is one of the "dog shooting" cases in which Mr. Crosby provided an expert report. *Azurdia et al v. City of New York* (18-cv-4189). Not only did the case settle after summary judgment and he did not testify at trial (Exh. E, Crosby Report in *Azurdia*; Exh. D, *Azurdia* Docket, at ECF 89-90), his report pertained to the appropriateness of the officers' response to the dog and not law enforcement accepted practices and law enforcement training. Exh. E, Crosby's *Azurdia* Report, pgs. 5-7.

Mr. Crosby is not an expert on police policies and practices regarding dogs simply because he gives some training to law enforcement agencies. First, he identifies only one U.S. and one foreign law enforcement agency that he has trained.

Exh. A, pg. 1-2 (London Metropolitan Police and Miami-Dade County Police Department). He also describes "training for police departments *and animal control agencies* regarding dangerous dogs, dog aggression, use of force in canine encounters, and the investigation of dog-related incidents." Exh. A, pg. 1. It is telling that he groups multiple topics across different agencies; he does not give training targeted to law enforcement agencies. Given this experience and knowledge, Mr. Crosby might testify about dog training or investigating homicides by dogs, but not on police practices regarding canines.

As such, the Court should prohibit Mr. Crosby testifying about the content of "good and accepted police practices and professional standards of care," what actions those practices and standards require, and when conduct violated them. It is not more likely than not that Mr. Crosby has expertise in police practices as they are applied to canines.

More specifically, the Court should exclude testimony that "good and accepted police practices and professional standards of care" (1) required the RPD and Mr. DiDomenico to provide the free dog encounter training from COPS [U.S. Department of Justice's Office Community Oriented Policing Services] (Exh. A, pg. 11-13, 21); (2) were violated when RPD declined to provide that training (*id.* at pg. 11, 12, 19, 20); (3) required the "RPD to take notice of the effectiveness of the COPS training in Buffalo" (*id.* at pg. 12-13, 21); (4) required RPD to be aware of dog encounter policies from and trends across other departments and implement similar policies and training (*id.* at pg. 13, 16); (*id.* at pg. 16); (5) were violated when RPD trains officers

12

not to use a Taser on animals (*id.* at pg. 17); (6) are not met through Mr. DiDomenico's training (*id.* at pg. 22); (7) were violated by Officer Algarin during the search (*id.* at pg. 17-18;  and (8) were violated by Officer Algarin during the dog encounter (*id.* at pg. 19).

### C.    THE COURT MUST EXCLUDE MR. CROSBY'S OPINION ON DISCIPLINE, SUPERVISION, AND LEGAL CONCEPTS.

The Court must refuse to certify Mr. Crosby as an expert on legal concepts or police officer discipline. As such, the Court should prevent Mr. Crosby from opining that: (1) the City's abrogated its "responsibility to provide safe and effective services to citizens" (Exh. A, pg. 21); (2) the City failed to adequately supervise and discipline its officers regarding safe interactions with dogs or bad shootings (*id.* at pg. 22 [Opinions 16, 17]); (3) lack of discipline "evidences a deliberate indifference of the Rochester Police Department" (*id.* at pg. 10); (4) not providing free training "exhibit[s] deliberate indifference" (*id.* at pg. 20); and (5) the City's lack of discipline evidences deliberate indifference" (*id.* at pg. 22 [Opinion 17]).

### 1.    Mr. Crosby Is Not An Expert On Police Officer Supervision Or The Law.

Mr. Crosby does not consider himself to be an expert on police officer discipline or supervision, municipal liability, or the law. Crosby DC Depo. Tr. 19:9 - 21:2. Mr. Crosby, furthermore, is not a lawyer and has no prior legal training in this area. Exh. A, pgs. 1-3; Crosby DC Depo. 91:8 - 92:7. Plaintiffs' counsel is the sole source of his understanding of the legal principles underlying municipal liability. Crosby DC Depo. Tr. 91:8 - 92:7. Mr. Crosby testified that *the Dempseys' counsel* educated him on

municipal liability issues, so that he could opine on these issues. Crosby DC Depo.
Tr. 25:8-24, 27:3-23. Indeed, Mr. Crosby consulted with the Dempseys' counsel on
many occasions before, during, and after writing his "expert" reports to ensure he
understood and described the legal concepts surrounding municipal liability
correctly. Crosby DC Depo. Tr. 25:25 - 26:18, 28:15 - 29:3. Indeed, the Dempseys'
counsel reviewed multiple drafts of Mr. Crosby's report prior to finalization. Crosby
DC Depo. Tr. 29:4 - 31:11.

Mr. Crosby has also never been a policymaker of high-level administrator of a
law enforcement agency. Exh. A, pg. 3. While he has provided front-line supervision,
overseen training, and recommended discipline, he has never imposed discipline or
taken final actions constituting supervision or discipline of police officers. Exh. A, pg.
3. Mr. Crosby should not be permitted to opine on the adequacy of the department's
supervision and management, as he has no experience in dictating these types of
decisions.

**2.    Mr. Crosby's Opinion Regarding Deliberate Indifference
       From A Lack Of Supervision And Training Is Unsupported
       By Facts.**

Mr. Crosby states there are "many," even numerous, examples of officers
inappropriately shooting dogs that were not disciplined or retrained afterwards. Exh.
A, pg. 10. Yet he identifies only one: an incident involving Officer Pinckney in August
2019—which notably occurred *after* the incident at issue in this case. Exh. A, pg. 10;

Exh. F, Crosby *Gursslin* Report, pg. 3; Exh. G, Crosby *Cox* Report, pg. 3.[4] His assertion that many "bad" dog shootings exist (and that they support deliberate indifference), therefore, lacks of factual support and he should be precluded from testifying in this area.

### D.   THE COURT MUST PRECLUDE THE PROFFERED EXPERT TESTIMONY REGARDING DOG AND DOG ENCOUNTERS.

Mr. Crosby has experience in dog behavior and animal control, but his expertise is not needed in this case and cannot be relied on.

### 1.   Dogs And Dog Behavior Do Not Require Expert Testimony.

Assuming, *arguendo*, that he is an expert on dogs and dog behavior, these are not topics on which the jury needs expert testimony. District courts "should not admit testimony that is directed solely to lay matters which a jury is capable of understanding and deciding without the expert's help." *United States v. Mulder*, 273 F.3d 91, 101 (2d Cir. 2001) (internal quotations and citations omitted). Given the prevalence of dogs both in Rochester (as the Plaintiffs/Dempseys allege) and nationwide, jurors can (be relied on to) determine whether a dog is presenting as playful or aggressive, and navigate these issues for themselves. *Med. Depot, Inc.*, 2024 WL 1835374, at *2.

---

[4] Mr. Crosby does not mention Officer Pinckney in his expert reports in *Anniszkiewicz v. City of Rochester* (20-cv-6629), *McGill v. City of Rochester* (22-cv-6523), or *Preston v. City of Rochester* (22-cv-6525). Jones Decl. ¶ 6.

### 2. Mr. Crosby's Assertions Of "Many Bad Shootings" Are Unsupported By Fact.

Mr. Crosby states that there are "many bad shootings" of dogs and "numerous examples of officers shooting dogs in situations where the dog did not objectively pose a threat of serious bodily injury or death to the officer." Exh. A, 10. As explained above, this opinion is unsupported by fact and should be excluded.

### E. THE COURT MUST PRECLUDE MR. CROSBY FROM PROVIDING EXPERT TESTIMONY REGARDING FIREARMS.

### 1. Mr. Crosby Is Not An Expert On Firearms.

Mr. Crosby does not consider himself to be an expert on firearms. Crosby DC Depo. Tr. 19:9 - 21:2. He does not currently train individuals in firearms. Exh. A, pg. 1. During his law enforcement career, which ended more than twenty years ago (Exh. A pg. 34), he did not train individuals on how to use a firearm (Exh. A, pgs. 3, 34). Mr. Crosby has not attended any certiifcations or trainings on how to appropriately or safely discharge a firearm. Exh. A, pgs. 35 - 36. He has not been accepted as an expert on firearms use. Exh. A, pgs. 37 - 41. As such, Mr. Crosby does not possess the expertise to opine on proper use of a firearm.

### 2. Mr. Crosby Should Be Precluded, Because He Seeks To Replace The Jury, Not Aid It.

It is for the jury to decide whether the officers' firearm discharges were reasonable from the perspective of a reasonable officer. *Graham v. Connor*, 490 U.S. 386, 396-397 (1989). The Court should prevent Mr. Crosby from inserting himself in the role of the jury by precluding his expert testimony on the reasonableness of the firearm discharge.

16

## II. THE COURT MUST EXCLUDE THE PROPOSED EXPERT TESTIMONY OF BRIGID VILARDO LYONS.

The Court should prohibit Ms. Lyons from testifying as an expert in this case regarding the diagnosis or causation of Post Traumatic Stress Disorder ("PTSD") to the jury, because she lacks training or experience in this area.

### A. MS. LYONS IS NOT QUALIFIED TO OPINE ON A PTSD DIAGNOSIS.

The proponent must establish by a preponderance of the evidence that a proposed expert is qualified by her "knowledge, skill, experience, training, or education" to opine as an expert in a given area (FED. R. CIV. P. 702), so an expert "must have *[some]* relevant experience and qualifications" (*Mobius v. Quest Diagnostics Clinical Lab'ys, Inc.*, 687 F. Supp. 3d 357, 372 (W.D.N.Y. 2023)).

Ms. Lyons is not qualified to opine about PTSD, because she has absolutely no training or professional experience with PTSD. Her curriculum vitae is void of *any* mention of PTSD or trauma-based disorders. Exh. H, Lyons Report, pgs. 16-23, 1 (describing it as a curriculum vitae). While she has a Ph.D., she obtained it in 2013 (Lyons Report, pg. 16) and does not note any coursework or internships in which she learned about trauma or related disorders (Exh. H, Lyons Report, pgs. 16-17). Her Ph.D. was in School Psychology, which does not relate to disorders or ailments related to trauma. Exh. I, APA website (School Psychology). Ms. Lyons also lacks any training or experience in forensic psychology, the subspecialty focused on psychological expertise to aid the legal system and conclusions within it. Exh. J, APA Website (Forensic Psychology). Ms. Lyons identified no expert testimony in her report,

17

indicating that no other court has considered her qualified to offer expert opinion. Exh. H, Lyons Report, pg. 1.

Even before the Rule Amendments that confirmed the court's gatekeeping role (*Boyer*, 2024 WL 993316, at *1; *Pulliam*, 2024 WL 1142004, at *1; *Johnson*, 2024 WL 1246503, at *3-4), courts insisted that proposed expert witnesses possess expertise and experience in the area of their proposed testimony. See e.g., *I.M. v. United States*, 362 F. Supp. 3d 161, 192 (S.D.N.Y. 2019)(stating that individual need not be a specialist, but must have some relevant experience and qualifications). The Western District of New York permitted an engineer who operated electrical repair businesses and was a certified fire investigator to testify regarding the origin of a fire in an electrical appliance. *American Mutual Insurance Company v. Electrolux Home Products, Inc.,* 440 F. Supp.3d 211, 215-216 (W.D.N.Y 2020). The Western District of New York has also permitted an experienced mechanical engineer with hands-on experience with an autohauler to opine on autohauler design. *Dreyer v. Ryder Auto. Carrier Grp., Inc.*, 367 F. Supp. 2d 413, 417 (W.D.N.Y. 2005)(prohibiting expert testimony due to lack of factual support for conclusions). The Southern District of New York permitted a psychologist with a "broad background knowledge in mental health" to testify about PTSD, because he had prior professional experience with literally hundreds of patients with PTSD. *Tardif v. City of New York*, 344 F. Supp. 3d 579, 597 - 598 (S.D.N.Y. 2018). A neonatal expert from the Southern District of New York had practiced neonatal medicine for half a century, managed thousands of neonatal cases, and formerly functioned as the chief of neonatal medicine. *I.M. v.*

*United States*, 362 F. Supp. 3d 161, 192 (S.D.N.Y. 2019)(stating that individual need not be a specialist, but must have some relevant experience and qualifications).

Unlike other accepted experts, Ms. Lyons has no indicia of expertise (or even familiarity with) PTSD in her background that would qualify her to diagnosis and testify about PTSD. Exh. H, Lyons Report, pgs. 16-23. The Court should preclude Ms. Lyons from testifying about any purported PTSD diagnosis of L.D., because Ms. Lyons lacks the expertise to competently testify about PTSD.

**B.    MS. LYONS HAS NOT DETERMINED THE CAUSATION OF THESE DISORDERS, AND MUST BE PROHIBITED FROM TESTIFYING ABOUT ORIGIN OR CAUSATION.**

If, *arguendo*, the Court permits Ms. Lyons to discuss L.D.'s purported diagnoses, the Court should prohibit Ms. Lyons from addressing or implying any causation between the dog shooting and L.D.'s current ailments.

First, Ms. Lyons admitted that it is impossible for her/Ms. Lyons to determine causation when she wrote that L.D.'s multiple traumas "accumulate" and "cannot be dismantled." Lyons Report, pg. 11, 12. She further acknowledges other prior traumas in L.D.'s life: "Being present when her dog was shot was not the first nor the last trauma that L[.] experienced." Lyons Report, pg. 12. Indeed, Ms. Lyons is aware of multiple traumas experienced by L.D., which all accumulated: L.D. experienced bullying throughout the entire 2018-2019 school year (LD Depo. 91:24-93:5; Lyons Report, pg. 1 (reviewed LD Depo.)); witnessed her mother's drug use; and knew her father was assaulted (Lyons Report, pg. 5).

Ms. Lyons comment that the "trauma of her dog being shot appears to have changed the trajectory of her challenges and associated impairments, as she moved in with her mother as a result and was exposed to more frequent and intense traumas after this event" should not be equated with causation. Lyons Report, pg. 12. Indeed, Ms. Lyons first stated "frequent arguments and yelling… [and] tension" existed at home and that "*[d]ue to the increase in conflict* L[.] then went to live with her mother during the summer of 2020[.]" Lyons Report, pg. 3, italics added. Inasmuch as Ms. Lyons declined to squarely confront causation in her report, the Court must preclude her from opining on causation or correlation between the dog shooting and L.D.'s mental disorders. FED. R. CIV. P. 26(a)(2).

## III.   THE COURT MUST EXCLUDE THE PROFERRED EXPERT TESTIMONY OF ALLISON T. PRINCE, BECAUSE SHE IS NOT QUALIFIED.

Ms. Prince is also not qualified to diagnose and opine on PTSD.

Her curriculum vitae contains no mention of PTSD, whether in training or work experience. Prince Report, pgs. 22 – 27. She has experience in battered women's syndrome, sex offender treatment, and violence assessments (Prince Report, pg. 22-25), but those are not the issues in this case. Ms. Prince has provided court testimony, but only once in a civil matter, which was in Family Court. Prince Report, pg. 28. While she purports to provide "civil and criminal forensic psychological evaluations" in her business, she has not been accepted as an expert in any civil, non-family-court proceedings in the last four years. Prince Report, pgs. 22, 28.

Courts require relevant training or experience of a purported expert, and Ms. Prince has none relevant to trauma-based disorders or PTSD specifically. The Court should prohibit her testimony on whether Mr. Dempsey has PTSD and whether it was caused by the incident in this matter.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion in its entirety and preclude Mr. Crosby, Ms. Lyons, and Ms. Prince from being permitted to testify or provide expert testimony on any subject in this matter.

Date: December 8, 2025  PATRICK BEATH
         CORPORATION COUNSEL

         By: *Peachie L Jones*
         Peachie L. Jones, Esq., Of Counsel
         30 Church Street, Room 400A
         Rochester, NY  14614  |  (585) 428-7992
         Peachie.Jones@CityofRochester.gov
         *Attorneys for Defendants*

To the following via ECF:

Elliot Dolby Shields, ROTH AND ROTH LLP
*Counsel for Plaintiff*
192 Lexington Avenue, Suite 802
New York, NY 10016
(212) 425-1020  |  eshields@rothandrothlaw.com

22