UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **CHARLES DEMPSEY**<br>　　　　　　　Plaintiff,<br>v.<br>**THE CITY OF ROCHESTER,** *et al.*,<br>　　　　　　　Defendants. | **DECISION AND ORDER REGARDING DEFENDANTS' MOTION IN LIMINE CONCERNING PLAINTIFFS' EXPERT WITNESSES**<br><br>**19-CV-6780-MJP** |

PEDERSEN, M.J. Defendants have filed a motion in limine, ECF No. 141, seeking an Order precluding Plaintiffs' expert witnesses Dr. James Crosby, Dr. Brigid Vilardo Lyons, and Dr. Allison T. Prince. Plaintiffs responded with a memorandum of law opposing the motion, ECF No. 160. For the reasons stated below, the Court grants in part and denies in part Defendants' motion.

I.

*A. Federal Rule of Evidence 702*

The admissibility of expert testimony is governed principally by Rule 702 of the Federal Rules of Evidence, which provides in relevant part that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify" to his or her opinion if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

1

Fed. R. Evid. 702. Under Rule 702, the district court is "the ultimate gatekeeper" of expert testimony. *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) (internal quotation marks omitted).

The threshold question under Rule 702 is whether the witness is qualified to provide expert testimony on the subject matter at hand. *Nimely v. City of New York*, 414 F.3d 381, 396 n.11 (2d Cir. 2005). To make this determination, a court must "ascertain whether the proffered expert has the educational background or training in a relevant field." *Cary Oil Co., Inc. v. MG Ref. & Mktg., Inc.*, 2003 WL 1878246, at *2 (S.D.N.Y. Apr. 11, 2003) (citation omitted.) A witness may be qualified based on any one or more of the qualities listed in Rule 702—knowledge, skill, experience, training, or education. *Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 457, 458 (S.D.N.Y. 2007) (citation omitted). The court then "compare[s] the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony." *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004).

If the expert is qualified, the court must ascertain whether the testimony is reliable. *Nimely*, 414 F.3d at 396. "[R]eliability within the meaning of Rule 702 requires a sufficiently rigorous analytical connection between" the expert's methodology and conclusions. *Id.* The analysis must be reliable "at every step." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002). "[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached," the opinion testimony must be excluded. *Id.* at 266.

Finally, if an expert is qualified and his or her testimony is reliable, the court must determine whether the testimony "will 'assist the trier of fact.'" *Nimely*, 414 F.3d at 397 (quoting Fed. R. Evid. 702). In order to assist the trier of fact, the testimony must be relevant, and it may not be directed solely to lay matters which a jury is capable of understanding and deciding without the expert's help. *United States v. Mulder*, 273 F.3d 91, 104 (2d Cir. 2001).

If an expert's testimony falls within "the range where experts might reasonably differ," the duty of determining the weight and sufficiency of the evidence on which the expert relied lies with the jury, rather than the trial court. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 153, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 596, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (citation omitted). "[T]he proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements under Rule 702 are satisfied." United States v. Williams, 506 F.3d 151, 160 (2d Cir. 2007) (citing Daubert, 509 U.S. at 593 n. 10, 113 S.Ct. 2786).

The inquiry under Rule 702 is "flexible." Clerveaux v. E. Ramapo Cent. Sch. Dist., 984 F.3d 213, 233 n.8 (2d Cir. 2021) (citation omitted). When experts must be considered who will not opine based on "the hard sciences," the inquiry changes. In re Terrorist Attacks on Sept. 11, 2001, No. 03-md-1570 (GBD) (SN), 2023 WL 3116763, at *2 (S.D.N.Y. Apr. 27, 2023). For experts such as "security officials, social scientists, accountants or historians," courts look to "other factors to analyze an expert's reliability, such as: whether the expert will testify about ... independent research ... or whether the opinion was developed expressly for purposes of testifying; whether she has unjustifiably extrapolated from an accepted premise to an unfounded conclusion; whether she has adequately accounted for obvious alternative explanations; whether she is as careful as [s]he would be in h[er] regular professional work; and whether her field of expertise ... is known to reach reliable results for the type of opinion offered." Id. at *2-3 (quoting Deutsch v. Novartis Pharms. Corp., 768 F. Supp. 2d 420, 426 (E.D.N.Y. 2011)).

*Federal Rule of Evidence 403*

Still, testimony that is admissible under Rule 702 may be excluded under Federal Rule of Evidence 403 if the court finds that "the probative value of the evidence is substantially outweighed by a danger of ... unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Expert testimony is particularly susceptible to these dangers, "given to the unique weight such evidence may have in a jury's deliberations." *Nimely*, 414 F.3d at 397. "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 ... exercises more control over experts than lay witnesses." *Daubert*, 509 U.S. at 595, 113 S.Ct. 2786 (quotations omitted).

## II. DR. JAMES CROSBY

*Fourth Amendment and Exigent Circumstances*

Defendants oppose all of Dr. Crosby's opinions regarding the Fourth Amendment. As it relates to this case, Dr. Crosby opined that the Rochester Police Department ("RPD") "did not appropriately train its officers on the criteria for rendering a determination as to when an exigency existed that would justify the entry into a private residential yard…." (Crosby Expert Report at 17–18, ECF No. 141-2.) Dr. Crosby's other opinions regarding Defendant Algarin's entry into Plaintiffs' enclosed yard follow this opinion.

In his curriculum vitae, Dr. Crosby lists considerable training, writings, and testimony concerning animal behavior, and lists his experience as a police officer, writing:

> **Jacksonville Sheriff's Office, Police Officer/Sergeant/Lieutenant, Jacksonville, FL 1977-1999**
> 1977-1987, Police Officer, Patrol Division
> 1987-1993, Police Sergeant, Patrol Division
> 1993-1999, Police Lieutenant and Midnight Watch Commander, Zone 4, Patrol Division
> Conducted daily police patrol duties; investigated violations of local ordinances and State Statutes; responded to emergency calls; supervised

4

> Patrol Squad (as Sergeant), served as Patrol Watch Commander (Lieutenant), including performing employee evaluations and training, investigating complaints on employees, counseling employees, overseeing day-to-day operations and coordinating and scheduling training, administering discipline and serving on disciplinary boards. Ensured employee compliance with Departmental Regulations and guided employee action within the Mission Statement of the Jacksonville Sheriffs Office; responded to and directed critical incident responses. Extensive experience and training in securing and controlling crime scenes, collection of evidence, evidence submission procedures, and evaluating crime scenes for investigative purposes.

(Crosby Expert Report at 34.) Nothing in his CV or the experience listed above pertains to any training or experience in application of the Fourth Amendment as it pertains to this case.

Plaintiffs argue that Chief Judge Wolford in the *Gursslin* case found Dr. Crosby qualified "to opine on a police officer's use of his firearm." (Pl.s' Mem. of Law at 7, ECF No. 160.) In his report in *Gursslin*, Dr. Crosby opined,

> 5) Prior to the incident, Nellist and Kelly conducted a scout where they entered Ms. Gursslin's back yard. They failed to notice any signs that a dog resided at the property, including the large amount of dog feces that was discarded in the back/west side of the yard. They also failed to scout or observe remotely the house in any way to see if Ms. Gursslin or any of the home's occupants walked a dog; and they did not check City records to check if a registered dog resided at the property. In short, they did nothing in the planning phase to learn whether Nina or any other dog resided at the property, despite having the time and opportunity to do so. Nellist and Kelly's failure to conduct a proper scout or do anything whatsoever to learn whether a dog resided at the property was unreasonable under the circumstances and constituted a violation of good and accepted police practices and professional standards of care.

(Crosby Expert Report in *Gursslin* at 19, ECF No. 160-4.) Chief Judge Wolford wrote in her decision that Dr. Crosby's fifth opinion in the *Gursslin* expert report concerned "planning for the possible presence of a dog in connection with the execution of a search warrant, which is a topic in which Crosby does have expertise."

> The Second Circuit Court of Appeals "requir[es] exclusion of expert testimony that expresses a legal conclusion." *Id*. This is so because while "an expert might be uniquely qualified by experience to assist the trier of fact, he is not qualified to compete with the judge in the function of instructing the jury." *Id.* at 364; *see also, Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 512 (2d Cir. 1977) (finding that "[t]he basis of expert capacity, according to Wigmore (§ 555), may '(sic) be summed up in the term 'experience.' But experience is hardly a qualification for construing a document for its legal effect when there is a knowledgeable gentleman in a robe whose exclusive province is to instruct the jury on the law. The danger is that the jury may

5

think the 'expert' in the particular branch of the law knows more than the judge–surely an inadmissible inference in our system of law.").

*Howard v. Town of Dewitt*, No. 5:12-CV-870, 2014 WL 12591690, at *3 (N.D.N.Y. Dec. 15, 2014). New York Pattern Jury Instruction 3:60.1 reads as follows:

> The Fourth Amendment protects the rights of persons to be secure in their homes against unreasonable searches by government officials. Ordinarily, a search without a warrant is unreasonable and therefore unlawful. However, a warrant is not necessary if emergency circumstances justified conducting the search without first obtaining a warrant. In order to decide whether CD violated AB's Fourth Amendment rights, you must decide whether emergency circumstances justified CD in conducting the warrantless search.
>
> Emergency circumstances exist when a police officer has a reasonable basis to believe that the police officer or someone else is in imminent danger, or a reasonable basis to believe that there is imminent danger of destruction of evidence of a crime, or a reasonable basis to believe that a suspect would flee from the home before a warrant could be obtained.
>
> AB has the burden to prove by a preponderance of the evidence that CD's search of AB's home without a warrant was unreasonable. AB claims that *[here state AB's argument that there were no exigent circumstances.]* CD claims that (*[here state CD's argument relating to exigent circumstances, such as:—]* CD had a reasonable basis to believe that CD was in imminent danger or CD had a reasonable basis to believe that evidence of a crime would be destroyed or concealed).
>
> If you find that a reasonable person would not believe that entry without a warrant was necessary to prevent (harm to CD or anyone else, the destruction of evidence, the escape of a suspect), you will conclude that the warrantless search was unreasonable. If you find that a reasonable person would believe that entry without a warrant was necessary to prevent (harm to CD or someone else, the destruction of evidence, the escape of a suspect), you will conclude that the warrantless search was reasonable and find for CD.

N.Y. Pattern Jury Instr.--Civil 3:60. An edited version of this charge, edited to fit the admitted proof, is sufficient to inform the jury concerning exigent circumstances and allow them to determine whether Officer Algarin's entry into Plaintiffs' fenced-in yard was done within the confines of the Fourth Amendment exigent circumstances jurisprudence. There is no need for expert testimony on this point. Absent any circumstances that arise during the trial, the Court will preclude Dr. Dempsy from testifying concerning the Fourth Amendment issues at trial.

*Police Supervision & Training*

Defendants oppose any testimony from Dr. Crosby regarding "the content of 'good and accepted police practices and professional standards of care,' what actions those practices and standards require, and when conduct violated them." (Def.s' Mem. of Law at 12, ECF No. 141-14.)

I find that Dr. Crosby is qualified to testify about training as it pertains to recognizing characteristics of dogs encountered on the job, and different methods of protecting oneself from aggressive dogs and how to avoid being confronted with dogs with pre-planning. Dr. Crosby may not offer testimony on the ultimate issue for the jury, notwithstanding Federal Rule of Evidence 704, when his opinion would essentially be the equivalent of a directed verdict instruction from the bench. Here the ultimate issue is whether the RPD adequately trained its officers concerning dog encounters. Dr. Crosby's qualifications clearly support his ability to testify as to what he considers adequate training in that respect. He may testify about what training RPD did provide and he may give his opinion as to whether that training was sufficient to assist the officers who encounter dogs, or whether it was not, and if so, why not. He may testify as to the facts of whether discipline was imposed on RPD officers who shot dogs, but not whether the RPD's decision to either impose, or not impose discipline was appropriate. He will not be permitted to testify as to legal standards, an area reserved to the trial judge.

In short, Dr. Crosby's training, education, and experience qualify him to testify to the jury about dogs, their aggressive signals, and the means by which law enforcement officers can either avoid encounters with them or prevent harm through non-lethal means. Further, he may testify about what he believes is adequate training in dog encounter events and explain why he believes training that RPD conducted was or was not sufficient to prepare officers to handle dog encounters.

Outside of the dynamics of the actual trial and the proof as it comes in, the Court cannot manage the minutiae of each possible question and answer but provides this

decision as a guideline to assist the litigants in understanding what are generally permissible areas of testimony for Dr. Crosby.

### III. DR. BRIGID VILARDO LYONS

Defendants argue that Dr. Lyons is not qualified to testify concerning post-traumatic stress disorder ("PTSD") "because she has absolutely no training or professional experience with PTSD." (Def.s' Mem. of Law at 17, ECF No. 141-14.) If allowed to testify, Defendants further argue that she should not be permitted to testify as to the purported cause of Leona's PTSD due to Dr. Lyons's conclusion that Leona suffered multiple traumas which all accumulated. (*Id.* at 19.)

Plaintiffs counter that Dr. Lyons is far more qualified than the expert in *Tardif v. City of New York*, 344 F. Supp. 3d 579, 597–98 (S.D.N.Y. 2018), who nonetheless was permitted to testify about PTSD. Dr. Lyons is a licensed psychologist whose primary practice appears to be with children. At the time of the shooting at issue in this case, Leona was young.

Dr. Lyons's curriculum vitae mentions in several areas her expertise with ADHD, autism spectrum disorders, oppositional defiant disorder, depression, and anxiety. (Dr. Lyons Expert Report at 17, ECF No. 141-9.) Her report quotes from admission notes by Jennifer Bruno, LFMT of Rochester Regional Health. Dr. Lyons cites Leona's lengthy mental treatment history as well as a history of suicide gestures or attempts. It appears that Ms. Bruno diagnosed Leona with PTSD. (*Id.* at 5.)

Dr. Lyons is qualified to testify as a psychologist and has a basis for her diagnosis of PTSD based on testing she conducted and using the Diagnostic and Statistical Manual V. The law does not require that she be an expert on any particular type of mental health issue in order to employ standardized testing to come to her diagnostic conclusion. Through cross-examination, Defendants may test the weight the jury ought to afford her testimony. The Court sees no need to exclude her expert testimony.

## IV. DR. ALLISON T. PRINCE

Defendants oppose permitting Dr. Prince to testify about PTSD arguing that her qualifications are insufficient. "Dr. Prince is a licensed clinical psychologist with over fifteen years of diagnostic and forensic experience." (Pl.s' Mem. of Law at 4, ECF No. 158.) Defendants argue that Dr. Prince has no experience with PTSD and "has not been accepted as an expert in any civil, non-family-court proceedings in the last four years." (Def.s' Mem. of Law at 20, ECF No 141-14.) Most, but not all, of her writings involve battered woman syndrome. She has testified in over two dozen criminal cases in the New York courts and, as pointed out by Defendants, in one Family Court case. (Dr. Prince Expert Report at 22, ECF No. 158-2.)

As is the case with Dr. Lyons, Dr. Prince is qualified by education and experience to testify about psychological issues and qualified to administer diagnostic testing, including the Morel Emotional Numbing Test for Posttraumatic Stress Disorder (MENT). Her method of reaching a PTSD diagnosis is sound and she may testify at trial. Defendants may examine the weight the jury should afford her testimony through cross-examination.

**SO ORDERED.**

Dated: December 30, 2025
Rochester, NY

_____
MARK W. PEDERSEN
UNITED STATES MAGISTRATE JUDGE