**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHARLES DEMPSEY and LEONA DEMPSEY,<br><br>                                                                 Plaintiffs,<br><br>                               -against-<br><br>THE CITY OF ROCHESTER, a municipal entity, JAVIER ALGARIN, "JOHN DOE" RPD OFFICER RESPONSIBLE FOR TRAINING JAVIER ALGARIN,<br><br>                                                                 Defendants. | CASE NO.: 19-cv-6780 (MJP)<br><br>**DECLARATION OF ELLIOT DOLBY-SHIELDS, ESQ. IN SUPPORT OF PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND COSTS** |

ELLIOT DOLBY-SHIELDS, ESQ., an attorney duly admitted to practice law before the Courts of the State of New York, hereby declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

### I. INTRODUCTION AND QUALIFICATIONS

1.    I am a Senior Associate at the law firm Roth & Roth, LLP, located at 192 Lexington Avenue, Suite 802, New York, New York 10016. I served as lead trial counsel for Plaintiffs Charles Dempsey and Leona Dempsey throughout the entirety of this seven-year litigation, from the initial pre-suit investigation through the thirteen-day jury trial before Magistrate Judge Mark W. Pedersen, which concluded with a verdict on January 30, 2026. I submit this declaration in support of Plaintiffs' application pursuant to 42 U.S.C. § 1988 for an award of reasonable attorneys' fees and costs.

2.    I was admitted to the New York State Bar in 2013. I have practiced civil rights litigation since approximately 2012, initially at Jacobs & Hazan LLP and then at the Law Office of Joel B. Rudin, P.C., and since 2016, at Roth & Roth, LLP. My practice is focused on federal

1

civil rights litigation under 42 U.S.C. § 1983, wrongful conviction litigation, and complex personal injury actions involving governmental entities.

3.      Since joining Roth & Roth, LLP, I have filed dozens of federal civil rights cases in the Western District of New York alone and have litigated dozens of additional matters in the Eastern District of New York, the Southern District of New York, Northern District of New York and New York State courts. I have tried multiple cases to verdict, as set forth more fully below.

4.      I serve as a Board Member of the New York County Lawyers' Association ("NYCLA"), one of the oldest and most prestigious bar associations in the nation. I have served as Chair of NYCLA's Civil Rights and Liberties Committee for over ten years. In 2025, I was awarded the NYCLA Eppler Prize for a report I drafted for NYCLA's Supreme Court Committee calling for comprehensive reforms to the United States Supreme Court. I also serve as a board member of For The Struggle, Inc. ("FTS"), a 501(c)(3) nonprofit organization dedicated to fighting systemic issues of economic and social injustice in historically Black communities in Charlotte, North Carolina.

## II. BACKGROUND OF THE LITIGATION

5.      This case arises from the warrantless entry by Rochester Police Department ("RPD") Officer Javier Algarin onto the private property of Plaintiffs Charles and Leona Dempsey, and Officer Algarin's subsequent shooting and killing of the Dempseys' family dog, Tesla, in violation of the Fourth Amendment to the United States Constitution.

6.      On January 30, 2026, after a thirteen-day jury trial, the jury returned a verdict in Plaintiffs' favor on the central claims in this action. Specifically, the jury found: (a) Officer Algarin conducted an unlawful search of the curtilage to Plaintiffs' home in violation of the Fourth

2

Amendment; (b) the City of Rochester maintained an unconstitutional policy or custom with respect to warrantless searches (first *Monell* claim); (c) the City of Rochester failed to adequately train its officers regarding warrantless searches of the curtilage to single-family homes (second *Monell* claim); (d) Officer Algarin committed an unconstitutional seizure by shooting and killing the family dog, Tesla, in violation of the Fourth Amendment; (e) the City of Rochester maintained an unconstitutional policy or custom with respect to police encounters with dogs (third *Monell* claim); (f) the City of Rochester failed to adequately train its officers regarding encounters with dogs (fourth *Monell* claim); and (g) Officer Algarin committed trespass under New York state law. The jury awarded Plaintiffs a total of $125,000 in compensatory damages.

7.     To my knowledge, prevailing on all four *Monell* claims at trial—on two independent theories of municipal liability (policy or custom and failure to train) across two distinct sets of constitutional violations (warrantless searches and dog encounters)—is unprecedented in the Western District of New York, and extraordinarily rare in any federal court.

### III. EXTRAORDINARY SKILL DEMONSTRATED IN MONELL LITIGATION

8.     The result achieved in this case reflects the extraordinary skill required to pursue and prevail on *Monell* claims against a municipality. *Monell* claims are among the most difficult to establish in all of federal civil rights law. They require a plaintiff to demonstrate that the constitutional violation was caused by an official municipal policy, custom, or failure to train that amounts to deliberate indifference. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989). Courts routinely grant summary judgment dismissing *Monell* claims, and the few that survive to trial rarely result in plaintiff verdicts.

9.    The significance of the skill required to prevail on these claims has been recognized by this Court. In *Casaccia v. City of Rochester*, No. 17-CV-6323-FPG-MJP, 2021 WL 4206246 (W.D.N.Y. Sept. 15, 2021), this Court made the following findings regarding my qualifications and the rarity of the skill I bring to *Monell* litigation:

> Mr. Shields has filed 23 cases in the Court dealing with civil rights. The undersigned has witnessed his performance in at least two other cases and notes the expertise he projects in doggedly pursuing civil rights claims under *Monell*. In the undersigned's over twenty years with the Western District of New York, no other counsel practicing has so vigorously pursued the discovery necessary to mount a potentially successful *Monell* claim.

*Casaccia*, No. 17-CV-6323-FPG-MJP, Decision and Order at 7 (W.D.N.Y. Sept. 15, 2021) (Pedersen, M.J.). A true and correct copy of Judge Pedersen's Decision and Order in *Casaccia* is annexed hereto as **Exhibit "A."**

10.    In *Casaccia*, this Court was evaluating the reasonableness of my hourly rate in the context of a fee application for a discovery sanctions award. This Court found that my retention as out-of-district counsel was reasonable specifically *because* of the specialized skill I bring to *Monell* litigation. In the present case, we did not merely pursue *Monell* claims vigorously—we *won* four *Monell* claims at trial. This result demonstrates the extraordinary skill that this Court recognized, and it vindicates the very litigation approach that he described as unmatched in his twenty-year tenure in the Western District.

## IV. COORDINATION OF MONELL DISCOVERY ACROSS SIX RELATED CASES

11.    The *Monell* discovery in this case was particularly extensive, hard-fought, and essential to the ultimate verdict. This discovery was further complicated by the fact that it was coordinated jointly with five other cases against the City of Rochester involving similar patterns of unconstitutional conduct: *Anniszkiewicz v. City of Rochester*, No. 20-cv-6629 (FPG)(MWP); *Barnes v. City of Rochester*, No. 22-cv-6524; *Cox v. City of Rochester*, No. 22-cv-6207

(FPG)(MJP); *Gursslin v. City of Rochester*, No. 20-cv-6508 (EAW)(MJP); and *McGill v. City of Rochester*, No. 22-cv-6523.

12.    Coordinating discovery across six cases required me to manage overlapping schedules, reconcile differing discovery needs, and ensure that each deposition elicited testimony relevant not only to the individual case but to the broader *Monell* claims. I identified, subpoenaed, and deposed numerous RPD officers regarding their encounters with dogs and their training (or lack thereof) on the use of force against animals and warrantless entries—structuring each deposition to obtain testimony relevant both to the individual officer's conduct and to the systemic patterns of inadequate training and unconstitutional policy underlying the *Monell* claims across all six cases.

13.    I conducted the Rule 30(b)(6) deposition of the City of Rochester regarding its policies, customs, and training programs; reviewed hundreds of documents produced by the City, including internal affairs files, personnel records, training materials, and incident reports for dozens of other dog-shooting incidents; filed multiple motions regarding the City's deficient discovery responses; and prepared a comprehensive *Monell* summary chart documenting the pattern of constitutional violations across numerous incidents, which was admitted into evidence at trial.

### V. REASONABLENESS OF THE HOURLY RATES REQUESTED

14.    I request an hourly rate of $700 for my services as lead trial counsel in this case. David Roth, the senior partner and owner of Roth & Roth, LLP, requests a rate of $1,125 per hour. Paralegal, Zoya Charania, requests a rate of $250 per hour. Associate, Ben Wittwer, requests a rate of $550 per hour.

**Judge Pedersen's Prior Approval of My Rate**

15. In *Casaccia*, Judge Pedersen approved my discounted hourly rate of $475 for time incurred in 2019–2020, finding both my retention as out-of-district counsel and my rate to be reasonable. *Casaccia*, Decision and Order at 8. The rate requested here—$700 per hour for time incurred through a thirteen-day trial in January 2026—reflects a reasonable increase from the $475 rate approved in 2021, consistent with my additional five years of experience, my proven track record of trial victories, and prevailing market rates for attorneys of my experience and qualifications.

**Justice Bluth's 2024 Finding That $675 Is Reasonable**

16. In 2024, Justice Arlene P. Bluth of the New York State Supreme Court, New York County, found that $675 per hour is a reasonable rate for my legal services. In *Roth & Roth, LLP v. Long Island Railroad and Metropolitan Transportation Authority*, Index No. 158366/2022 (Sup. Ct. N.Y. Cnty. Sept. 25, 2024), Justice Bluth specifically found that "$675 an hour for Mr. Shields who has been admitted since 2013, more than a decade, is also within reason." A true and correct copy of Justice Bluth's decision is annexed hereto as **Exhibit "B**." In that same decision, Justice Bluth approved a rate of $1,000 per hour for David Roth, finding it "reasonable for an attorney with his experience and expertise in New York City." The requested rate of $700—a modest increase of $25 over the 2024 rate—is entirely reasonable in light of inflation, my additional experience, and the extraordinary results I have achieved since that determination.

**The Fitzpatrick Matrix Supports the Requested Rate**

17. The Fitzpatrick Matrix, developed and maintained by the Civil Division of the United States Attorney's Office for the District of Columbia, provides reliable, data-driven evidence of prevailing market rates for attorneys in complex federal litigation. Under the current

Fitzpatrick Matrix, an attorney with my approximately 13 years of experience (admitted 2013) commands a rate of approximately $711 for billing year 2024. The requested rate of $700 is therefore at or slightly below the Fitzpatrick Matrix rate. A true and correct copy of the Fitzpatrick Matrix is annexed hereto as **Exhibit "C."**

**Civil Rights Attorneys Must Be Compensated at Rates Comparable to Corporate Attorneys**

18.     The rates sought here are substantially below rates recently approved in this Circuit for corporate commercial litigation. In *Xeriant, Inc. v. CURO Aerospace Corp.*, No. 23-cv-09200 (LAK) (S.D.N.Y. Jan. 22, 2026), Judge Kaplan awarded fees to Gibson, Dunn & Crutcher LLP at rates of $1,650 per hour for partners and $750–$1,000 per hour for associates in a case that the Court itself characterized as "not complex." True and Correct copies of the Memorandum of Law for costs and fees in the Xeriant case is annexed hereto as **Exhibit "D"**, and the fee order is annexed hereto as **Exhibit "E"**. My requested rate of $700 per hour is less than half the partner rate and below even the mid-level associate rate approved by Judge Kaplan.

19.     Civil rights litigation is at least as demanding as, if not more demanding than, corporate commercial litigation. It requires mastery of constitutional law, extensive discovery against institutional defendants, the development of pattern-and-practice evidence, expert witness coordination, and the skill to present complex systemic evidence to a lay jury. The societal importance of this work—vindicating constitutional rights and compelling reform of unconstitutional government practices—is at least as great as, if not greater than, enforcing private contractual obligations. Civil rights attorneys should not be compensated at a lower rate than their corporate counterparts for work that is equally or more complex and that further serves the broader public interest. *See City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986) ("Congress enacted §

1988 specifically because it found that the private market for legal services failed to provide many victims of civil rights violations with effective access to the judicial process.").

20.     Robert Rickner, Esq., a Principal at Rickner Moskovitz LLP in New York City and my co-chair on the NYCLA Civil Rights and Liberties Committee, is submitting a separate declaration attesting to my skill, the reasonableness of the hourly rates requested, and the importance of compensating civil rights litigators at rates comparable to those paid to corporate attorneys. Mr. Rickner has nearly twenty years of litigation experience, including twelve years focused on civil rights cases, and has litigated approximately twenty trials to verdict, including a $5.3 million wrongful conviction verdict and a $4.5 million excessive force verdict. He has represented more than 400 clients in civil rights cases in state and federal courts across New York, and has been named a Super Lawyer in the area of Civil Rights from 2018 through 2025. Mr. Rickner began his career at Quinn Emanuel Urquhart & Sullivan, LLP and Schiff Hardin LLP before dedicating his practice to civil rights work. He attests that winning four Monell claims at trial is a remarkable achievement, that the Monell verdict provides current and future litigants a powerful issue preclusion argument against the City of Rochester, and that $700 per hour is a reasonable rate to fully compensate counsel for the complexity and public significance of this work. *See* Declaration of Robert Rickner, Esq.

## VI. RECENT TRIAL RECORD DEMONSTRATING EXCEPTIONAL SKILL

21.     My qualifications and the reasonableness of the requested rate are further demonstrated by my recent trial record:

  a.  *The Da Silva Verdict.* Immediately before the *Dempsey* trial, I served as co-lead trial counsel alongside David Roth in *Harger Da Silva v. New York City Transit*

*Authority, Metropolitan Transportation Authority, and Raqia Shabazz*, No. 17-CV-4550 (FB)(VMS) (E.D.N.Y.), which resulted in an $81.7 million verdict on November 20, 2025—one of the largest personal injury verdicts in the country in a double-amputation case. The jury found the Transit Authority 99.99% at fault.

b. *The Johnson Verdict.* Immediately after the *Dempsey* trial, the very next week, I tried *Johnson v. City of Rochester*, No. 21-cv-6683 (EAW)(CDH), which commenced on Monday, February 2, 2026, and concluded with a unanimous verdict in Plaintiff's favor on every single claim—false arrest, malicious prosecution, and denial of the due process right to a fair trial—awarding $375,000 in compensatory damages. To my knowledge, winning two consecutive federal civil rights jury trials is unprecedented in the Western District of New York.

c. *The Miller Wrongful Conviction Verdict.* In *Miller v. State of New York*, Claim No. 135854 (Ct. Cl.), I served as lead trial counsel in a wrongful conviction case, with Donald M. Thompson, Esq. as co-counsel. After a bench trial before Judge J. Scott Odorisi, the Court found by clear and convincing evidence that Mr. Miller did not commit the crime for which he was convicted and awarded $3,048,000 in damages. See **Exhibit H**, *Miller v. State of New York*, Claim No. 135854, Decision and Order at 11, 16 (Ct. Cl. Oct. 1, 2024) (Odorisi, J.); *See* Declaration of Donald M. Thompson ¶¶ 24–26.

## VII. REASONABLENESS OF THE HOURS EXPENDED

22. Over the course of this seven-year litigation, the total hours expended by each timekeeper are as follows:

| Attorney/Paralegal | Hours | Rate | Lodestar |
|---|---|---|---|
| Elliot Dolby-Shields | 1,420.9 | $700.00 | $933,660.00 |
| David Roth | 60.1 | $1,125.00 | $68,512.50 |
| Zoya Charania | 290 | $250.00 | $72,500.00 |
| Ben Wittwer | 3.3 | $550.00 | $1,815.00 |
| *Fee Application Preparation* | 21.3 | [various] | $12,435.00 |
| **TOTAL** | **1,783.7** | | **$1,076,487.50** |

23.     My contemporaneous billing records are annexed hereto as **Exhibit "F."** Each time entry was recorded contemporaneously with the work performed. The billing records reflect the full scope of the work undertaken over seven years, including pre-suit investigation, FOIL litigation, federal complaint drafting, multiple rounds of dispositive motion practice, extensive fact and *Monell* discovery, expert retention and preparation, pretrial motions and trial preparation, and a thirteen-day jury trial.

24.     All of the 1,420.9 hours I expended on this litigation were reasonable and necessary to prosecute this complex federal civil rights action from inception through trial to a jury verdict. This case involved seven years of active litigation, two rounds of dispositive motion practice, extensive fact discovery including multiple depositions, *Monell* discovery coordinated across six related cases, retention and preparation of three expert witnesses, opposition to a motion to bifurcate trial in four cases, extensive pretrial motions practice including ten motions in limine, and a thirteen-day jury trial at which I served as sole trial counsel for Plaintiffs.

25.     The hours expended were particularly reasonable in light of the complexity of the *Monell* claims. Proving municipal liability on two independent theories (policy or custom and failure to train) across two sets of constitutional violations (warrantless searches and dog encounters) required extensive pattern-and-practice discovery, including identifying and deposing numerous officers involved in other incidents, reviewing internal affairs files, analyzing training

materials, and constructing a comprehensive evidentiary framework demonstrating the City's deliberate indifference. This *Monell* work—which consumed hundreds of hours—was indispensable to the historic result.

26. The reasonableness of the hours is further supported by the fact that Defendants' counsel engaged in a pattern of delay and obstruction throughout this litigation, requiring additional motions to compel, pre-conference letters, and court interventions that would have been unnecessary had Defendants complied with their discovery obligations in a timely manner. A prevailing plaintiff should not bear the cost of a defendant's litigation strategy designed to increase the plaintiff's burden. *See Williamsburg Fair Hous. Comm. v. N.Y.C. Hous. Auth.*, 493 F. Supp. 1225, 1245 (S.D.N.Y. 1980).

## VIII. LITIGATION EXPENSES

27. Our firm incurred a total of $70,703.58 in litigation expenses in prosecuting this action. These expenses included court filing fees ($610.00), service of process costs ($1,129.20), court reporter and videographer fees ($13,235.17), expert witness fees ($32,960.39), medical records retrieval costs ($1,938.91), travel expenses for attorney travel between New York City and Rochester for depositions and trial ($10,614.76), copying and printing costs ($9,950.06), mediation fees ($150.00), and legal research materials ($115.09). A detailed schedule of litigation expenses is annexed hereto as **Exhibit "G**."

28. Each of these expenses was reasonably and necessarily incurred in the prosecution of this seven-year civil rights action through a thirteen-day jury trial. The largest category of expense—expert witness fees at $32,960.39—reflects the retention of three expert witnesses (a canine behavior expert, and two psychologists) who were essential to proving liability and

damages. The travel expenses of $10,614.76 reflect the cost of traveling between New York City and Rochester for depositions, court conferences, and the multi-week trial.

## IX. FEES FOR PREPARATION OF FEE APPLICATION

29.     In addition to the fees incurred in litigating this action, Plaintiffs are also seeking fees for the time reasonably expended in preparing this fee application. Preparation of the fee application required compiling and reviewing seven years of contemporaneous billing records, organizing and summarizing litigation expenses, drafting the supporting memorandum of law, preparing this declaration and accompanying exhibits, and coordinating the preparation and submission of supporting declarations from four additional declarants. In total, we have expended 21.3 hours in the preparation of this fee application, and the total hours and lodestar figures set forth herein will be updated to reflect this additional time once the fee application materials are finalized.

## X. SUPPORTING DECLARATIONS

30.     The reasonableness of the hours expended, the hourly rates requested, and the results achieved are further attested to by the following declarations, which are submitted simultaneously with this fee application:

   a.  **Declaration of Charles Dempsey**: Mr. Dempsey, the Plaintiff, attests to his inability to find local counsel willing to take his case, his referral to Roth & Roth, LLP through Donald Thompson, his agreement with the litigation strategy to pursue *Monell* claims against the City, and his support for this fee application.

   b.  **Declaration of Donald M. Thompson, Esq.**: Mr. Thompson, the managing partner of Easton Thompson Kasperek Shiffrin LLP in Rochester, attests to the lack of local

capacity to litigate complex *Monell* cases, his referral of Mr. Dempsey to Roth & Roth, LLP, his firsthand observations of my trial skills in *Miller v. State of New York*, and his opinion that the rates requested are reasonable and consistent with prevailing Manhattan market rates. *See* Declaration of Donald M. Thompson, Esq. ¶¶ 3–33.

c. **Declaration of David A. Roth, Esq.**: Mr. Roth, the senior partner and owner of Roth & Roth, LLP, attests to the firm's strategic decision to pursue *Monell* claims, the reasonableness of the hours expended and rates requested, the firm's substantial financial investment in this litigation on a contingency basis, and his review of the litigation expenses. *See* Declaration of David A. Roth, Esq. ¶¶ 1–22.

d. **Declaration of Robert Rickner, Esq.**: Mr. Rickner is a Principal at Rickner Moskovitz LLP in New York City and my co-chair on the NYCLA Civil Rights and Liberties Committee. Mr. Rickner has nearly twenty years of litigation experience, including twelve years focused on civil rights cases, and has litigated approximately twenty trials to verdict—including a $5.3 million wrongful conviction verdict and a $4.5 million excessive force verdict. He has represented more than 400 clients in civil rights cases and was named a Super Lawyer in the area of Civil Rights from 2018 through 2025. Mr. Rickner began his career at Quinn Emanuel Urquhart & Sullivan, LLP and Schiff Hardin LLP. In his declaration, Mr. Rickner attests that winning four *Monell* claims at trial is "a remarkable achievement," that the *Monell* verdict gives current and future litigants a powerful issue preclusion argument against the City, and that $700 per hour is a reasonable

rate given the complexity of *Monell* litigation and the public benefit of the result.

*See* Declaration of Robert Rickner, Esq. ¶¶ 1–15.

## XI. LIST OF EXHIBITS

31.    The following exhibits are annexed to this declaration:

**Exhibit "A"**: Decision and Order, *Casaccia v. City of Rochester*, No. 17-CV-6323-FPG-MJP (W.D.N.Y. Sept. 15, 2021) (Pedersen, M.J.)

**Exhibit "B"**: Decision, *Roth & Roth, LLP v. Long Island Railroad and Metropolitan Transportation Authority*, Index No. 158366/2022 (Sup. Ct. N.Y. Cnty. Sept. 25, 2024) (Bluth, J.)

**Exhibit "C"**: The Fitzpatrick Matrix—Hourly Rates for Legal Fees for Complex Federal Litigation in the District of Columbia

**Exhibit "D"**: Memorandum of Law in Support of Application for Costs and Fees, *Xeriant, Inc. v. CURO Aerospace Corp.*, No. 23-cv-09200 (LAK) (S.D.N.Y.)

**Exhibit "E"**: Fee Order, *Xeriant, Inc. v. CURO Aerospace Corp.*, No. 23-cv-09200 (LAK) (S.D.N.Y. Jan. 22, 2026)

**Exhibit "F"**: Contemporaneous Billing Records (Schedule of Hours)

**Exhibit "G"**: Schedule of Litigation Expenses

**Exhibit "H"**: *Miller v. State of New York*, Claim No. 135854, Decision and Order at 11, 16 (Ct. Cl. Oct. 1, 2024) (Odorisi, J.)

## CONCLUSION

32.    For the foregoing reasons, I respectfully request that the Court grant Plaintiffs' application for attorneys' fees and costs pursuant to 42 U.S.C. § 1988 in the total amount of $1,147,191.08, consisting of $1,076,487.50 in attorneys' fees (inclusive of fees for preparation of this fee application) and $70,703.58 in costs and expenses.

33.    The time expended and expenses incurred were reasonable and necessary to properly prosecute this complex federal civil rights action through trial to a verdict. The hourly rates are reasonable and consistent with prevailing market rates, as confirmed by multiple judicial

determinations and the Fitzpatrick Matrix. The results achieved—including prevailing on all four *Monell* claims at trial—represent an extraordinary and unprecedented degree of success that warrants a full and unreduced fee award.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
February 17, 2026

Respectfully submitted,

*Elliot Shields*

_____
Elliot Dolby-Shields, Esq.
Roth & Roth, LLP
192 Lexington Avenue, Suite 802
New York, New York 10016
(212) 425-1020