UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHARLES DEMPSEY and LEONA DEMPSEY,

                                  Plaintiff,

        -against-

THE CITY OF ROCHESTER, a municipal entity,          Case no. 19-cv-6780-MJP
JAVIER ALGARIN, ADAM GORMAN, RPD
OFFICER RESPONSIBLE FOR TRAINING
JAVIER ALGARIN,

                                  Defendants.


**<u>REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND COSTS</u>**


Elliot Dolby-Shields
Roth & Roth, LLP
192 Lexington Avenue, Suite 802
New York, New York 10016


1

**INTRODUCTION**

The City failed to rebut Plaintiffs' showing of entitlement to out-of-district rates, and does not challenge Mr. Shields requested Manhattan Rate of $700 per hour or Mr. Roth's requested rate of $1,125 per hour. The City's opposition concedes that, "Defendants do not have the time or energy to point out all the examples in the forty-plus-page chart." Opp. at 21. This concession is a waiver to challenge specific billing entries. Having challenged only several categories, the City provides no basis for its request that the Court apply an across-the-board 20% reduction to the hours—an approach that courts reject when detailed contemporaneous records are available. The City's remaining arguments rest on mischaracterizations of the record, legally irrelevant policy arguments, and the false premise that Plaintiffs are seeking compensation for work already paid. For these reasons, the Court should award $1,089,920.00 in attorneys' fees—comprising the original lodestar as corrected for one paralegal-rate entry, plus $13,762.50 for this reply—and $37,743.19 in costs[1]—and Plaintiffs further request leave to submit quarterly supplemental fee petitions for fees incurred opposing the City's post-trial motions and any appeal.

**ARGUMENT**

**I.      OUT-OF-DISTRICT RATES ARE WARRANTED**

The City does not challenge Mr. Shields requested Manhattan rate of $700 per hour or Mr. Roth's Manhattan rate of $1,125 per hour and thus has conceded that they are reasonable. Instead, the City only argues that the Court should apply Western District rates of $350 per hour for both attorneys (Opp. at 4–16), which fails for three independent reasons: (1) the presumption of local rates has been rebutted; (2) the *Johnson* factors support higher rates; and (3) the City's policy arguments are legally irrelevant.

---

[1] Upon further review of the caselaw, Plaintiffs concede that expert fees are not recoverable under 42 U.S.C. § 1988.

## A.      The Presumption of Local Rates Is Rebutted

The City's opposition establishes that Plaintiffs met the standard under *Simmons v. NYC Transit Authority*, 575 F.3d 170, 175 (2d Cir. 2009). The City lists several Rochester and Buffalo firms and attorneys who "represent themselves as civil rights attorney[s]." Opp. at 8–10. But the City does not—and cannot—identify a single one of these attorneys who has successfully litigated a *Monell* claim to a jury verdict. Notably, the City lists Matthew Albert as having litigated *Strong v. City of Rochester* (17-cv-6183, W.D.N.Y.), another dog shooting case. *Strong* did not involve a *Monell* claim, see *Strong v. Perrone*, No. 17-CV-6183-FPG, 2020 WL 1445877 (W.D.N.Y. Mar. 25, 2020), and settled for $10,000. Shields Reply Decl. ¶ 29, Ex. 14.

Listing "civil rights" on a law firm website is not the same as possessing the specialized skill required to try a *Monell* case to verdict against a municipality. The results here prove the distinction. *See Restivo v. Hessemann*, 846 F.3d 547, 590–91 (2d Cir. 2017) (affirming out-of-district rates where counsel had specialized civil rights expertise and achieved excellent result in "particularly complicated case"); *Parks v. Saltsman*, 2024 WL 4440994, at *3 (W.D.N.Y. Oct. 8, 2024) (awarding out-of-district rates where firm's "work product and results would have substantially exceeded that of any local firm"); *Casaccia v. City of Rochester*, 2021 WL 4189707, at *4 (W.D.N.Y. 2021) (out-of-district counsel had expertise in "vigorously pursu[ing] the discovery necessary to mount a potentially successful *Monell* claim").

The City characterizes Charles Dempsey's search for counsel as "minimal." Opp. at 8. But Mr. Dempsey contacted the attorneys recommended to him, including David Spoto and Donald Thompson, and was either turned away or referred elsewhere. Charles Decl. ¶¶ 3–4. The City does

3

not identify a single Western District attorney who was willing and able to take this case on contingency and try it through a 13-day federal jury trial.[2]

Moreover, two courts previously awarded your undersigned out of district rates. *Casaccia v. City of Rochester*, 2021 WL 4189707, at *4 (W.D.N.Y. 2021); Shields Reply Decl. ¶ 3; *Forsyth v. City of Rochester*, No. E2018007067, at 4–5 (N.Y. Sup. Ct., Monroe Cnty. Sept. 16, 2022).

### B.    The *Johnson* Factors Support Higher Rates

***Results***: The City claims that "for the Dempseys, this was not an excellent result" because they purportedly "expected to receive $3 - $7 Million dollars—and they *cried* after the verdict." Opp. at 13–14. This characterization is both baseless and offensive. The City offers no foundation for the "$3–7 million" figure—it appears nowhere in the record. The verdict was more than three times the City's own Rule 68 offer of $40,002 Shields Reply Decl. ¶ 25, Ex. 9. And the City completely ignores the historic *Monell* verdict.

***Skill***: The City attacks trial counsel's presentation as "tedious." Opp. at 12. The jury found for Plaintiffs on virtually every claim, including four separate *Monell* findings—a historically rare result. The Court observed counsel's performance throughout a 13-day trial and is well-positioned to evaluate skill. *See Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 718 (5th Cir. 1974) ("[T]he trial judge should closely observe the attorney's work product, his preparation, and his general ability before the court.").

***Novelty and difficulty***: "Complex cases of long duration litigated by well-experienced counsel warrant a court to consider a comparatively high hourly rate." *Central de La Comunidad Hispana de Locust Valley v. Town of Oyster Bay,* 2019 WL 2870721, at *6 (E.D.N.Y. June 18,

---

[2] Indeed, in *Walker v. County of Erie*, No. 1:22-cv-520 (W.D.N.Y.)—a *Monell* wrongful-conviction case tried to a $28 million verdict here—two New York City firms led the litigation while local firm Hoover & Durland served only as "local counsel" in a "limited capacity." Ex. 13 to Shields Decl., Rudin Decl. ¶¶ 32, 35, *Walker*, Dkt. 387-7; *see also Boyd v. City of Buffalo*, 2025 WL 262152, at *1 (W.D.N.Y. Jan. 22, 2025).

2019); *see also Knox v. John Varavatos Enters., Inc.,* 520 F. Supp. 3d 331, 342 (S.D.N.Y. 2021) ("[W]e put great emphasis on the fact that the performance of the plaintiffs' attorneys in the courtroom and the quality of the papers they filed with the Court was extraordinary . . . ."); *Homeaway.com, Inc. v. City of New York,* 523 F. Supp. 3d 573, 596 (S.D.N.Y. 2021) (approving "higher billing rates" where a matter involved "difficult constitutional questions" because those types of cases require "impressive credentials and deep relevant experience" of counsel).

The City suggests the case's difficulty is overstated because the parties explored settlement. Opp. at 10–11. This is a non sequitur. Settlement discussions do not diminish the difficulty of proving *Monell* liability at trial. As courts in this District have recognized, "a *Monell* claim can arguably complicate even a straightforward excessive-force case." *McGaffigan v. City of Rochester*, 2023 WL 415098, at *4 (W.D.N.Y. Jan. 26, 2023); *Casaccia*, 2021 WL 4189707, at *4 ("vigorous" discovery is "necessary to mount a potentially successful *Monell* claim"). The City's intransigence in negotiations—including its rejection of the reform proposal after the parties obtained a 120-day discovery stay to negotiate (Shields Reply Decl. ¶¶ 26–27, Exs. 10, 11, 12, 15)—and its paltry Rule 68 offer (Shields Reply Decl. ¶ 25, Ex. 9) is what forced this case to trial.

***Fee arrangement***: The City argues the contingency arrangement "disincentivize[d] settlement." Opp. at 13. The Supreme Court has rejected the argument that a contingency agreement constrains statutory fees. *Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989); *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The City's scorched-earth strategy only increased the fees it now contests. *Catanzano v. Doar*, 378 F. Supp. 2d 309, 322–23 (W.D.N.Y. 2005).

### C.      The City's Policy Arguments Are Legally Irrelevant

The City argues that the fee award is "unfair" to Rochester taxpayers and would consume a significant portion of the Law Department's budget. Opp. at 16–17. These arguments are irrelevant. See *City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986).

**II.    THE CITY WAIVED ITS CHALLENGE TO SPECIFIC BILLING ENTRIES**

The City asks this Court to reduce Plaintiffs' hours by 20% across the board. Opp. at 19–20. But the City expressly concedes that it did not conduct an entry-by-entry review, Opp. at 21, and challenges only several categories of entries. The City does not identify any improper billing practices that would justify an across the board 20% reduction in fees, and their challenges to specific entries are mostly meritless.

A party opposing a fee application bears the burden of identifying specific entries it considers unreasonable. *See Kerr v. John Thomas Fin.*, No. 14 Civ. 9168 (KBF)(HBP), 2017 WL 435826, at *10 (S.D.N.Y. Jan. 31, 2017) (holding that "it is up to defendant—not the court—to identify alleged deficiencies in plaintiff's billing records" and declining to search the record for vague entries where defendant failed to cite specific time records). Where, as here, the billing records are detailed and contemporaneous, courts should not apply across-the-board percentage reductions as a substitute for the entry-by-entry analysis that the opposing party declined to perform. *See HomeAway.com, Inc. v. City of New York*, 523 F. Supp. 3d 573, 594 (S.D.N.Y. 2021) ("isolated exceptions d[id] not supply a basis for reducing the fee request"); *Raja v. Burns*, 43 F.4th 80, 89–90 (2d Cir. 2022) (vacating across-the-board reduction; "[i]dentifying specific deficient entries . . . does not on its own reasonably lead to a substantial across-the-board cut"). Courts reserve percentage reductions for cases presenting concrete, pervasive billing deficiencies—none of which exist here. In *Feltzin v. Union Mall LLC*, 393 F. Supp. 3d 204, 215–16 (E.D.N.Y. 2019), the court applied a 30% reduction only after finding that counsel billed in round numbers and large blocks of time, multiple attorneys billed for the same tasks, partners billed for work appropriately performed by associates or paralegals, and entries were "vague, duplicative, or excessive" throughout the record. *See also Rand-Whitney Containerboard Ltd. P'ship v. Town of Montville*, No. 3:96CV413(HBF), 2006 WL 2839236, at *17–20 (D. Conn. Sept. 5, 2006) (imposing only a

6

3% vagueness reduction—rather than the requested 10%—after a "painstaking review" revealed that most entries were "adequately detailed," and separately applying a 5% overstaffing reduction only upon identifying specific instances of "multiple attorneys working on a single issue"). The City has identified nothing comparable: no block billing, no vague entries, no duplicative billing, and no evidence of overstaffing. The City's failure to engage with the billing records constitutes waiver. *See Kerr*, 2017 WL 435826, at \*10 ("I shall not go through all of plaintiff's time records to find vague entries; that is a task defendant should have undertaken.").

The few categories the City does identify—the summary chart, video compilation, reform proposal, and opening statement—are addressed in turn.

### A.     <u>The Summary Chart Was a Necessary Trial Preparation Tool</u>

The City argues that the summary chart of deposition testimony was "facially inadmissible" under Rule 1006 and its preparation therefore unreasonable. Opp. at 20–21. The chart was a trial preparation and demonstrative tool organizing deposition testimony for the jury— routine practice in complex litigation. Defendants relied on the chart to submit their objections, and the Court itself relied on the chart to rule on objections to deposition testimony.

### B.     <u>The Reform Proposal Was Central to the Case</u>

The City dismisses the 35 hours spent on the reform proposal as unreasonable. Opp. at 22. This argument is remarkable given that the City's complete rejection of the reform proposal is one of the primary reasons this case proceeded to trial. The comprehensive reform proposal would have resolved the constitutional violations in four dog-shooting cases. Shields Reply Decl.¶ 26, Ex. 10. The parties jointly requested and obtained a 120-day stay of discovery to negotiate a settlement based on the reform proposal. Shields Reply Decl. ¶ 26, Ex. 11. The reform proposal covered the instant action as well as G*ursslin v. City of Rochester*, No. 20-cv-6508; *Anniszkiewicz v. City of Rochester*, No. 20-cv-6629; and *Cox v. City of Rochester*, No. 22-cv-6207. The proposal

detailed specific training, policy, and accountability measures to prevent constitutional violations. The City's counterproposal offered just $75,000 to settle all three companion cases combined while rejecting the substantive reforms. Shields Reply Decl.¶ 27, Ex. 12. The City declared an impasse on September 21, 2022, and discovery resumed. Shields Reply Decl. ¶ 27, Ex. 15.

### C.       Trial Preparation Time Was Reasonable

Defendants' challenge to the deposition video compilation is meritless. Defendants misstate the video's length as 7.5 minutes; it was 24.5 minutes. The compilation was a live project requiring repeated revisions as the Court ruled on clip admissibility throughout trial, and the excerpts served as impeachment material during examination. Plaintiffs shortened the final compilation because Defendants failed to provide timely objections to more than half of the deposition designations. Plaintiffs request fees for this work at the paralegal rate—the rate courts have deemed appropriate. *See Froemming v. Carlson*, 2023 WL 6215371, at *3–4 (E.D. Wis. 2023); *Agfa Corp. v. Creo Prods., Inc.*, 2004 WL 2387288, at *4 (D. Mass. 2004).

The 15 hours preparing an opening statement for a 13-day federal civil rights trial with *Monell* claims is reasonable. The statement exceeded 45 minutes, requiring substantial drafting, revision, and practice. The City offers no metric to suggest otherwise.

### D.       The Challenged Billing Entries Reflect Attorney Work, Not Paralegal Tasks

The City's characterization of 28.5 hours as "paralegal work" is without merit. With one exception, every challenged entry reflects work requiring attorney judgment: selecting and organizing exhibits for court filing, verifying exhibit numbering against brief citations, ensuring ECF compliance, confirming filed documents were docketed correctly, reconciling litigation expenses under § 1988, and finalizing the fee application filing package including the memorandum of law, declarations, and exhibits. In a four-attorney firm handling a complex *Monell* case through a 13-day trial, the lead attorney necessarily performs this work because he is the only

8

person with sufficient case knowledge to do it correctly. Courts do not penalize small-firms for performing tasks larger firms might delegate. The sole entry properly reduced to a paralegal rate is Row 802—Ben Wittwer's 1.1 hours picking up file boxes from the Law Department.

### E.    Plaintiffs Are Not Seeking Double Compensation For Article 78 Work

The City's argument attacks a straw man. The billing chart (ECF 235-8) distinguishes between pre-action FOIL correspondence, which is recoverable investigatory work, and the pre-action discovery petition and Article 78 proceeding. Every entry related to drafting the pre-action discovery petition (Rows 32–38, 40–42, 45) and litigating the Article 78 proceeding (Rows 47–51, 55–72, 83–84, 91–96, 100–117, 126–127, 139–141, 150, 152) is marked "non-billable," showing $0.00 in the Billable column and a corresponding amount in the Non-Billable column.

## III.    MR. SHIELDS' IN DISTRICT RATE SHOULD BE $550 PER HOUR

If the Court awards in-district rates, Mr. Shields' rate should be $550 per hour—a modest increase from the $475 per hour awarded in *Howard v. City of Rochester*, No. 6:23-cv-06561 (FPG) (MJP) (W.D.N.Y. Apr. 30, 2025) (Shields Reply Decl. ¶ 4), a rate Justice Nasca confirmed in *Roth & Roth, LLP v. County of Monroe* ("Kuriatnyk"), Index No. E2023006360 (Sup. Ct., Monroe Cnty. Jan. 5, 2026) (Shields Reply Decl. ¶ 5). This increase accounts for inflation and Mr. Shields' trial success in this case, *Da Silva* case and the *Johnson* case, and Mr. Shields other unprecedented success in civil rights cases in this district and downstate.

## IV.    PLAINTIFFS ARE ENTITLED TO COSTS

Section 1988 expressly authorizes "a reasonable attorney's fee as part of the costs," 42 U.S.C. § 1988(b), and the prevailing party in a § 1983 action is entitled to reasonable costs. The fee application listed costs with specificity in ECF 235-9. The City's contention that Plaintiffs addressed costs "only in passing" (Opp. at 23) is belied by the detailed cost chart submitted.

The City's argument that travel costs should be excluded presupposes that local rates apply—which is incorrect for the reasons stated above. If out-of-district counsel was warranted, the associated travel costs logically follow. Moreover, any of the Buffalo firms cited by Defendants would have stayed in a hotel in Rochester to try this case. See Shields Decl. ¶ 21.

Plaintiffs acknowledge that expert fees are not recoverable as part of an award under 42 U.S.C. § 1988 in a § 1983 action. *See* 42 U.S.C. § 1988(c) (limiting expert fee recovery to §§ 1981 and 1981a actions); *W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 102 (1991), Plaintiffs withdraw that request. However, non-recoverable expert fees further support out-of-district rates. Plaintiffs retained three experts whose fees were borne entirely by the firm and are not recoverable under § 1988. A local firm considering a complex *Monell* case on contingency faces both low odds of success and non-recoverable expert costs. *See W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 102 (1991); *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) (a "reasonable" fee must be "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case"). This further explains why out-of-district rates are warranted.

## V.      THE CITY'S SETTLEMENT ARGUMENT IS WITHOUT MERIT

The City suggests that Plaintiffs should have delayed filing the fee application to negotiate fees with Corporation Counsel. Opp. at 4–5. Plaintiffs filed the fee application within the time permitted by the Federal Rules and this Court's local rules. Mr. Beath never made a substantive offer. The City cannot simultaneously complain about the fee application being filed and fault Plaintiffs for not waiting indefinitely for a settlement proposal never materialized.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court award attorneys' fees in the amount of $1,089,920.00, inclusive of $13,762.50 for the 21.75 hours expended preparing this reply (Shields Reply Decl. ¶ 45, Ex. 16), plus costs of $37,743.19 (Shields Reply

Decl. ¶ 48, Ex. 17). *Reed*, 95 F.3d at 1183–84. As fees will continue to accrue opposing post-trial motions and any appeal, *see Tolbert*, 242 F.3d at 78; *Gonzalez*, 247 F. Supp. 2d at 437, Plaintiffs request leave to submit quarterly supplemental fee petitions until this matter is fully resolved.

Dated: New York, New York
      March 20, 2026

                                      Respectfully submitted,

                                      **ROTH & ROTH LLP**

                                      *Elliot Shields*
                                      _____
                                      Elliot Dolby-Shields
                                      Roth & Roth, LLP
                                      192 Lexington Avenue, Suite 802
                                      New York, New York 10016
                                      (212) 425-1020
                                      eshields@rothandrothlaw.com

11